No. 24-2219

**IN THE**
**UNITED STATES COURT OF APPEALS**
**FOR THE SEVENTH CIRCUIT**

PLANNED PARENTHOOD GREAT NORTHWEST, HAWAI'I,
ALASKA, INDIANA, KENTUCKY, INC.,

Plaintiff-Appellee,

v.

COMMISSIONER, INDIANA STATE DEPARTMENT OF HEALTH, *et al.*,

Defendants-Appellants.

On Appeal from the United States District Court for the
Southern District of Indiana, No. 1:17-cv-01636-SEB-CSW,
The Honorable Sarah Evans Barker, Judge

**BRIEF OF APPELLANTS**

Office of the Attorney General
IGC South, Fifth Floor
302 W. Washington Street
Indianapolis, IN 46204
(317) 232-0709
James.Barta@atg.in.gov

THEODORE E. ROKITA
Attorney General of Indiana

JAMES A. BARTA
Solicitor General

JENNA M. LORENCE
Deputy Solicitor General

JOHN M. VASTAG
Deputy Attorney General

*Counsel for Appellants*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ...................................................................... iii

INTRODUCTION ................................................................................... 1

JURISDICTIONAL STATEMENT ........................................................ 3

STATEMENT OF THE ISSUES ............................................................ 4

STATEMENT OF THE CASE ............................................................... 4

I.      Legal Background ....................................................................... 4

II.     Procedural Background .............................................................. 6

SUMMARY OF THE ARGUMENT ..................................................... 10

STANDARD OF REVIEW ................................................................... 12

ARGUMENT ....................................................................................... 13

I.      The District Court Lacked Jurisdiction To Enter Prospective Relief
        Against the Defendant State Officials ........................................ 13

        A.      Intervening developments have deprived Planned Parenthood of a
                personal stake in the outcome of this case ........................... 14

        B.      Planned Parenthood's risk of civil liability to private parties does
                not give it standing to sue state officials ............................. 15

        C.      Planned Parenthood cannot establish standing based on theoretical
                enforcement actions against physicians ............................... 17

II.     The First Amendment Does Not Protect Planned Parenthood's Intentional
        Efforts To Aid or Assist Violations of Indiana Law ....................... 21

III.    Indiana's Prohibition on Intentionally Aiding or Assisting Minors with
        Avoiding Consent Requirements Survives Any Level of Scrutiny ........ 27

        A.      Indiana's law advances compelling interests in protecting the
                parent-child relationship and the child's wellbeing ............... 27

B.    The district court's objections amount to disagreement with
        Supreme Court decisions upholding similar laws ............................... 30

C.    Indiana's law—which targets intentional efforts to interfere with
        the parent-child relationship—is narrowly tailored............................ 35

        1.    The district court's assumption that some children
                are mature cannot justify the injunction................................... 37

        2.    The district court's assumption that some minors may
                have their parents' consent cannot justify the injunction ......... 41

        3.    The district court's remaining objection lacks merit.................. 43

D.    The law survives intermediate scrutiny as well .................................. 44

CONCLUSION.................................................................................................. 45

# TABLE OF AUTHORITIES

CASES

*A.B. v. Brownsburg Cmty. Sch. Corp.,*
    80 F.4th 805 (7th Cir. 2023) ........................................................ 12

*Ayotte v. Planned Parenthood of N. New England,*
    546 U.S. 320 (2006) ........................................................*passim*

*Babbitt v. United Farm Workers Nat'l Union,*
    442 U.S. 289 (1979) ........................................................ 18

*Bellotti v. Baird,*
    443 U.S. 622 (1979) ........................................................*passim*

*Box v. Planned Parenthood of Ind. & Ky., Inc.,*
    141 S. Ct. 187 (2020) ........................................................ 7

*Box v. Planned Parenthood of Ind. & Ky., Inc.,*
    142 S. Ct. 2893 (2022) ........................................................ 8

*Brokaw v. Mercer Cnty.,*
    235 F.3d 1000 (7th Cir. 2000) ........................................................ 41

*California v. Texas,*
    593 U.S. 659 (2021) ........................................................ 18

*Carney v. Adams,*
    141 S. Ct. 493 (2020) ........................................................ 17

*City News & Novelty, Inc. v. City of Waukesha,*
    531 U.S. 278 (2001) ........................................................ 15

*City of Austin v. Reagan Nat'l Advert. of Austin, LLC,*
    596 U.S. 61 (2022) ........................................................ 25, 26

*Clapper v. Amnesty Int'l USA,*
    568 U.S. 398 (2013) ........................................................ 16, 18

*County of Los Angeles v. Davis,*
    440 U.S. 625 (1979) ........................................................ 15, 16

*Crawford v. Marion Cnty. Election Bd.,*
    472 F.3d 949 (7th Cir. 2007) ........................................................ 43

CASES [CONT'D]

*Ctr. for Individual Freedom v. Madigan*,
    697 F.3d 464 (7th Cir. 2012) ................................................................ 41

*Curtis v. Thompson*,
    840 F.2d 1291 (7th Cir. 1988) ............................................................... 35

*Dobbs v. Jackson Women's Health Org.*,
    597 U.S. 215 (2022) .................................................................... 8, 42, 43

*Doe v. City of Lafayette*,
    377 F.3d 757 (7th Cir. 2004) ................................................ 35, 40, 41, 42

*Doe v. Rokita*,
    54 F.4th 518 (7th Cir. 2022) .................................................................. 44

*Dubbs v. Head Start Inc.*,
    336 F.3d 1194 (10th Cir. 2003) .............................................................. 39

*FDA v. All. for Hippocratic Med.*,
    602 U.S. 367 (2024) ............................................................................. 16

*GEFT Outdoor, LLC v. City of Evansville*,
    110 F.4th 935 (7th Cir. 2024) ..................................................... 38, 42, 44

*Genesis Healthcare Corp. v. Symczyk*,
    569 U.S. 66 (2013) ............................................................................... 14

*Giboney v. Empire Store & Ice Co.*,
    336 U.S. 490 (1949) .................................................................. 22, 23, 25

*Ginsberg v. New York*,
    390 U.S. 629 (1968) ............................................................................. 28

*H.L. v. Matheson*,
    450 U.S. 398 (1981) .......................................................................*passim*

*Haaland v. Brackeen*,
    599 U.S. 255 (2023) ....................................................................... 17, 18

*Hays v. City of Urbana*,
    104 F.3d 102 (7th Cir. 1997) ................................................................. 19

*Hegwood v. City of Eau Claire*,
    676 F.3d 600 (7th Cir. 2012) ................................................................ 41

## CASES [CONT'D]

*Hess v. Bd. of Trs. of S. Ill. Univ.*,
    839 F.3d 668 (7th Cir. 2016) ................................................ 13

*Hodgson v. Minnesota*,
    497 U.S. 417 (1990) ..............................................*passim*

*Holder v. Humanitarian Law Project*,
    561 U.S. 1 (2010) ........................................ 23, 24, 34

*John Doe No. 1 v. Reed*,
    561 U.S. 186 (2010) ..................................... 38, 41, 44

*Johnson v. Texas*,
    509 U.S. 350 (1993) ................................................ 28

*June Medical Servs. L.L.C. v. Russo*,
    591 U.S. 299 (2020) ................................................. 7

*Keep Chicago Livable v. City of Chicago*,
    913 F.3d 618 (7th Cir. 2019) ................................... 20

*Lassiter v. Dep't of Soc. Servs.*,
    452 U.S. 18 (1981) ................................................ 39

*Lewis v. Cont'l Bank Corp.*,
    494 U.S. 472 (1990) ......................................... 14, 15

*Lujan v. Defs. of Wildlife*,
    504 U.S. 555 (1992) ............................................. 16

*Members of the Med. Licensing Bd. of Ind. v. Planned Parenthood
    Great Nw., Haw., Alaska, Ind., Ky., Inc.*,
    211 N.E.3d 957 (Ind. 2023) ..................................... 8

*Monsanto Co. v. Geertson Seed Farms*,
    561 U.S. 139 (2010) ............................................. 16

*Moody v. NetChoice, LLC*,
    144 S. Ct. 2383 (2024) ......................................... 38

*Muskrat v. United States*,
    219 U.S. 346 (1911) ............................................. 14

*Nova Health Sys. v. Gandy*,
    416 F.3d 1149 (10th Cir. 2005) .............................. 20

CASES [CONT'D]

*Ohralik v. Ohio State Bar Ass'n*,
    436 U.S. 447 (1978) ................................................................. 22

*Parham v. J. R.*,
    442 U.S. 584 (1979) ................................................. 1, 23, 27, 39

*Planned Parenthood of Blue Ridge v. Camblos*,
    155 F.3d 352 (4th Cir. 1998) ................................................. 37

*Planned Parenthood Great Nw., Haw. Alaska, Ind., Ky., Inc. v.
    Members of the Med. Licensing Bd. of Ind.*,
    No. 53C06-2208-PL-001756 (Monroe Cnty. Cir. Ct. Sept. 11, 2024) ............... 8, 15

*Planned Parenthood of Ind. & Ky., Inc. v. Box*,
    991 F.3d 740 (7th Cir. 2021) .................................................. 7

*Planned Parenthood of Ind. & Ky., Inc. v. Adams*,
    937 F.3d 973 (7th Cir. 2019) .................................................. 7

*Planned Parenthood of Ind. & Ky., Inc. v. Box*,
    No. 17-2428 (7th Cir. July 7, 2022) .......................................... 8

*Quillion v. Walcott*,
    434 U.S. 246 (1978) ....................................................... 28, 37

*R.A.V. v. City of St. Paul*,
    505 U.S. 377 (1992) ........................................................... 34

*Rice v. Paladin Enters., Inc.*,
    128 F.3d 233 (4th Cir. 1997) ................................................. 22

*Roe v. Wade*,
    410 U.S. 113 (1973) ........................................................... 8

*Roper v. Simmons*,
    543 U.S. 551 (2005) .......................................................... 27

*Rumsfeld v. Forum for Acad. & Inst. Rts., Inc.*,
    547 U.S. 47 (2006) .............................................. 24, 25, 26, 27

*Steele v. Bulova Watch Co.*,
    344 U.S. 280 (1952) .......................................................... 23

*Susan B. Anthony List v. Driehaus*,
    573 U.S. 149 (2014) .......................................................... 18

Cases [Cont'd]

*Sweeney v. Raoul,*
990 F.3d 555 (7th Cir. 2021) ................................................................. 18

*Thayer v. City of Chicago,*
110 F.4th 1040 (7th Cir. 2024) ............................................................. 38

*Tripp v. Scholz,*
872 F.3d 857 (7th Cir. 2017) ................................................................. 43

*Troxel v. Granville,*
530 U.S. 57 (2000) ....................................................................... 1, 40

*Turner Broad. Sys., Inc. v. FCC,*
512 U.S. 622 (1994) .............................................................. 26, 27, 44

*United States v. Hansen,*
599 U.S. 762 (2023) ............................................................................ 22

*United States v. O'Brien,*
391 U.S. 367 (1968) ...................................................................... 21, 44

*United States v. Smith,*
426 F.3d 567 (2d Cir. 2005) ................................................................. 43

*United States v. Williams,*
553 U.S. 285 (2008) ............................................................................ 22

*Ward v. Rock Against Racism,*
491 U.S. 781 (1989) ............................................................................ 44

*Warth v. Seldin,*
422 U.S. 490 (1975) ............................................................................ 19

*Wash. State Grange v. Wash. State Republican Party,*
552 U.S. 442 (2008) ............................................................................ 41

*Whole Woman's Health v. Jackson,*
595 U.S. 30 (2021) .............................................................. 14, 17, 21

*Williams-Yulee v. Florida Bar,*
575 U.S. 443 (2015) ............................................................................ 34

*Zbaraz v. Hartigan,*
763 F.2d 1532 (7th Cir. 1985) ............................................................. 28

STATUTES, RULES, AND REGULATIONS

18 U.S.C. § 2339A(b)(1) ................................................... 24

18 U.S.C. § 2339A(b)(2), .................................................. 24

18 U.S.C. § 2339A(b)(3). ................................................. 24

2022 Ind. Acts pp. 2601–2605 P.L 179-2022(ss) .................. 8, 15

Ind. Code § 16-34-2-1(a) ................................................. 15

Ind. Code § 16-34-2-1(a)(1) ................................................ 8

Ind. Code § 16-34-2-4 .................................................. 21, 37

Ind. Code § 16-34-2-4(a)–(e) .............................................. 6

Ind. Code § 16-34-2-4(a), (k) ........................................ 36, 40

Ind. Code § 16-34-2-4(b). ................................... 6, 36, 42, 43

Ind. Code § 16-34-2-4(c)–(d) ............................................ 40

Ind. Code § 16-34-2-4(e). ................................................. 6

Ind. Code § 16-34-2-4(f) ........................................... 6, 39, 40

Ind. Code § 16-34-2-4(g), ............................................ 40, 41

Ind. Code § 16-34-2-4(h) ............................................. 40, 41

Ind. Code § 16-34-2-4(j), ................................................. 40

Ind. Code § 16-34-2-4(k) ............................................. 36, 40

Ind. Code § 16-34-2-4(l). .................................................. 6

Ind. Code § 16-34-2-4.2(a) .............................................. 36

Ind. Code § 16-34-2-4.2(a)–(b) ...................................... 25, 41

Ind. Code § 16-34-2-4.2(b). .......................................... 36, 42

Ind. Code § 16-34-2-4.2(c) ........................................... *passim*

Ind. Code § 16-34-2-4.2(d) ....................................... 6, 16, 19

STATUTES, RULES, AND REGULATIONS [CONT'D]

Ind. Code § 16-36-1-3 ............................................................ 4, 21, 28

Ind. Code § 16-36-1-5(b) ........................................................... 4, 21

Ind. Code § 16-36-1-5(b)(2) ........................................................... 38

Ind. Code § 25-1-9-2 ........................................................................ 18

Ind. Code § 25-1-9-4(a) ................................................................... 18

Ind. Code § 25-1-9-4(a)(3) ............................................................... 18

Ind. Code § 35-1-58.5-2.5(a) (1982) ................................................ 5

Ind. Code § 35-1-58.5-2.5(a) (1984) ................................................ 5

Ind. Code § 35-1-58.5-2.5(b) (1984) ................................................ 5

Ind. Code § 35-1-58.5-2.5(b)–(d) (1982) ......................................... 5

Ind. Code § 35-1-58.5-2.5(d) (1984) ................................................ 5

Ind. Code § 35-46-1-1(a) ................................................................ 38

Fed. R. Civ. P. 56(e) ....................................................................... 16

Ind. R. App. P. 62 .......................................................................... 40

410 IAC § 26-2-8(b)(1), (2) (2017) ................................................ 14

## INTRODUCTION

Although most adults are competent to make decisions for themselves, "[m]ost children, even in adolescence, simply are not able to make sound judgments concerning many decisions, including their need for medical care or treatment." *Parham v. J.R.*, 442 U.S. 584, 602 (1979). So the law generally entrusts parents with making those judgments. "The law's concept of the family rests on a presumption that parents possess what a child lacks in maturity, experience, and capacity for judgment." *Id.* Consistent with the "right, coupled with the high duty," that parents have to direct a child's upbringing, *Troxel v. Granville*, 530 U.S. 57, 65 (2000) (plurality op.), Indiana generally requires that parents must consent to medical procedures, including abortions. And Indiana prohibits knowingly or intentionally aiding or assisting an unemancipated minor with obtaining an abortion without a parent's or a judge's consent.

By its terms, Indiana's prohibition on aiding or assisting a minor covers *any* conduct designed to help minors circumvent consent requirements. The district court nevertheless partially enjoined enforcement of the statute on the theory that it violates the First Amendment. The court held that the First Amendment gives Planned Parenthood a right to instruct minors on how to obtain abortions in other States without their parents' consent, to refer minors for such abortions, and even to contact out-of-state abortion providers without the knowledge or consent of minors' parents. But the First Amendment does not confer a right to illegal conduct merely because the conduct happens to be accomplished through words. Indiana may bar Planned

1

Parenthood from undertaking intentional efforts to help minors evade consent requirements, whatever form that conduct happens to take.

To the extent that Indiana law implicates speech at all, the law is narrowly tailored to advance compelling interests. The law proscribes only conduct calculated to help minors obtain abortions without involving their parents or state courts. It does not prevent Planned Parenthood from speaking about abortion generally, even to minors, or helping minors obtain the necessary consents for abortions. Indiana does not have another reasonable way of protecting parents' ability to be involved in making a momentous decision without prohibiting intentional efforts by Planned Parenthood to sidestep parents, who have a constitutionally protected interest in their children's upbringing and a responsibility to care for them after any abortion.

The possibility that some children are "mature" enough to make life-altering decisions without their parents' input provides no basis for enjoining Indiana's law. Indiana's interest in protecting the parent-child relationship does not stop at the point at which Planned Parenthood deems a girl "mature" enough to no longer need parental guidance. Besides, Indiana law already provides a way for children who demonstrate maturity in court to obtain abortions without their parents' consent. Moreover, the district court's injunction is not limited to situations in which Planned Parenthood seeks to help "mature" minors obtain abortions without their parents. The injunction covers situations involving immature minors as well.

Although the Constitution does not force Indiana to sit by while Planned Parenthood arranges for vulnerable minors to obtain abortions without involving

2

their parents, this Court need not reach the merits. To the extent that Planned Parenthood once had standing to challenge Indiana's prohibition on aiding minors, Planned Parenthood no longer has a personal stake in this case. Due to unrelated changes in Indiana law, the aid-or-assist statute is now primarily enforceable through civil actions brought by private parties. Yet there is no relief that a court could give in this suit against state officials that would shield Planned Parenthood from liability to private parties. Whatever injury it faces is not redressable here.

## JURISDICTIONAL STATEMENT

Plaintiff Planned Parenthood Great Northwest, Hawai'i, Alaska, Indiana, Kentucky, Inc. (Planned Parenthood) originally filed this action for injunctive relief under 42 U.S.C. § 1983, alleging that Indiana's Senate Enrolled Act 404 (S.E.A. 404) (effective July 1, 2017) violated the Fourteenth Amendment's Due Process Clause, the Equal Protection Clause, and the First Amendment. Dkt. 1. Although Planned Parenthood raised federal questions under 28 U.S.C. §§ 1331 and 1343, the district court lacked jurisdiction to grant relief for the reasons below. *See* pp. 13–21, *infra*.

On May 1, 2024, the district court granted summary judgment to Planned Parenthood on its claim that S.E.A. 404's prohibition on knowingly or intentionally aiding or abetting an unemancipated pregnant minor in obtaining an abortion without required consents (codified at Ind. Code § 16-34-3-4.2) violated the First Amendment, Dkt. 112, and entered final judgment and a permanent injunction. Dkt. 113. Planned Parenthood had already withdrawn its other challenges to S.E.A. 404. *See* Dkt. 77; Dkt. 101; Dkt. 102. On May 29, 2024, defendants filed a timely motion to alter or amend the judgment. Dkt. 117. On July 12, 2024, the district court denied

3

the motion. Dkt. 121. Under Federal Rule of Appellate Procedure 4(a)(4)(A)(iv), the time to file a notice of appeal started from the date of the district court's order on July 12, 2024. On July 15, 2024, defendants filed a timely notice of appeal. Dkt. 122. This Court has jurisdiction over this appeal under 28 U.S.C. § 1291.

This is not an appeal from a decision of a magistrate judge.

## STATEMENT OF THE ISSUES

1.      Whether Planned Parenthood's loss of its license to operate an abortion clinic in Indiana deprives Planned Parenthood of a personal stake in the outcome of this case, considering that the challenged statute is now enforceable only through civil actions by nonparties to this litigation and licensing actions against physicians.

2.      Whether, consistent with the First Amendment, Indiana may prohibit persons from knowingly or intentionally aiding or assisting an unemancipated pregnant minor in obtaining an abortion without required parental or judicial consents, including where Planned Parenthood would violate that prohibition by providing information to minors about obtaining abortions out-of-state, referring minors for out-of-state abortions, and contacting out-of-state abortion providers for minors.

## STATEMENT OF THE CASE

### I.    Legal Background

Before providing medical treatment to an unemancipated minor in Indiana, a provider generally must obtain consent from the minor's parent or guardian. *See* Ind. Code §§ 16-36-1-3, 16-36-1-5(b). Similar requirements apply in the abortion context.

For over forty years, Indiana has required some form of parental notice or consent before a doctor can perform an abortion on an unemancipated pregnant minor.

In 1982, shortly after the Supreme Court upheld a Utah law requiring doctors to notify a minor's parents before performing an abortion, *see H.L. v. Matheson*, 450 U.S. 398 (1981), Indiana enacted a parental notification requirement of its own. Indiana prohibited doctors from performing abortions on "an unemancipated pregnant woman under the age of eighteen (18) years without first having given at least twenty-four (24) hours actual notice" or "forty-eight hours constructive notice" to the minor's parent or legal guardian. Ind. Code § 35-1-58.5-2.5(a) (1982). A minor or her physician could also petition a juvenile court for a waiver if the court found that the minor was "mature enough to make the abortion decision independently or that notification would not be in the minor's best interests." § 35-1-58.5-2.5(b)–(d) (1982).

In 1984, the Indiana General Assembly replaced the notice requirement with a consent requirement. It prohibited physicians from performing abortions on unemancipated minors "without first having obtained the written consent of one (1) of the parents or the legal guardian of the minor pregnant woman." Ind. Code § 35-1-58.5-2.5(a) (1984). The new statute also allowed a minor to seek a judicial waiver of the consent requirement, § 35-1-58.5-2.5(b) (1984), if the court found "that the minor [was] mature enough to make the abortion decision independently or that an abortion would be in the minor's best interests," § 35-1-58.5-2.5(d) (1984).

In 2017, through Senate Enrolled Act 404 (S.E.A. 404), the Indiana General Assembly amended the framework again. It left the existing parental consent

requirement in place and reinstated a notice requirement, *see* Ind. Code § 16-34-2-4(a)–(e), providing that a "parent, legal guardian, or custodian" of a minor "is entitled to receive notice" of the "minor's intent to obtain an abortion before the abortion is performed," § 16-34-2-4(e). The General Assembly provided that a judge could waive the notice requirement when waiver would be "in the best interests of the unemancipated pregnant minor." § 16-34-2-4(f).

In S.E.A. 404, the General Assembly also adopted a prohibition against "knowingly or intentionally aid[ing] or assist[ing] an unemancipated pregnant minor in obtaining an abortion without the [parental or judicial] consent required." § 16-34-2-4.2(c). It made the prohibition enforceable through a civil action for damages, attorney's fees, costs, and punitive damages, which could be pursued by "the unemancipated pregnant minor or [her] parent or legal guardian or custodian." § 16-34-2-4.2(d). The General Assembly did not provide for criminal enforcement.[1]

## II.  **Procedural Background**

In 2017, shortly after S.E.A. 404's enactment, Planned Parenthood filed a challenge to the statute against the Commissioner of the Indiana State Department of Health, four prosecuting attorneys, the members of the Indiana Medical Licensing

---

[1] S.E.A. 404 also added two requirements that are no longer the subject of any claims in this litigation: identification and affidavit requirements. Under the identification requirement, a physician "perform[ing] an abortion on an unemancipated pregnant minor" generally must obtain from "one . . . of the parents, a legal guardian, or a custodian" a notarized consent, government-issued proof of identity, and reasonable proof of their relationship to the minor. Ind. Code § 16-34-2-4(b). The affidavit provision requires any "physician receiving parental consent" for an abortion to "execute an affidavit" certifying that they have been provided sufficient evidence of the identity and relationship of the consenting parent. § 16-34-2-4(l).

Board, and the judge of the juvenile division of the Marion Superior Court, all in their official capacities. Dkt. 1. At the time that Planned Parenthood filed suit, Planned Parenthood operated several abortion clinics in Indiana that both provided abortions to minors and helped them obtain abortions elsewhere if Planned Parenthood could not provide the abortions. Dkt. 14-1 (Beeley Decl. ¶¶ 8, 27–29).

Planned Parenthood moved for a preliminary injunction, Dkt. 6, and the district court granted a preliminary injunction, enjoining enforcement of multiple provisions of S.E.A. 404, Dkt. 26. Most relevant to this appeal, the preliminary injunction prohibited Indiana from enforcing S.E.A. 404's prohibition on intentionally aiding or assisting minors in circumventing Indiana's requirements to obtain parental or judicial consent "insofar as it would prohibit persons, including [Planned Parenthood] and its physicians, from disseminating to minors information regarding legal abortion practices in Indiana." A49. Although Indiana appealed, it did not raise issues specific to the aid-or-assist provision. SA2.

This Court affirmed the preliminary injunction, without addressing the aid-or-assist provision. *See Planned Parenthood of Ind. & Ky., Inc. v. Adams*, 937 F.3d 973 (7th Cir. 2019). Thereafter, Indiana filed a petition for certiorari, and the Supreme Court granted, vacated, and remanded the case for further proceedings in light of *June Medical Services L.L.C. v. Russo*, 591 U.S. 299 (2020). *See Box v. Planned Parenthood of Ind. & Ky., Inc.*, 141 S. Ct. 187, 187–88 (2020).

On remand, this Court affirmed again. *Planned Parenthood of Ind. & Ky., Inc. v. Box*, 991 F.3d 740 (7th Cir. 2021). Indiana petitioned for certiorari once more. While

Indiana's petition was pending, the Supreme Court overturned *Roe v. Wade*, 410 U.S. 113 (1973). *See Dobbs v. Jackson Women's Health Org.*, 597 U.S. 215, 301–02 (2022). In light of that change, the Supreme Court granted, vacated, and remanded again, *see Box v. Planned Parenthood of Ind. & Ky., Inc.*, 142 S. Ct. 2893 (2022), and this Court vacated its mandate and remanded the case to the district court for further proceedings, *see* Order, *Planned Parenthood of Ind. & Ky., Inc. v. Box*, No. 17-2428, Doc. No. 82 (7th Cir. July 7, 2022).

Around the same time, the Indiana General Assembly enacted new requirements to protect prenatal life and maternal health. It restricted when abortion could be performed in Indiana and required all legal abortions to be performed in hospitals or ambulatory surgical centers, *see* Ind. Code § 16-34-2-1(a)(1), disqualifying clinics from operating as licensed abortion providers, *see* P.L 179-2022(ss), 2022 Ind. Acts pp. 2601–2605 (repealing licensure for abortion clinics). Although Planned Parenthood challenged the new restrictions in state court, the state courts rejected its challenges. *See Members of the Med. Licensing Bd. of Ind. v. Planned Parenthood Great Nw., Haw., Alaska, Ky., Inc.*, 211 N.E.3d 957, 961–62 (Ind. 2023), *reh'g denied*, 214 N.E.3d 348 (Ind. 2023); *Planned Parenthood Great Nw., Haw. Alaska, Ky., Inc. v. Members of the Med. Licensing Bd. of Ind.*, No. 53C06-2208-PL-001756 (Monroe Cnty. Cir. Ct. Sept. 11, 2024), *appeal filed*, No. 24A-PL-02467 (Ind. Ct. App.). In response, Planned Parenthood withdrew most of its challenges to S.E.A. 404. *See* SA1.

In May 2024, the district court in this matter granted summary judgment to Planned Parenthood on its last remaining claim—a First Amendment challenge to

Indiana's prohibition on knowingly or intentionally aiding or assisting a minor with obtaining an abortion without the consents required under Indiana law. SA3. The court permanently enjoined all "Defendants" from enforcing the aid-or-assist provision "insofar as it would prohibit [Planned Parenthood] and its physicians from disseminating to minors information regarding legal abortion practices and abortion care providers in states other than Indiana and from providing referrals to and contacting out-of-state abortion providers on behalf of their minor patients." SA22.

The district court held that the aid-or-assist statute was a "content-based restriction on speech" and thus subject to strict scrutiny. SA12. It rejected the argument that the statute only reaches speech integral to unlawful conduct—evading Indiana's consent requirements—because a minor who travels out of state to obtain an abortion is not herself committing a crime. SA11. Then, applying strict scrutiny, the court held that the statute did not advance compelling state interests and was not narrowly tailored. SA13. The court assumed that Indiana's asserted interests— "safeguarding the parent-child relationship" and "protecting the physical and psychological well-being of minors"—were compelling. *Id.* But it disagreed that the challenged statute advanced those interests, stating that providing minors information about abortion or contacting out-of-state abortion providers is "several steps removed from performing an abortion without parental consent." SA15. The court also concluded the law was not narrowly tailored, reasoning that Indiana has no interest in requiring "mature" minors to obtain parental consent for an abortion and that it would serve no

9

purpose to prohibit Planned Parenthood from providing information to minors acting "in consultation with their parents." SA17–SA19.

Defendants moved to alter or amend the permanent injunction and final judgment to exclude the defendant state superior court judge. Dkt. 117. The district court denied the motion on July 12, 2024, Dkt. 121, stating that it did not read the permanent injunction as applying to the state judge, A53.

## SUMMARY OF THE ARGUMENT

I.     The district court lacked jurisdiction to enter a permanent injunction and declaratory judgment against the defendant state officials. When Planned Parenthood initially filed this case, Planned Parenthood held a license to operate an abortion clinic in Indiana, and the challenged statute could be enforced against it through a licensing action. But now Planned Parenthood no longer holds a license that could be revoked for violations of the challenged statute.

Planned Parenthood cannot otherwise establish standing. Although private parties can sue Planned Parenthood for violations of the challenged statute, the threat of liability to private parties does not create jurisdiction over state officials. Further, Planned Parenthood does not suffer injury from the prospect that physicians who violate the challenged statute may be subject to licensing sanctions. Planned Parenthood did not provide evidence at summary judgment specifically establishing that physicians would violate the statute despite risk of liability to private parties.

II.     Even if the district court had jurisdiction to fashion prospective relief, the First Amendment would not protect Planned Parenthood's intentional efforts to help minors obtain abortions without a parent's (or, alternatively, a judge's) consent.

The challenged statute does not regulate Planned Parenthood's speech but rather its conduct. It prohibits *all* actions designed to help minors in obtaining abortions without the consents required—from forging consent documents or driving minors across the State for abortions. The statute does not become a speech regulation merely because Planned Parenthood staff may use words when instructing minors on how to circumvent Indiana's consent requirements or when booking abortion appointments without parents' knowledge. At a minimum, the statute's facial neutrality towards any speech's content means less exacting scrutiny applies.

III.    Whatever the level of scrutiny, there is no First Amendment violation. Indiana law protects parental rights, family integrity, and the wellbeing of children by generally requiring that an unemancipated minor's parent give consent to an abortion. Prohibiting Planned Parenthood's intentional efforts to help minors obtain abortions without a parent's involvement advances the compelling state interests underlying Indiana's parental-consent requirement. Indiana does not lack a compelling interest merely because there might be an intervening step between Planned Parenthood making an abortion appointment for a minor and the actual abortion.

Indiana's prohibition is narrowly tailored as well. To protect parents' ability to participate in medical decisionmaking for their children, Indiana must prohibit Planned Parenthood's intentional efforts to unilaterally remove the parental role in those decisions. The district court identified no other reasonable ways to protect Indiana's compelling interests. Instead, it hypothesized that some children are "mature" enough to make decisions for themselves. But Indiana already recognizes that.

It allows emancipated minors to make abortion decisions on their own and allows other minors to seek a judicial determination that they are mature enough to make the decision. Regardless, the district court's concern does not justify an injunction that allows Planned Parenthood to assist *immature* minors in obtaining abortions.

The district court also objected that Planned Parenthood might wish to aid minors who have their parents' cooperation. Indiana law addresses that concern as well. It does not prevent Planned Parenthood from helping minors who seek abortions and have a parent willing to provide the required consent. In any event, the district court's rationale cannot justify an injunction that authorizes Planned Parenthood to help minors obtain abortions without their parents' knowledge or consent.

The district court never asked whether the challenged statute survives intermediate scrutiny, but it does so. The statute furthers the important government interest of maintaining the constitutionally protected relationship between parents and their children, while ensuring that minors who receive abortions have access to parental guidance and support. The challenged statute does not apply to the vast majority of speech regarding abortion; it targets only conduct that directly frustrates Indiana's consent laws. So the statute does not burden more speech than necessary.

**STANDARD OF REVIEW**

This Court "review[s] de novo a district court's decision on cross motions for summary judgment, construing all facts and drawing all reasonable inferences in favor of the party against whom the motion under consideration was filed." *A.B. v.*

*Brownsburg Cmty. Sch. Corp.*, 80 F.4th 805, 810 (7th Cir. 2023) (quoting *Hess v. Bd. of Trs. of S. Ill. Univ.*, 839 F.3d 668, 673 (7th Cir. 2016)).

## ARGUMENT

## I.     The District Court Lacked Jurisdiction To Enter Prospective Relief Against the Defendant State Officials

Between the time this case began in 2017 and the time the district court entered judgment in 2024, the court lost jurisdiction over Planned Parenthood's last remaining claim. When this case was filed, Planned Parenthood provided abortions in Indiana and held a license to operate an abortion clinic that could be revoked if its staff violated Indiana's prohibition on aiding or assisting a minor in circumventing consent requirements (the aid-or-assist statute). But Planned Parenthood no longer holds a license to operate an abortion clinic, since Indiana no longer permits clinics to perform abortions and no longer licenses abortion clinics. Consequently, Planned Parenthood no longer faces the threat that its abortion-clinic license could be revoked should its employees violate the aid-or-assist statute. It accordingly lacks a personal stake in this litigation.

None of Planned Parenthood's other putative injuries gives it standing. Although Planned Parenthood expressed concern that private parties could bring civil actions for damages against it should its employees violate the aid-or-assist statute, Planned Parenthood did not sue private parties. It sued state officials. Any judgment against the state officials in this case would not redress Planned Parenthood's alleged injury. Additionally, while a physician might face licensing sanctions for violating the aid-or-assist statute, the summary-judgment evidence does not establish that any

13

Planned Parenthood physician intends to violate the statute—at least while the threat of damages actions by private parties remains. The district court erred in ruling that its jurisdiction to grant prospective relief was "unaffected" by Planned Parenthood's loss of a license to operate an abortion clinic. SA4 n.2.

### A. Intervening developments have deprived Planned Parenthood of a personal stake in the outcome of this case

"Article III of the Constitution affords federal courts the power to resolve only 'actual controversies arising between adverse litigants.'" *Whole Woman's Health v. Jackson*, 595 U.S. 30, 39 (2021) (quoting *Muskrat v. United States*, 219 U.S. 346, 361 (1911)). "A corollary to this case-or-controversy requirement is that an actual controversy must be extant at all stages of review, not merely at the time the complaint is filed." *Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 71 (2013) (cleaned up). "If an intervening circumstance deprives the plaintiff of a 'personal stake in the outcome of the lawsuit,' at any point during litigation, the action can no longer proceed and must be dismissed as moot." *Id.* at 72 (quoting *Lewis v. Cont'l Bank Corp.*, 494 U.S. 472, 477–78 (1990)).

When this case was filed Planned Parenthood sought to establish standing in part by alleging that the Commissioner of the Indiana Department of Health could revoke its license to operate an abortion clinic if it permitted, aided, or abetted "any illegal act in an abortion clinic." A62–A63 ¶ 26 (quoting 410 IAC § 26-2-8(b)(1), (2) (2017)). Even if that originally sufficed for standing, Planned Parenthood no longer faces any licensing sanctions from the Commissioner. In 2022, the Indiana General Assembly required all lawful abortions to be performed at hospitals or ambulatory

14

surgical centers, *see* Ind. Code § 16-34-2-1(a), and ended the State's licensing regime for abortion clinics, *see* P.L 179-2022(ss), 2022 Ind. Acts pp. 2601–05. Planned Parenthood thus no longer performs abortions at clinics in Indiana, SA4 n.2, and no longer holds an abortion-clinic license that the Commissioner could revoke for violations of Indiana law, *see* Order Denying Motion for Permanent Injunction at 6, *Planned Parenthood Great Nw., Haw., Alaska, Ind., Ky., Inc. v. Members of the Med. Licensing Bd. of Indiana*, No. 53C06-2208-PL-001756 (Monroe Cnty. Cir. Ct. Sept. 11, 2024).

Because Planned Parenthood no longer has a license that the Commissioner could revoke for violations of the aid-or-assist statute, Planned Parenthood "no longer has 'a legally cognizable interest in the outcome'" of its challenge to the statute. *City News & Novelty, Inc. v. City of Waukesha*, 531 U.S. 278, 283 (2001) (quoting *County of Los Angeles v. Davis*, 440 U.S. 625, 631 (1979)). And the theoretical possibility that Indiana law might change, that Planned Parenthood might apply for a license, and that the Commissioner might determine that it has met generally applicable licensing requirements is too speculative. *See id.* at 283–84; *Lewis*, 494 U.S. at 479–80. Planned Parenthood, an entity that no longer performs abortions itself, cannot bring suit based on the Commissioner's former authority to revoke a former license to perform abortions.

### B.  Planned Parenthood's risk of civil liability to private parties does not give it standing to sue state officials

Without analysis, the district court suggested that Planned Parenthood retained a personal stake in this litigation because it still wishes to undertake actions

that could violate the aid-or-assist statute. SA4 n.2. But standing requires more than abstract disagreement with a statute. *See FDA v. All. for Hippocratic Med.*, 602 U.S. 367, 392–93 (2024). To establish standing, a plaintiff must demonstrate an injury that is "concrete, particularized, and actual or imminent; fairly traceable to the challenged action; and redressable by a favorable ruling." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) (quoting *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 149 (2010)). And on summary judgment, a plaintiff "must 'set forth' by affidavit or other evidence 'specific facts'" establishing standing. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992) (quoting Fed. R. Civ. P. 56(e)).

On summary judgment, Planned Parenthood did not set forth specific facts sufficient to establish standing. Planned Parenthood challenges Indiana's aid-or-assist statute, SA2, which prohibits anyone from "knowingly or intentionally aid[ing] or assist[ing] an unemancipated pregnant minor in obtaining an abortion without the consent required." Ind. Code § 16-34-2-4.2(c). The law authorizes a civil action by the "unemancipated pregnant minor or [her] parent or legal guardian or custodian [] who is adversely affected by a violation of this section". § 16-34-2-4.2(d). And Planned Parenthood's director indicated that this risk of "liability" would prevent it from aiding or assisting a minor in violation of Indiana law. A83 ¶ 22. But Planned Parenthood has not sued anyone able to bring a civil action, such as a minor or her parents. Rather, Planned Parenthood has sued state officials—specifically, the Commissioner of the Indiana Department of Health, the members of Indiana's Medical Licensing Board, state prosecuting attorneys, and a state judge. A58–A59 ¶¶ 11–15.

As a result, Planned Parenthood cannot show that the court's judgment and permanent injunction against state officials will redress its alleged injuries. By its terms, the district court's injunction runs only against the defendant state officials, SA22; it does not bind the minors and their parents or guardians who are the persons able to sue Planned Parenthood under Indiana Code § 16-34-2-4.2(d). Planned Parenthood thus still will confront liability to minors and their parents because they are "nonparties" and are not—and could not—be "bound by the judgment." *Haaland v. Brackeen*, 599 U.S. 255, 293 (2023); *see Whole Woman's Health*, 595 U.S. at 39–45.

It is no answer to suggest that declaring the statute unconstitutional might dissuade nonparties from suing Planned Parenthood for civil damages. "[R]edressability requires that the court be able to afford relief *through the exercise of its power*, not through the persuasive or even awe-inspiring effect of the opinion *explaining* the exercise of its power." *Haaland*, 599 U.S. at 294. "Otherwise, redressability would be satisfied whenever a decision might persuade actors who are not before the court— contrary to Article III's strict prohibition on 'issuing advisory opinions.'" *Id.* (quoting *Carney v. Adams*, 141 S. Ct. 493, 498 (2020)). The threat of civil liability from private parties does not give Planned Parenthood standing to sue state officials.

## C.    Planned Parenthood cannot establish standing based on theoretical enforcement actions against physicians

Nor can Planned Parenthood establish standing based on the Medical Licensing Board's licensing authority over physicians. To establish standing in a pre-enforcement challenge, a challenger must show "*both* 'an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a

statute,' *and* 'a credible threat of prosecution thereunder.'" *Sweeney v. Raoul*, 990 F.3d 555, 559 (7th Cir. 2021) (emphasis added) (quoting *Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 298 (1979)). A credible threat of prosecution exists only where the "likelihood of future enforcement is 'substantial.'" *California v. Texas*, 593 U.S. 659, 670 (2021) (quoting *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 164 (2014)). "[I]maginary or speculative" fears are insufficient. *Babbitt*, 442 U.S. at 298; *see Clapper*, 568 U.S. at 416 ("respondents cannot manufacture standing merely by inflicting harm on themselves based on their fears of hypothetical future harm").

On summary judgment, Planned Parenthood did not provide specific evidence showing an intention to engage in a proscribed course of conduct that would trigger enforcement action. As Planned Parenthood noted in its complaint, Indiana's Medical Licensing Board can take a licensing action against a "physician" for knowingly violating "'any state statute or rule.'" A62 ¶ 25 (quoting Ind. Code § 25-1-9-4(a)(3)); *see* Ind. Code § 25-1-9-4(a) (authorizing enforcement against "practitioner[s]," persons with a license from the board, Ind. Code § 25-1-9-2). On summary judgment, however, Planned Parenthood did not provide evidence that Planned Parenthood sought to have physicians licensed by the Board undertake actions that violate Indiana law. Instead, Planned Parenthood's director stated that Planned Parenthood wished to have unspecified "employees," "agents," and "staff" take those actions. A81–A84 ¶¶ 19–25. Those statements fall short of establishing that Planned Parenthood physicians face a threat of action from the Board, *see California*, 593 U.S. at 673, much

18

less that Planned Parenthood itself faces imminent injury to its "own legal rights and interests," *Warth v. Seldin*, 422 U.S. 490, 499 (1975).

In fact, Planned Parenthood's evidence undermines any suggestion that a licensed physician against which the Board could act faces possible sanctions from the Board. Planned Parenthood's director explained that "staff other than a physician" handles a minor's "initial visit," A77–A78 ¶ 7, and "[g]enerally, the physicians who perform abortions for [Planned Parenthood] do not see the patient until the time of the abortion," *id.* at 3 (¶ 9). Thus, based on the director's account, Planned Parenthood physicians would not interact with a minor until other staff had determined that the minor could receive an abortion in Indiana. So Planned Parenthood's evidence demonstrates that, even when it was in the business of providing abortions, its physicians would not "be in a position" to provide minors lacking necessary consents with information about how to circumvent Indiana's requirements. *Hays v. City of Urbana*, 104 F.3d 102, 103–04 (7th Cir. 1997).

Moreover, even if a minor were to interact with a physician, Planned Parenthood's director indicated that Planned Parenthood would not violate the aid-or-assist statute out of concern for "*both* liability and licensing sanctions." A83 ¶ 22 (emphasis added). But no relief against a licensing entity can eliminate the risk of liability to minors or their parents in a civil action for damages, attorney's fees, costs, and punitive damages. *See* Ind. Code § 16-34-2-4.2(d); pp. 15–17, *supra*. Planned Parenthood thus has not shown that relief against the Medical Licensing Board would provide redress, prompting physicians to assist minors with evading requirements to

19

obtain parental consent or a judicial bypass. *See Nova Health Sys. v. Gandy*, 416 F.3d 1149, 1158–60 (10th Cir. 2005) (holding an injury was not redressable because "[e]ven if these [state officials] were enjoined from seeking damages . . . there would still be a multitude of other prospective litigants who could potentially sue Nova").

Besides, even if the director's statements constituted evidence that Planned Parenthood had standing when this case was filed or summary-judgment briefing began, whether Planned Parenthood still retains a personal stake in this litigation is unclear. Planned Parenthood no longer provides abortions in Indiana, SA4 n.2, creating uncertainty regarding whether unemancipated minors seeking abortions without required consents are going to Planned Parenthood, whether those minors interact with any physicians holding licenses from the Board, and whether those physicians knowingly assist minors with evading Indiana's consent requirements despite the resulting exposure to civil liability. That doubt may make a remand proper if the Court does not reverse outright for lack of a live controversy. *See Keep Chicago Livable v. City of Chicago*, 913 F.3d 618, 623, 626 (7th Cir. 2019) (when "the passage of time has resulted in changed facts and circumstances" throwing present standing into doubt, "the proper course in these circumstances is to vacate the district court's decisions and remand for a determination of standing").

At a minimum, Planned Parenthood's concern that members of the Board or the Commissioner might take enforcement actions against licensees for violations of the aid-or-assist statute is insufficient to support an injunction against the other defendant state officials who do not have a licensing role. Authority to enjoin an official

with enforcement power cannot be "parlay[ed]" into authority to enjoin officials without that power. *Whole Woman's Health*, 595 U.S. at 44; *see Haaland*, 599 U.S. at 292–93. The district court lacked jurisdiction to enter a judgment and permanent injunction against the defendant state officials.

## II.    The First Amendment Does Not Protect Planned Parenthood's Intentional Efforts To Aid or Assist Violations of Indiana Law

Regardless, the district court erred in holding that Indiana's prohibition on knowingly or intentionally aiding or assisting a minor with obtaining an abortion without required consents violates the First Amendment as applied. Indiana law generally requires that providers obtain consent from a parent, guardian, or other proper person before performing procedures on children, including in the abortion context. *See* Ind. Code §§ 16-34-2-4, 16-36-1-3, 16-36-1-5(b). A key corollary to that requirement is Indiana's prohibition on intentionally helping minors obtain abortions yet evade these required consents. That prohibition serves to ensure that "parents," "who have the primary responsibility for children's well-being," are able to "discharge . . . that responsibility." *Bellotti v. Baird*, 443 U.S. 622, 639 (1979) (cleaned up). To that end, Indiana prohibits "knowingly or intentionally aid[ing] or assist[ing] an unemancipated pregnant minor in obtaining an abortion without the consent required" for an abortion in Indiana. Ind. Code § 16-34-2-4.2(c).

On its face, Indiana's prohibition on aiding and assisting minors "does not abridge free speech." *United States v. O'Brien*, 391 U.S. 367, 375 (1968). It prohibits the entire spectrum of conduct designed to assist minors with circumventing Indiana's consent requirements—from helping physicians perform abortions without

required consent, to driving minors across state lines for abortions without their parents' knowledge, to falsifying signatures on consent documents. SA8. As the district court observed, it is possible for intentional efforts to aid minors in obtaining abortions without consent to involve speech. SA8. That speech could include providing minors with information about how to obtain abortions out-of-state, referring them to abortion providers, or contacting abortion providers for minors. *Id.* But the Supreme Court has "never" found that the First Amendment reaches conduct "'merely because the conduct was in part initiated, evidenced, or carried out by means of language, either spoken, written, or printed.'" *United States v. Hansen*, 599 U.S. 762, 783 (2023) (quoting *Giboney v. Empire Store & Ice Co.*, 336 U.S. 490, 502 (1949)).

When "speech [is] integral to unlawful conduct," it "has no social value; therefore, it is unprotected." *Hansen*, 599 U.S. at 783. So States may prohibit solicitation or aiding and abetting illegal acts without triggering the First Amendment. *See id.* at 771. For centuries, governments have prohibited "aiding or abetting" conduct through both "lending physical aid" and using "words" to further prohibited enterprises. *Id.*; *see also Rice v. Paladin Enters., Inc.*, 128 F.3d 233, 265 (4th Cir. 1997) ("instruction in the methods of . . . crime" is not protected by the First Amendment). The government may lawfully prohibit speech that is "intended to induce or commence illegal activities," whether "commercial or not." *United States v. Williams*, 553 U.S. 285, 298 (2008); *see Ohralik v. Ohio State Bar Ass'n*, 436 U.S. 447, 456 (1978). That is all that Indiana's statute does here. It prohibits persons from intentionally helping minors circumvent consent requirements. Ind. Code § 16-34-2-4.2(c).

The district court brushed off the comparison to aiding-and-abetting statutes, saying that Planned Parenthood "is not seeking to provide unemancipated minors information regarding how to procure an abortion within Indiana" but abortions that would be legal in another State. SA11. That statement overlooks that the conduct Planned Parenthood seeks to undertake would occur in Indiana in violation of an Indiana law designed to protect the integrity of Indiana's consent requirements. The mere fact that the actual abortion might be performed where it is legal does not render Planned Parenthood's entire course of conduct lawful. *See Steele v. Bulova Watch Co.*, 344 U.S. 280, 287 (1952); *Giboney*, 336 U.S. at 502.

Moreover, the Indiana law that Planned Parenthood would be violating is "integral" to Indiana's efforts to preserve parents' ability to make important decisions for their underage children, including decisions about abortion. *Giboney*, 336 U.S. at 498. Indeed, the Supreme Court has repeatedly recognized the importance of parental-consent requirements for ensuring that parents can "discharge" their usual "responsibility" to ensure their children's wellbeing. *Bellotti*, 443 U.S. at 639; *see Ayotte v. Planned Parenthood of N. New England*, 546 U.S. 320, 326 (2006); *Hodgson v. Minnesota*, 497 U.S. 417, 445 (1990); *Parham v. J. R.*, 442 U.S. 584, 603 (1979). So the First Amendment does not immunize Planned Parenthood's conduct simply because "speech or writing" happens to be used. *Giboney*, 336 U.S. at 498.

*Holder v. Humanitarian Law Project*, 561 U.S. 1 (2010), is not to the contrary. In that case, the Court declined to consider whether the statute regulated speech integral to illegal conduct. *Id.* at 27 n.5. Instead, proceeding on the assumption that

23

the statute triggered some level of First Amendment scrutiny, the Court held that strict scrutiny applied because the challenged statute regulated "speech on the basis of its content." *Id.* at 27. Critically, the statute prohibited providing "material support" for designated terrorist organizations via "training" and "expert advice," 18 U.S.C. § 2339A(b)(1), defining "training" to refer to speech that imparted a "specific skill" rather than "general knowledge," § 2339A(b)(2), and "expert advice" to be speech that imparted "specialized knowledge," § 2339A(b)(3). The statute thus constituted a regulation of speech because courts had to ask whether the legal training and political advocacy that the challengers sought to provide "impart[ed] a 'specific skill'" or was "derived from 'specialized knowledge.'" 561 U.S. at 27. By contrast, Indiana's statute makes no reference to speech's content. It prohibits *all* aiding or assisting. Any effect on speech "is plainly incidental." *Rumsfeld v. Forum for Acad. & Inst. Rts., Inc.*, 547 U.S. 47, 62 (2006).

*Rumsfeld* illustrates the point. There, universities challenged federal laws that barred the universities from treating military recruiters differently than other prospective employers. 547 U.S. at 52–54. The Court recognized that compliance with the law would require schools sending "e-mails and post[ing] notices" for non-military recruiters to "send e-mails and post notices on behalf of the military." *Id.* at 61. But the Court rejected the argument that the law ceased to be a regulation of conduct, explaining that the law only proscribed what the schools must do (allow equal access) not what they must say or not say about their own position regarding the military. *Id.* at 60, 62. So too here. The law only proscribes what Planned Parenthood may do

24

(knowingly and intentionally assist a child in circumventing Indiana's parental consent law), not what it says regarding its own position on abortion.

Although the district court admitted Indiana's statute "might be viewed as a restriction only on conduct," it deemed the statute a speech restriction because "as applied to [Planned Parenthood] and its staff, any violation of the statute obviously 'depends on what they say.'" SA9. Factually, that is not the case. Just as "obviously," Planned Parenthood could run afoul of the statute without ever speaking by, for example, providing transportation for a minor for an abortion without her parent's consent. Any words involved in that instance are irrelevant. Or, in other instances, Planned Parenthood may be able to "say" the same words regarding abortion facilities to a minor who is emancipated or a minor with parental consent. The statute then has no bearing on "what they say." SA9; *see* Ind. Code § 16-34-2-4.2(a)–(b).

Legally, moreover, the district court erred in presuming that "*any* examination of speech or expression inherently triggers heightened First Amendment concern." *City of Austin v. Reagan Nat'l Advert. of Austin, LLC*, 596 U.S. 61, 73 (2022). Even where a regulation restricts conduct, it is sometimes necessary to examine words to see whether it qualifies as *that* conduct. "Congress, for example, can prohibit employes from discriminating in hiring on the basis of race." *Rumsfeld*, 547 U.S. at 62. "The fact that this will require an employer to take down a sign reading 'White Applicants Only,' hardly means that the law should be analyzed as one regulating the employer's speech rather than conduct." *Id.*; *see Giboney*, 336 U.S. at 502 (same for antitrust law prohibiting "agreements in restraint of trade").

Likewise here, any burdens on speech from Indiana's regulation of conduct that aids or assists minors with avoiding consent requirements are "incidental." *Rumsfeld*, 547 U.S. at 62. Words may be involved when Planned Parenthood calls an abortion provider to arrange for a young teen to obtain an abortion or refers the teen to that provider. But the reason that Planned Parenthood is violating Indiana law has nothing to do with the content of the call or referral. If a parent (or judge) has consented to this abortion, or if the minor is emancipated, the call is permissible. The violation inheres in the fact of making a call or referral with the intention of assisting a minor with circumventing Indiana's consent requirements. The same is true with respect to disseminating information that aids a minor in circumventing Indiana's consent requirements. The kind of information provided does not matter. What matters is the act of helping a minor evade consent requirements.

At the very least, the statute's facial neutrality means that it should not be subject to strict scrutiny under the First Amendment. Generally, strict scrutiny applies "to regulations that suppress, disadvantage, or impose differential burdens upon speech because of its content," *Turner Broad. Sys., Inc. v. FCC*, 512 U.S. 622, 642 (1994)—that is, to regulations that apply "'because of the topic discussed or the idea or message expressed.'" *City of Austin*, 596 U.S. at 69. But a less exacting standard applies to "laws that confer benefits or impose burdens on speech without reference to the ideas or views expressed," such as regulations that require cable operators "to offer carriage to a certain minimum number of broadcast stations," laws that prohibit any "posting of signs on public property," and laws that require "sales and

26

solicitations to take places at designated locations." *Turner Broad.*, 512 U.S. at 643–44. Hence, to the extent that the First Amendment is implicated, the district court should have applied intermediate scrutiny. *See Rumsfeld*, 547 U.S. at 67–68.

## III. Indiana's Prohibition on Intentionally Aiding or Assisting Minors with Avoiding Consent Requirements Survives Any Level of Scrutiny

Whatever the level of scrutiny, Indiana satisfies it. Indiana's prohibition on knowingly or intentionally aiding or assisting a minor with obtaining an abortion without a parent's or, alternatively, a judge's, consent serves compelling state interests. It protects parental rights, familial relations, and children's wellbeing. There is, moreover, no other reasonable way to protect those interests than prohibiting intentional efforts to cut parents out of the picture, whatever form those efforts might take. The district court's—and Planned Parenthood's—objections to Indiana's targeted prohibition amount to objections to the time-honored principle that parents have primary responsibility to make important decisions for underage children.

### A. Indiana's law advances compelling interests in protecting the parent-child relationship and the child's wellbeing

As the Supreme Court has long recognized, States have compelling reasons to involve a child's parents or guardians in making important decisions, including decisions about medical procedures. "Most children, even in adolescence, simply are not able to make sound judgments concerning many decisions, including their need for medical care or treatment." *Parham*, 442 U.S. at 603; *see Roper v. Simmons*, 543 U.S. 551, 569 (2005) ("In recognition of the comparative immaturity and irresponsibility of juveniles, almost every State prohibits those under 18 years of age from voting,

27

serving on juries, or marrying without parental consent."); *Johnson v. Texas*, 509 U.S. 350, 367 (1993) ("[a] lack of maturity" in youth "often result[s] in impetuous and ill-considered actions and decisions"). The law therefore generally entrusts "parents" with making medical decisions for children "on a presumption that parents possess what a child lacks in maturity, experience, and capacity for judgment required for making life's difficult decisions." *Parham*, 442 U.S. at 602; *see, e.g.*, Ind. Code § 16-36-1-3 (generally requiring parental consent for medical decisions).

Indeed, the Supreme Court has recognized "on numerous occasions that the relationship between parent and child is constitutionally protected." *Quillion v. Walcott*, 434 U.S. 246, 255 (1978). "Parents," the Court has explained, "have an important 'guiding role' to play in the upbringing of their children, which presumptively includes counseling them on important decisions." *H.L. v. Matheson*, 450 U.S. 398, 410 (1981). States thus "can properly conclude that parents . . . who have the primary responsibility for children's well-being are entitled to the support of laws designed to aid discharge of that responsibility." *Bellotti*, 443 U.S. at 639 (cleaned up); *see Ginsberg v. New York*, 390 U.S. 629, 639 (1968). In fact, even when abortion was protected at the federal level, the Court "never challenged a State's reasonable judgment that the [abortion] decision should be made after notification to and consultation with a parent." *Hodgson*, 497 U.S. at 445. "States," the Court emphasized, "unquestionably have the right to require parental involvement." *Ayotte*, 546 U.S. at 326; *see Zbaraz v. Hartigan*, 763 F.2d 1532, 1536 (7th Cir. 1985).

Protecting parents' ability to be involved in decisions about abortion makes sense. As the Court has explained, the decision to obtain an abortion is a "'grave decision,'" *Bellotti*, 443 U.S. at 641, with "potentially traumatic and permanent consequences," *Matheson*, 450 U.S. at 412. Yet youth is typified by "'immaturity, inexperience, [and] lack of judgment.'" *Ayotte*, 546 U.S. at 326; *see Bellotti*, 443 U.S. at 641. That makes it critical to ensure that parents know their child is considering abortion and, even if the parents do not get the final word, to give parents an "opportunity" to provide their child with "needed guidance and counsel." *Hodgson*, 497 U.S. at 448–49; *see Bellotti*, 443 U.S. at 641 ("It seems unlikely that [a minor] will obtain adequate counsel and support from the attending physician at an abortion clinic."). State laws preserving parents' ability to speak into their children's lives do not merely give children the benefit of their parents' counsel. They also ensure that physicians performing abortions or follow-up care receive "essential medical and other information." *Matheson*, 450 U.S. at 411. Parents can "provide medical and psychological data, refer the physician to other sources of medical history, such as family physicians, and authorize family physicians to give relevant data." *Id.* Laws involving parents in the decisional process thus promote the State's "strong and legitimate interest in the welfare of its young citizens." *Hodgson*, 497 U.S. at 444.

By involving parents, moreover, States ensure that parents can care well for any children who have an abortion. "The medical, emotional, and psychological consequences of an abortion are serious and can be lasting; this is particularly so when the patient is immature." *Matheson*, 450 U.S. at 411. As research suggests, "the

29

emotional and psychological effects of the . . . abortion experience are markedly more severe in girls under 18." *Id.* at 411 n.20. Thus, it is important that parents know of any abortion and have the opportunity to participate in the decisionmaking process so that the parents, who have a continuing responsibility to care for their child, can ensure their child receives appropriate follow-up care in the event of a complication and appropriate psychological, emotional, and spiritual support. Laws like Indiana's—which generally require minors to obtain parental consent for an abortion and prohibit persons from aiding minors in evading that consent requirement, Ind. Code § 16-34-2-4.2(c)—thus serve compelling state interests in protecting minors' wellbeing, the family unit, and parents' ability to care for their children.

### B.    The district court's objections amount to disagreement with Supreme Court decisions upholding similar laws

The district court did not dispute that safeguarding the parent-child relationship and protecting minors' wellbeing are compelling interests. SA13. Instead, the court argued that applying Indiana law to Planned Parenthood would not advance Indiana's interests because providing minors with information about out-of-state abortion providers, referring minors to those providers, and contacting those providers on minors' behalf are "removed from performing an abortion without parental consent." SA15; *see* SA16. But Planned Parenthood does not wish to give children information about abortion to help them write academic papers on abortion regulations. Planned Parenthood wishes to provide information, give referrals, and make calls for the express purpose of "knowingly or intentionally aid[ing] or assist[ing] a pregnant minor in obtaining an abortion without the consent required" under Indiana

law. Ind. Code § 16-34-2-4.2(c). Prohibiting Planned Parenthood from coaching minors on how to obtain abortions without parental consent therefore directly advances the State's interest in stopping medical providers from cutting parents out of their children's medical decisions, just like statutes that prohibit the aiding and abetting of illegal conduct directly advance the State's interest in stopping that conduct.

The Supreme Court's decisions on parental consent and notification requirements underscore the point. In *Hodgson*, the Court upheld a state law requiring that a minor wait 48 hours after notifying a parent of her intention to get an abortion. 497 U.S. at 448–49. That law, like Indiana's, was a step removed from actually obtaining an abortion without a parent's consent; the law did not prevent a minor from obtaining an abortion without consent or require parents to provide counsel to the minor. But the Court thought it "clear" that the law would "further the legitimate state interest in ensuring that a minor's decision is knowing and intelligent," explaining that the waiting period provided an "opportunity" for the parent to offer "guidance and counsel." *Id.* at 448. So too here. Barring Planned Parenthood from intentionally assisting a minor with evading requirements to obtain parental (or judicial) consent for an abortion serves to protect parents' ability to make important decisions for their children or at least to have the "opportunity" to provide input.

Similarly, in *Matheson*, the Court upheld another state statute that required physicians to notify a minor's parents or guardians, if possible, before performing an abortion. That statute, too, was a step removed from "performing an abortion without parental consent." SA15. The statute only required notice to parents. It did not

require parents to respond to the notice in any particular way, or give the parents "veto power over the minor's decision." *Matheson*, 450 U.S. at 405; *see id.* at 411. Yet the Court still concluded that "the statute plainly serve[d] the important considerations of family integrity and protecting adolescents" and safeguarded children's well-being by providing "an opportunity for parents to supply essential medical and other information." *Id.* at 411. That reasoning applies here. If requiring that a physician notify a minor's parent before performing an abortion "plainly" advances critical state interests, so too does prohibiting Planned Parenthood from instructing minors on how to obtain abortions without notice to their parents or their parents' consent.

It thus does not matter whether Planned Parenthood's actions necessarily inflict "specific psychological or physical harm" or whether there is a possibility that, if the statute is violated, minors might still "consult with their parents." SA15. Where, as here, information is provided with the avowed purpose of circumventing laws requiring parental consent for an abortion (or judicial consent and parental notification), Ind. Code § 16-34-2-4.2(c), there is harm to the State's "unquestionabl[e] . . . right to require parental involvement" in the decisionmaking process about abortion, *Ayotte*, 546 U.S. at 326. For state laws requiring abortion providers to notify a minor's parents before performing an abortion or to obtain parental consent to be effective, States must have the ability to prohibit intentional interference with those laws. Applying to Planned Parenthood Indiana's prohibition on knowingly and intentionally aiding minors in circumventing Indiana's parental consent and notification requirements "is reasonably calculated to protect minors . . . by enhancing the potential for

parental consultation concerning a decision that has potentially traumatic and permanent consequences." *Matheson*, 450 U.S. at 412.

Even if applying the statute to disseminating general information to minors on how to evade Indiana's parental consent laws does not advance Indiana's interests, applying the statute to direct referrals and phone calls to abortion providers does. Direct referrals and phone calls do more than just teach a minor how to obtain an abortion without involving her parents—involvement that, of course, "States unquestionably have the right to require." *Ayotte*, 546 U.S. at 326. Referring minors to abortion providers or actually calling those providers to make appointments for minors more directly facilitates abortions without parental or judicial consent. Even the district court conceded that referrals are "further along the path" to "obtain[ing] an abortion without parental consent." SA16. So even if prohibiting Planned Parenthood from providing information to minors with the intent of evading consent requirements does not advance the State interests, barring Planned Parenthood from making referrals to abortion providers or setting up appointments for minors does.

Embracing the district court's view that statutes do not advance compelling interests if they regulate activities a step removed from the ultimate harm that the government seeks to prevent would have ramifications beyond the abortion context. Recall that States generally require that children obtain their parents' consent "before undergoing an operation, marrying, or entering military service." *Hodgson*, 497 U.S. at 445. Helping a teen forge paperwork necessary to obtain an operation without their parents' involvement may be a step removed from performing the operation. But

the instruction would still undermine States' compelling interests in preserving parents' ability to participate in medical decisionmaking. Similarly, providing foreign terrorist organizations monetary support for "legitimate activities," *Holder*, 561 U.S. at 29, or training members on "'how to use humanitarian and international law to resolve peaceful disputes,'" *id.* at 36, may be "several steps removed" from committing terrorist acts. But allowing money and expert advice to flow freely to terrorist organizations would undermine the government's important interest in combating terrorism. *Id.* at 39. Applying Indiana's aid-or-assist statute to efforts intentionally designed to nullify laws requiring parental consent for abortions advances compelling state interests.

The district court's other objection was that minors could potentially obtain information from the internet that would allow them to avoid Indiana's parental-consent requirement. SA15. That is an objection that Indiana law is underinclusive because it does not regulate every potential source of information about abortion. But the First Amendment "imposes no freestanding 'underinclusiveness limitation.'" *Williams-Yulee v. Florida Bar*, 575 U.S. 443, 449 (2015) (quoting *R.A.V. v. City of St. Paul*, 505 U.S. 377, 387 (1992)). Although "[u]nderinclusiveness" can cast doubts on whether the government is "in fact pursuing the interest it invokes" or suggest that "a law does not actually advance a compelling interest," *id.* at 448–49, the mere fact that Indiana did not seek to scrub all information about abortion from the internet does not suggest that its interest in protecting the parent-child relationship or children's wellbeing is unimportant. Rather, in enacting the aid-or-assist statute,

34

Indiana decided to "focus on [its] most pressing concern[]," *id.* at 449—*intentional efforts* to assist minors with circumventing consent requirements.

Bear in mind, moreover, that the permanent injunction covers more than sharing information "any member of the public" can find "via a simple internet search." SA15. It covers disseminating *any* "information regarding legal abortion practices and abortion care providers in states other than Indiana"—a category that includes information not available "via simple internet search," like detailed instructions about where to show up for an abortion and at what time. SA15, SA20. So even if some information provided to minors could be available on the internet, this does not show that the challenged statute generally fails to advance compelling state interests. Indiana's statute is "not invalid merely because it could have been drafted in a more expansive fashion." *Curtis v. Thompson*, 840 F.2d 1291, 1303 n.10 (7th Cir. 1988).

## C. Indiana's law—which targets intentional efforts to interfere with the parent-child relationship—is narrowly tailored

Indiana's prohibition on knowingly and intentionally aiding or assisting unemancipated minors with obtaining abortions without the required consents is narrowly tailored as well. To decide if a statute is narrowly tailored, courts must "ask whether there are other reasonable ways to achieve the goals with a lesser burden on constitutionally protected activity." *Doe v. City of Lafayette*, 377 F.3d 757, 773 (7th Cir. 2004) (cleaned up). Here, there is no less restrictive way of protecting parents' ability to participate in important decisions affecting their children, the parent-child relationship, and children's wellbeing without prohibiting intentional efforts to circumvent laws that require parental or judicial consent for most abortions. In fact, the

district court did not identify another way that Indiana could protect its interests. Instead, the court hypothesized that situations might arise in which applying the statute would not advance Indiana's interests. But concern about hypothetical applications of a statute does not justify enjoining all of a statute's applications in what purports to be an as-applied challenge. And the statute is not overbroad.

Indiana's prohibition on knowingly or intentionally aiding or assisting a minor with obtaining an abortion without required consents is narrowly tailored, even as applied to Planned Parenthood's activities. By its terms, the statute applies only to "knowing[] or intentional[]" efforts to "aid or assist an unemancipated pregnant minor in obtaining an abortion without the consent required" under Indiana law—in other words, intentional efforts to circumvent consent requirements. Ind. Code § 16-34-2-4.2(c). Indiana does not regulate all speech to minors about abortion or even all speech that helps a minor obtain an abortion. The statute that Planned Parenthood challenges applies "only if" consent is required by Indiana Code § 16-34-2-4 "and has not been given." § 16-34-2-4.2(a). This means that the statute poses no obstacle to Planned Parenthood assisting emancipated minors, minors who have parental or judicial consent for an abortion, or minors facing an emergency need for an abortion. *See* § 16-34-2-4(a), (b), (k). Nor does the law prohibit Planned Parenthood from helping minors obtain consents required by Indiana law. § 16-34-2-4.2(b). Planned Parenthood can be held liable only for efforts intentionally designed to aid minors in obtaining abortions without consent from a parent or a judicial waiver.

36

1.   **The district court's assumption that some children are mature cannot justify the injunction**

In the district court's view, the statute was still overbroad as applied to Planned Parenthood. It assumed that Indiana's interests in protecting parental rights, the parent-child relationship, and children's wellbeing are only "significant in the context of an *immature* minor seeking to obtain an abortion." SA19 (cleaned up). So the court posited that Indiana lacks any compelling interest in restricting Planned Parenthood's efforts to help "a mature minor capable of making the abortion decision independently," such as a minor who might meet the requirements for a "judicial bypass under Indiana law" but "for whatever reason" does not want to demonstrate to a court's satisfaction that they meet the requirements to obtain an abortion without a parent's consent. SA18–SA19. That rationale does not withstand scrutiny.

First, the district court is simply mistaken that the State's interest in protecting the parent-child relationship stops at an undefined point of maturity. As the Supreme Court has recognized, parents have a "constitutionally protected" relationship with their children. *Quillion*, 434 U.S. at 255. The rationale for protecting parents' relationship with their children might be strongest before minors mature. But the "fact that a minor may be very much an adult in some respects does not mean that his or her need and opportunity for growth under parental guidance and discipline have ended." *Bellotti*, 443 U.S. at 643 n.23. Nor do parents lose all interest in directing the upbringing of their children whenever someone deems those children mature; "as a matter of law, that interest continues at least until the child achieves majority." *Planned Parenthood of Blue Ridge v. Camblos*, 155 F.3d 352, 374 (4th Cir. 1998)

(cleaned up). Indeed, parents generally have a responsibility to care for their children and make medical decisions for their children until the children reach majority. *See* Ind. Code § 35-46-1-1(a) (a parent's failure to provide support–defined as food, clothing, shelter, or medical care—to a dependent child is a felony); § 16-36-1-5(b)(2) (permitting parents to consent for their children's healthcare and permitting other persons to consent only if parents are unavailable). So there are important reasons to involve parents in momentous decisions about abortion, however mature a child might seem in Planned Parenthood's eyes.

Second, even if *some minors* are mature enough to make decisions for themselves, the district court's rationale does not justify enjoining the statute's application as to *all minors*. To justify an injunction that sweeps beyond Planned Parenthood's interactions with "mature" minors (whatever that term might mean), Planned Parenthood would have had to meet the standard for a facial challenge. *See John Doe No. 1 v. Reed*, 561 U.S. 186, 194 (2010); *GEFT Outdoor, LLC v. City of Evansville*, 110 F.4th 935, 937 (7th Cir. 2024). It would have to have shown that "a substantial number of [the law's] applications are unconstitutional, judged in relation to the statute's plainly legitimate sweep." *Moody v. NetChoice, LLC*, 144 S. Ct. 2383, 2397 (2024); *see Thayer v. City of Chicago*, 110 F.4th 1040, 1042–43 (7th Cir. 2024). But the district court never identified any basis for concluding that a "substantial number" of the law's applications are unconstitutional. Instead, it speculated that Planned Parenthood interacts with some unknown number of "mature" minors. SA18–SA19. That's not enough. *See Moody*, 144 S. Ct. at 2397–98, 2408–09.

38

And the district court's speculation is even more unwarranted given contrary Supreme Court precedent. As the Supreme Court has explained, "*[m]ost* children, even in adolescence, simply are not able to make sound judgments concerning many decisions, including their need for medical care or treatment." *Parham*, 442 U.S. at 603 (emphasis added); *see Dubbs v. Head Start Inc.*, 336 F.3d 1194, 1207 (10th Cir. 2003) ("In medical procedures involving children, ensuring the existence of parental consent is critical, because children rely on parents or other surrogates to provide informed permission for medical procedures that are essential for their care."). That is precisely why—even during the era in which abortion was constitutionally protected at the federal level—the Court held that States generally could require abortion providers to notify a minor's parents of an impending abortion or require the minor to obtain her parent's consent for an abortion. *See Matheson*, 450 U.S. at 409–11; *Hodgson*, 497 U.S. at 448–49; *Ayotte*, 546 U.S. at 326–27. The Court understood that those requirements protect the parent-child relationship, *see Matheson*, 450 U.S. at 409–11, and States' "urgent interest in the welfare of [a] child," *Lassiter v. Dep't of Soc. Servs.*, 452 U.S. 18, 27 (1981).

Third, the district court overlooked that Indiana law addresses its concerns about maturity by providing minors a way to show themselves "mature enough" to obtain an abortion without parental consent. Ind. Code § 16-34-2-4(f). The district court sought to denigrate Indiana's procedures as "complex" and as requiring "time and energy (and, we assume, finances)." SA18. But whatever the district court may have thought about the safeguards Indiana instituted to protect parents' rights and

39

minors' wellbeing, this case is no longer about Indiana's judicial-bypass procedures. It is about whether Indiana has "other reasonable ways" to protect the integrity of those procedures—and the interests they preserve—without prohibiting intentional efforts to interfere with them. *Doe*, 377 F.3d at 773. The district court identified none.

Moreover, even if one focuses on the judicial-bypass procedures themselves, the district court's reasoning does not withstand scrutiny. Although the court characterized Indiana's procedures as "complex," taking "time," and requiring "finances," SA18, the opposite is true. Under Indiana law, only unemancipated minors must seek a judicial waiver of parental consent and only if there is no emergency. *See* Ind. Code § 16-34-2-4(a), (k). If a minor needs a judicial waiver, then the minor herself, her next friend, or her physician can petition a juvenile court to permit an abortion. § 16-34-2-4(c)–(d). For the minor, that process is free, straightforward, and quick: there are no filing fees, § 16-34-2-4(j), the court must appoint counsel for the minor at the county's expense (unless the minor already has counsel), § 16-34-2-4(g), and the court must rule within 48 hours, § 16-34-2-4(f); *see also* § 16-34-2-4(h) (providing for expedited appeals); Ind. R. App. P. 62 (similar).

It may well be that Planned Parenthood would prefer a world in which there are no procedural safeguards. *See* SA18–SA19. But laws presumptively entrust parents, not private corporations or minors themselves, with directing children's upbringing. *See Troxel v. Granville*, 530 U.S. 57, 67–72 (2000) (plurality opinion). So there must be *some* kind of judicial procedure to determine when minors are mature enough to make decisions for themselves and when parents can be displaced from

their "'constitutionally protected'" responsibility for "'the custody, care and management of their children.'" *Brokaw v. Mercer Cnty.*, 235 F.3d 1000, 1018 (7th Cir. 2000). Letting Planned Parenthood or minors themselves decide who is "mature" enough to make a "grave decision," *Bellotti*, 443 U.S. at 641, is not another "reasonable means for [Indiana] to advance its compelling interest[s]," *Doe*, 377 F.3d at 774.

### 2. The district court's assumption that some minors may have their parents' consent cannot justify the injunction

Alternatively, the district court suggested that Indiana's prohibition is not narrowly tailored because Planned Parenthood might wish to assist minors to obtain abortions who are acting "in consultation with their parents." SA18–SA19. That rationale does not withstand scrutiny either. First, the district court identified no basis for supposing that the statute covers situations in which a parent visits Planned Parenthood with her child seeking information about abortion. The statute prohibits "knowing[]" and "intentional[]" efforts to aid an unemancipated minor with evading requirements to obtain required consents—not assisting a parent who is willing to consent to their minor child's abortion but needs assistance navigating the process. Ind. Code § 16-34-2-4.2(c); *see* § 16-34-2-4.2(a)–(b). Hypothetical concerns provide no basis for declaring a statute unconstitutional, especially in an as-applied challenge. *Hegwood v. City of Eau Claire*, 676 F.3d 600, 603 (7th Cir. 2012); *see Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442, 450 (2008).

Second, the district court's concern about this specific "hypothetical" application cannot support the current injunction. *Ctr. for Individual Freedom v. Madigan*, 697 F.3d 464, 475 (7th Cir. 2012); *see John Doe*, 561 U.S. at 194. The current

injunction is not limited to situations in which Planned Parenthood wishes to assist a minor acting "in consultation with [her] parents." SA18–SA19. It authorizes Planned Parenthood to arrange abortions for minors that circumvent Indiana's consent requirements in all circumstances, including where minors are acting without their parents' knowledge or consent. SA20. Yet the district court did not determine that the standards for a facial challenge were met, which means the injunction cannot stand. *See GEFT Outdoor*, 110 F.4th at 937.

Third, the district court again overlooked that Indiana law already accommodates situations in which parents wish to help their children get abortions. Indiana allows an unemancipated minor to obtain an abortion with a parent's consent, Ind. Code § 16-34-2-4(b), and permits Planned Parenthood to "aid[] or assist[] an unemancipated pregnant minor" in obtaining "parental consent," § 16-34-2-4.2(b). Only efforts specifically designed to help minors obtain abortions without the required parental consent are prohibited. § 16-34-2-4.2(c).

Although the district court criticized Indiana's requirements for documenting parental consent, SA17, this case is no longer about those presumptively valid requirements. *See Dobbs*, 597 U.S. at 301. This case concerns whether Indiana has "other reasonable ways" to protect the integrity of requirements that seek to involve parents without prohibiting intentional interference. *Doe*, 377 F.3d at 773. Once again, the district court identified none.

Nor is Indiana's consent process "complex." SA17. To consent to an abortion, all that a parent must provide is proof of identification (*e.g.*, a driver's license or

42

passport), "some evidence" that he or she is the child's parent (*e.g.*, a birth certification or adoption decree), and a written consent that is notarized. Ind. Code § 16-34-2-4(b). Those identification and documentation requirements are a reasonable measure to ensure any consent is genuine. In fact, similar documentation is required in other contexts. *See, e.g.*, *Crawford v. Marion Cnty. Election Bd.*, 472 F.3d 949, 952 (7th Cir. 2007), *aff'd* 553 U.S. 181 (2008) (government-issued proof of identity to vote); *United States v. Smith*, 426 F.3d 567, 573 (2d Cir. 2005) (government identification requirement to enter federal building); *Tripp v. Scholz*, 872 F.3d 857, 866–67 (7th Cir. 2017) (notarization requirement on nominating petitions for state office).

### 3.     The district court's remaining objection lacks merit

The district court's final objection to prohibiting intentional efforts to circumvent Indiana's consent requirements was that some minors will not be eligible for an abortion in Indiana at all, because those minors do not face circumstances in which Indiana law would allow for legal abortions. SA18. That objection amounts to an attack on Indiana's "legitimate" decision to limit the circumstances under which abortion is legal in Indiana. *Dobbs*, 597 U.S. at 301. It fails to demonstrate that Indiana has other, less restrictive ways of preventing evasion of its consent requirements— and of protecting the interests that those requirements serve—than prohibiting efforts specifically designed to frustrate them.

The district court's injunction, moreover, is not limited to situations in which Planned Parenthood seeks to assist a minor who cannot legally obtain an abortion in Indiana even if her parent provides consent. The injunction sweeps "more broadly."

*John Doe*, 561 U.S. at 194. Yet the district court did not conduct a facial analysis, as required. *See GEFT Outdoor*, 110 F.4th at 937. The injunction thus "offends the principle that relief should be no greater than necessary to protect the rights of the prevailing litigants." *Doe v. Rokita*, 54 F.4th 518, 519 (7th Cir. 2022).

## D.    The law survives intermediate scrutiny as well

Although this Court could uphold the statute under strict scrutiny, the law is properly subject to less exacting scrutiny. *See* pp. 26–27, *supra*. To survive intermediate scrutiny under the First Amendment, a statute must "further[] an important or substantial governmental interest," "be unrelated to the suppression of free expression," and restrict speech "no greater than is essential to the furtherance of that interest." *United States v. O'Brien*, 391 U.S. 367, 377 (1968). "[A] regulation need not be the least speech-restrictive means of advancing the Government's interests," rather, the means chosen must not "burden substantially more speech than is necessary to further the government's legitimate interests." *Turner Broad. Sys., Inc. v. FCC*, 512 U.S. 622, 662 (1994) (quoting *Ward v. Rock Against Racism*, 491 U.S. 781, 799 (1989)).

Each requirement is met here. Applying the law to Planned Parenthood furthers compelling government interests in protecting parental authority, safeguarding the parent-child relationship, and promoting the well-being of minors. The aid-or-assist statute does this by preventing Planned Parenthood from helping minors obtain abortions without involving their parents. *See* pp. 27–30, *supra*. Further, Indiana's interest here has no relation to the suppression of speech. The statute does not

prohibit all or even most speech about abortion. Public debates, political communications, and advice to parents are all fair game. Instead, the statute targets conduct that seeks to nullify Indiana's requirements that unemancipated minors obtain parental or judicial consent for abortions. *See* pp. 27–30, 35–44, *supra*. For the same reasons, the statute "burdens no more speech than necessary." *See* pp. 35–44, *supra*. Planned Parenthood's First Amendment challenge lacks merit.

## CONCLUSION

The district court's judgment should be reversed.

Respectfully submitted,

THEODORE E. ROKITA
Attorney General of Indiana

/s/ James A. Barta
JAMES A. BARTA
Solicitor General

JENNA M. LORENCE
Deputy Solicitor General

JOHN M. VASTAG
Deputy Attorney General

Office of the Attorney General
IGC South, Fifth Floor
302 W. Washington Street
Indianapolis, IN 46204
(317) 232-0709
James.Barta@atg.in.gov

## CERTIFICATE OF COMPLIANCE

1.    This document complies with the type-volume limits of Circuit Rule 32(c) because this document contains 11,902 words, excluding the parts exempted by Fed. R. App. P. 32(f).

2.    This document complies with the typeface requirements of Circuit Rule 32(b) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word in Century Schoolbook 12-point font.

October 25, 2024                    /s/ James A. Barta
                                    JAMES A. BARTA
                                    Solicitor General

## REQUIRED SHORT APPENDIX

Pursuant to Circuit Rule 30, Appellants submit the following as their Required

Short Appendix. Appellants' Required Short Appendix contains all of the materials

required under Circuit Rule 30(a).


/s/ James A. Barta
JAMES A. BARTA
Solicitor General

No. 24-2219

**IN THE**
**UNITED STATES COURT OF APPEALS**
**FOR THE SEVENTH CIRCUIT**

PLANNED PARENTHOOD GREAT NORTHWEST, HAWAI'I,
ALASKA, INDIANA, KENTUCKY, INC.,

Plaintiff/Appellee,

v.

COMMISSIONER, INDIANA STATE DEPARTMENT OF HEALTH, *et al.*,

Defendants/Appellants.

On Appeal from the United States District Court for the
Southern District of Indiana, No. 1:17-cv-01636-SEB-CSW,
The Honorable Sarah Evans Barker, Judge

**REQUIRED SHORT APPENDIX OF DEFENDANTS-APPELLANTS**

Office of the Attorney General
IGC South, Fifth Floor
302 W. Washington Street
Indianapolis, IN 46204
(317) 232-0709
James.Barta@atg.in.gov

THEODORE E. ROKITA,
Attorney General of Indiana

JAMES A. BARTA
Solicitor General

JENNA M. LORENCE
Deputy Solicitor General

JOHN M. VASTAG
Deputy Attorney General

*Counsel for Defendants/Appellants*

**TABLE OF CONTENTS**

Dkt. 112 – Order on Cross Motions for Summary Judgment ................................ SA1

Dkt. 113 – Injunction and Final Judgment ......................................................... SA22

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

PLANNED PARENTHOOD GREAT          )
NORTHWEST, HAWAII, ALASKA,        )
INDIANA, KENTUCKY, INC,           )
                                  )
            Plaintiff,            )
                                  )
        v.                        )      No. 1:17-cv-01636-SEB-MG
                                  )
COMMISSIONER, INDIANA STATE       )
DEPARTMENT OF HEALTH, et al.,     )
                                  )
            Defendants.           )

**ORDER ON CROSS MOTIONS FOR SUMMARY JUDGMENT**

This cause is now before the Court on Plaintiff's Motion for Summary Judgment

[Dkt. 85] and Defendants' Cross Motion for Summary Judgment [Dkt. 88], filed on

December 16, 2022 and January 18, 2023, respectively.  Following the Supreme Court's

decision in *Dobbs v. Jackson Women's Health Organization*, 597 U.S. 215 (2022) and the

ensuing state-court litigation in Indiana, the only disputed issue remaining in this action is

Plaintiff Planned Parenthood Great Northwest, Hawaii, Alaska, Indiana, Kentucky, Inc.'s

("PPGNHAIK") First Amendment challenge to Indiana Code § 16-34-2-4.2(c) (the "aid-

or-assist statute").  That state statute, among other things, prohibits any person from

providing assistance to a minor in pursuing out-of-state alternatives for obtaining an

abortion, including informing the minor of any such alternatives that may carry less

stringent requirements than those imposed under Indiana law.

**SA1**

In 2017, our court preliminarily enjoined enforcement of the aid-or-assist statute insofar as it would prohibit persons, including PPGNHAIK and its physicians, from disseminating to minors any information regarding legal abortion practices in states other than Indiana on grounds that the statute likely violated the First Amendment's free speech guarantee.  Defendants Commissioner, Indiana State Department of Health; Marion County Prosecutor; Lake County Prosecutor; Monroe County Prosecutor; Tippecanoe County Prosecutor; Members of the Indiana Licensing Board; and Judge, Marion Superior Court, Juvenile Division (collectively, the "State") challenged other portions of the Court's preliminary injunction order, but did not appeal the preliminary injunction issued by the Court as to the aid-or-assist statute; accordingly, that preliminary injunction we issued has remained in place since 2017.

PPGNHAIK now seeks final judgment in its favor as to its First Amendment challenge to the aid-or-assist statute, seeking to have the State permanently enjoined from enforcing Indiana Code § 16-34-2-4.2(c) not only insofar as the statute would prohibit PPGNHAIK and its physicians from disseminating information regarding legal abortion practices in states other than Indiana to minors who seek abortion services without complying with Indiana's parental consent requirements, but also insofar as it would prohibit PPGNHAIK and its physicians from making medical referrals and/or contacting out-of-state providers on behalf of such minors when requested.  The State, on the other hand, seeks final judgment in its favor, arguing that the aid-or-assist statute imposes a conduct-based restriction that does not encroach upon or violate First Amendment freedoms, and, even if the statute did regulate speech, it survives strict scrutiny because it

**SA2**

is narrowly tailored to vindicate Indiana's compelling interests in investigating criminal

activity, safeguarding the parent-child relationship, and protecting the physical and

psychological well-being of minors.

For the reasons detailed below, we GRANT Plaintiff's Motion for Summary

Judgment and DENY Defendants' Cross Motion for Summary Judgment.

**Factual Background**

Indiana's "aid-or-assist" statute prohibits "[a] person" from "knowingly or

intentionally aid[ing] or assist[ing] an unemancipated pregnant minor in obtaining an

abortion without the consent required" under Indiana law.  IND. CODE § 35-41-2-4(c).

The aid-or-assist statute "applies only if consent is required under [Indiana Code § 16-34-

2-4] and has not been given."[1]  IND. CODE § 16-34-2-4.2(a).  A person who violates this

---

[1]   Under Indiana Code § 16-34-2-4, before performing an abortion on an unemancipated pregnant minor, a physician must obtain the notarized written consent of the parent, legal guardian, or custodian of the unemancipated minor, government-issued proof of identification from the consenting parent, legal guardian, or custodian, and "some evidence, which may include identification or other written documentation that provides an articulable basis for a reasonably prudent person to believe that the person is the parent, legal guardian, or custodian of the unemancipated pregnant minor."  IND. CODE § 16-34-2-4(b).  The physician must then execute an affidavit to be included in the unemancipated minor's medical record certifying that "to the physician's best information and belief, a reasonable person under similar circumstances would rely on the information provided by the unemancipated pregnant minor and the unemancipated pregnant minor's parent or legal guardian or custodian as sufficient evidence of identity and relationship."  IND. CODE § 16-34-2-4(l).
   These requirements are applicable in every case unless one of the following exceptions applies: (1) the unemancipated minor is pregnant as a result of rape or incest by a parent, legal guardian, or custodian; (2) the attending physician certifies in writing that there is an emergency need for a medical procedure to be performed to avert the pregnant minor's death or a substantial and irreversible impairment of a major bodily function of the pregnant minor; or (3) the unemancipated pregnant minor successfully petitions the juvenile court in the county in which they reside or in which the abortion is to be performed for a waiver of the parental consent requirement.  To receive a waiver, the unemancipated pregnant minor must demonstrate to the juvenile court's satisfaction either that they are sufficiently mature to make the abortion decision independently or that the abortion would be in their best interests.  Even if such a showing is

statute "is civilly liable to the unemancipated pregnant minor and the parent or legal

guardian or custodian of the unemancipated pregnant minor."  IND. CODE § 35-41-2(d).

Originally adopted under a pre-*Dobbs* framework in which Indiana law permitted

juveniles to have abortions in the first trimester so long as they had parental or judicial

consent, the aid-or-assist statute precludes anyone from aiding or assisting

unemancipated minors who have not complied with the parental consent requirements to

obtain abortions in other states with less onerous abortion restrictions, including by

providing information to such minors about abortion services available outside of

Indiana.  Post-*Dobbs*, Indiana law has been recently amended to ban nearly all abortions

in the state, with narrow exceptions for rape and/or incest, fatal fetal anomalies, and the

life or health of the mother, and to require that those abortions that are permitted be

performed in a hospital-owned ambulatory outpatient surgical center.[2]  *See* IND. CODE

§ 16-34-2-1.  The parties agree that these post-*Dobbs* amendments to Indiana abortion

law do not affect the aid-or-assist statute which is still interpreted by the State to preclude

anyone from aiding or assisting unemancipated juveniles from obtaining abortions in

made, the unemancipated pregnant minor's parent, legal guardian, or custodian is required to be
provided notification of the unemancipated minor's intent to obtain an abortion before the
abortion is performed unless the minor also demonstrates to the juvenile court's satisfaction that
it is in their best interest to have the parental notification requirement waived as well.  IND. CODE
§ 16-34-2-4(b), (d).
[2] Because PPGNHAIK does not operate a hospital or ambulatory outpatient surgical center,
under these amendments, it is prohibited from performing abortions in Indiana.  However,
PPGNHAIK's standing to challenge Indiana's aid-or-assist statute is unaffected because the
statute prohibits any person, not just abortion providers, from aiding or assisting a minor in
obtaining an abortion without parental consent.

other states without parental consent, including by providing minors information regarding abortion services available in states other than Indiana.

PPGNHAIK, which operates 11 health centers in Indiana that provide a broad range of reproductive and sexual health services to thousands of clients, including adults and minors, is regularly contacted by patrons, including unemancipated minors, for abortion services. When PPGNHAIK is unable to perform the abortion services sought by its patients, its employees and physicians currently inform those clients, including unemancipated minors, that they have the option to receive abortion services in states other than Indiana. Smith Decl. ¶¶ 18–19. For example, PPGNGHAIK and its staff are aware that various states outside of Indiana have less restrictive abortion laws, including less restrictive parental bypass and notification requirements for unemancipated minor patients, and PPGNGHAIK will inform patients and those seeking abortion services of the availability of such services in other states. *Id.* ¶¶ 19–20.

PPGNGHAIK typically directs patients to the website <abortionfinder.org>, which maintains current information regarding the location(s) of available abortion services and gestational age limitations. *Id.* ¶ 19. Some of PPGNHAIK's health centers also provide patients with an informational sheet listing other locations where abortion services can be accessed. *Id.* PPGNHAIK and its staff will at times provide specific contact information for an abortion provider in another state. *Id.* ¶ 21. If a minor patient requests or appears to need additional assistance, PPGNHAIK seeks authority under law to contact an out-of-state abortion provider on the minor's behalf, either by contacting the

out-of-state provider in the minor's presence or by contacting the out-of-state provider

and requesting that the provider contact the patient directly.  *Id.*

PPGNHAIK desires to continue providing this information and assistance to

unemancipated minors who seek abortion care (including those who are pregnant as a

result of sexual activity other than rape or incest by a parent, legal guardian, or custodian)

but who have not obtained the consent of their parents, guardians, or custodians to an

abortion and who have not obtained a judicial bypass pursuant to Indiana Code § 16-34-

2-4.  It is undisputed that, based on current interpretations, doing so would subject

PPGNHAIK and its staff to civil liability under the aid-or-assist statute, which restriction

PPGNHAIK asserts is unconstitutional.

## **<u>Legal Analysis</u>**

### **I.      Summary Judgment Standard**

Summary judgment is appropriate where there are no genuine disputes of material

fact and the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a);

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).  A court must grant a motion for

summary judgment if it appears that no reasonable trier of fact could find in favor of the

nonmovant on the basis of the designated admissible evidence.  *Anderson v. Liberty*

*Lobby, Inc.*, 477 U.S. 242, 247–48 (1986).  We neither weigh the evidence nor evaluate

the credibility of witnesses, id. at 255, but view the facts and the reasonable inferences

flowing from them in the light most favorable to the nonmovant.  *McConnell v. McKillip*,

573 F. Supp. 2d 1090, 1097 (S.D. Ind. 2008).  Because the parties have filed cross-

motions for summary judgment and the same Rule 56 procedural standards apply, our

review of the record requires us to draw all inferences in favor of the party against whom

a particular issue in the motion under consideration is asserted. *See O'Regan v.*

*Arbitration Forums, Inc.*, 246 F.3d 975, 983 (7th Cir. 2001) (citing *Hendricks-Robinson*

*v. Excel Corp.*, 154 F.3d 685, 692 (7th Cir. 1998)). We have done so here.

## II.    Discussion

PPGNHAIK asserts that the aid-or-assist statute, insofar as it prohibits

PPGNHAIK and its staff from sharing truthful information regarding available out-of-

state alternatives for abortion care with unemancipated minor patients seeking abortion

services without the consent required by Indiana law and/or communicating with out-of-

state abortion providers on such patients' behalf, is a content-based regulation of pure

speech that cannot survive strict scrutiny under constitutional analysis and thus violates

their First Amendment free speech rights. The State rejoins that heightened judicial

scrutiny is not warranted in this case because the aid-or-assist statute is directed at

controlling conduct, not speech, and, to the extent it regulates speech, it is limited only to

speech that plays "an integral part in the violation of a valid criminal statute," to wit,

Indiana's parental-consent requirement.[3] *Giboney v. Empire Storage & Ice Co.*, 336 U.S.

490, 498 (1949).

---

[3] To the extent that the State argues that the aid-or-assist statute is akin to informed-consent
requirements, in that it "facilitates informed consent to a medical procedure by ensuring parental
consent before a minor obtains her abortion," Dkt. 96 at 7, that argument is not well-taken. As
we previously recognized in our order preliminarily enjoining enforcement of the aid-or-assist
statute, the statute's prohibitions are not limited to medical providers; rather, *any* individual is
prohibited under the statute from sharing truthful information regarding consent requirements

It is uncontested that the aid-or-assist statute prohibits *any* activity that aids or assists a minor in obtaining an out-of-state abortion without parental consent. Accordingly, its prohibitions clearly encompass restrictions on conduct, such as driving a minor to receive an out-of-state abortion without parental consent, as well as speech, in the form of communications, including information to minors regarding the names/locations of out-of-state abortion services that would not require parental consent and/or notice and medical referrals or contacting out-of-state abortion providers on behalf of minor patients seeking out-of-state abortion services that, while legal in those states, would not comply with Indiana's parental consent procedures. *See Valley Fam. Planning v. N. Dakota*, 489 F. Supp. 238, 242 (D.N.D. 1980), *aff'd*, 661 F.2d 99 (8th Cir. 1981) ("The referral of persons to a physician who performs abortions is a form of speech protected by the First Amendment.").

While it is "true that the First Amendment does not prevent restrictions directed at commerce or conduct from imposing incidental burdens on speech," *Sorrell v. IMS Health, Inc.*, 564 U.S. 552, 567 (2011), even when a law "*generally* functions as a regulation of conduct," it is subject to First Amendment scrutiny when the supposed "conduct triggering coverage under the statute consists of communicating a message."

and abortion options in other states or contacting out-of-state abortion providers on behalf of minors who are not complying with Indiana's parental consent and notification procedures. Thus, these communications need not be tied to any medical procedure, and much of the information, such as the fact that other states may have more lenient parental consent and notification requirements for abortion, is generic, non-medical information that does not involve professional judgment, and is publicly available from a wide variety of sources, including the internet.

*Holder v. Humanitarian Law Project*, 561 U.S. 1, 27, 28 (2010) (emphasis in original). Such is the case here. On its face, the aid-or-assist statute might be viewed as a restriction only on conduct, but, as applied to PPGNHAIK and its staff, any violation of the statute obviously "depends on what they say." *Id.* at 27. If, for example, PPGNHAIK informs its unemancipated minor patients only of their available in-state abortion options or contacts an out-of-state healthcare provider on behalf of an unemancipated minor regarding medical care apart from abortion services, it will not run afoul of the aid-or-assist statute. But if it informs such patients of out-of-state abortion services with less onerous parental consent requirements than those in effect in Indiana or communicates with an out-of-state healthcare provider regarding abortion services on behalf of an unemancipated minor patient who has not complied with Indiana's parental consent requirements, the aid-or-assist statute would forbid that speech.

The burdens here, therefore, are not "incidental." They are not simply an indirect side effect of the regulation but are instead a core purpose of the regulation. In this way, the aid-or-assist statute is readily distinguishable from the types of regulations on conduct that have been deemed by courts to have only incidental effects on speech, such as an employment anti-discrimination ordinance requiring removal of "White Applicants Only" signs, *Rumsfeld v. Forum for Academic and Institutional Rights, Inc.*, 547 U.S. 47, 62 (2006), an ordinance against outdoor fires preventing flag burning, *R.A.V. v. City of St. Paul*, 505 U.S. 377, 385 (1992), or a COVID-related social distancing order making it more difficult for a political campaign to "round up signatures," *Morgan v. White*, 964 F.3d 649, 652 (7th Cir. 2020).

**SA9**

Unlike the statutes upheld in *Rumsfeld*, *R.A.V.*, and *Morgan*, the speech prohibited by the aid-or-assist statute—including providing minors information regarding legal out-of-state abortion services that would not require parental consent or notice and providing medical referrals or contacting out-of-state abortion providers on behalf of minor patients seeking out-of-state abortion services that would not comply with Indiana's parental consent procedures—is not merely incidental to separate, prohibited conduct of the sort at which the statute is aimed, but itself constitutes the very "aiding or assisting" that the statute prohibits.  Thus, we hold that, while the law here may in certain instances function as a regulation only of conduct, the aid-or-assist statute as applied to Plaintiff imposes a direct burden on speech because "the conduct triggering coverage under the statute consists of communicating a message" and nothing further.  *See Holder*, 561 U.S. at 28.

We are not persuaded by the State's contention that the aid-or-assist statute does not implicate First Amendment concerns because it merely burdens speech that furthers or induces unlawful conduct.  It is, of course, true that prohibiting and punishing speech "integral to criminal conduct" does not "raise any Constitutional problem," *United States v. Stevens*, 559 U.S. 460, 468 (2010), as "[s]peech intended to bring about a particular unlawful act has no social value; therefore, it is unprotected."  *United States v. Hansen*, 599 U.S. 762, 783 (2023); *see also Giboney*, 336 U.S. at 501 ("[I]t has never been deemed an abridgement of freedom of speech or press to make a course of conduct illegal merely because the conduct was in part initiated, evidenced, or carried out by means of language, either spoken, written, or printed.").  Accordingly, "[m]any long established criminal laws permissibly criminalize speech … that is intended to induce or commence

**SA10**

illegal activities, such as fraud, bribery, perjury, extortion, threats, incitement, solicitation, and blackmail." *United States v. Trump*, ___ F. Supp. 3d ___, 2023 WL 8359833, at *15 (D.C. Dec. 1, 2023) (internal citations and quotation marks omitted).

That is not the situation before us, however.  Here, the criminal offenses and/or unlawful acts under Indiana law focus on the act of *performing* an abortion on an unemancipated minor without parental consent or, with intent to avoid Indiana's parental notification requirements, falsely claiming to be the parent or legal guardian or custodian of an unemancipated pregnant minor.  *See* IND. CODE § 16-34-2-4(b); IND. CODE § 16-24-2-4(m); IND. CODE § 16-34-2-7.  PPGNHAIK is not seeking to provide unemancipated minors information regarding how to procure an abortion within Indiana, in violation of these requirements, or to provide medical referrals or to contact physicians in Indiana on behalf of unemancipated pregnant minor patients for abortion services without parental consent.  Rather, PPGNHAIK seeks to provide truthful information to clients regarding out-of-state options and medical referrals to out-of-state providers for abortions services that are legal in those states.  An unemancipated pregnant minor who travels out of state to any jurisdiction with less onerous parental-consent requirements than those in effect in Indiana to *obtain* an abortion legal in that state is not committing a criminal offense or unlawful act, given that Indiana has not (to date) criminalized traveling to another state to obtain an abortion.  Providing unemancipated pregnant minors who have not complied with Indiana's parental consent requirements truthful information regarding out-of-state options for legally obtaining an abortion and providing medical referrals and/or contacting out-of-state providers on behalf of such minors

seeking to obtain abortion services that are legal in those states is therefore *not* inducing criminal activity.

For these reasons, the aid-or-assist statute as applied to Plaintiff directly regulates pure speech. Thus, we must determine next what level of scrutiny applies to such regulation. There is no real dispute between the parties that the aid-or-assist statute regulates speech on the basis of its content, since it would prohibit only speech that is related to abortion options for unemancipated minors seeking abortion services without having complied or seeking to comply with Indiana's parental consent requirements. As such, it is a content-based restriction on speech and its enforcement is "directed at certain content," *Sorrell*, 564 U.S. at 567, and is based on the message expressed.

"Content-based regulations are presumptively invalid." *R.A.V.*, 505 U.S. at 382. To survive strict scrutiny, the State must "prove that the restriction furthers a compelling interest and is narrowly tailored to achieve that interest." *Reed v. Town of Gilbert, Ariz.*, 576 U.S. 155, 171 (2015). Accordingly, it is the State's burden to demonstrate that the aid-or-assist statute's singling out of speech relating to abortion care for minors who have not followed Indiana's parental consent requirements is necessary to "further[] a compelling interest and is narrowly tailored to that end." *Id.* "Though there is no exact definition of a compelling interest, it is one 'of the highest order' and is only found in 'rare cases.'" *Listecki v. Off. Comm. of Unsecured Creditors*, 780 F.3d 731, 745 (7th Cir. 2015) (quoting *Church of Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 546 (1993)).

**SA12**

In an attempt to shoulder this burden, the State argues that the aid-or-assist statute furthers its compelling interests in safeguarding the parent-child relationship; protecting the physical and psychological well-being of minors by ensuring that medical providers have access to essential medical information by providing an opportunity for parents to supply such information to a physician; and in investigating possible criminal activity. Even assuming that these are, indeed, all compelling interests, the State has failed to present any evidence demonstrating that they are furthered by prohibiting private individuals from disseminating to unemancipated pregnant minors truthful information about lawful abortion practices and abortion care providers in states other than Indiana and contacting or providing referrals to out-of-state abortion providers on behalf of unemancipated pregnant minors, or that the statute is narrowly tailored to further such interests.

As noted above, it is not a crime for an unemancipated pregnant minor to travel outside of Indiana to receive abortion care that is lawful in that state.  Thus, prohibiting PPGNHAIK and its physicians from disseminating to unemancipated pregnant minors who have not complied with Indiana's parental consent requirements truthful information about less-restrictive abortion practices in other states and/or providing referrals to medical providers outside Indiana for abortion services lawful in such states does not further any interest Indiana may have in investigating criminal conduct within its borders. The aid-or-assist statute is therefore not narrowly tailored to further the State's interest in investigating criminal conduct because the statute covers *any* transfer of information regarding available abortion care options provided without parental consent, which

includes not only in-state abortion options for unemancipated minors who have not
complied with Indiana's parental consent requirements that would be illegal under
Indiana law but also legal out-of-state services. *See Ind. Civil Liberties Union Found.,
Inc. v. Superintendent, Ind. State Police*, 470 F. Supp. 3d 888, 903–04 (S.D. Ind. 2020)
("A restriction will not pass strict scrutiny where a 'less restrictive alternative' exists to
achieve the Government's compelling interest.") (citation omitted).

The State has also failed to show how its interests in protecting the physical and
psychological well-being of minors and the parent-child relationship are advanced by
prohibiting private individuals, including medical providers, from disseminating truthful
information about lawful abortion practices in other states and out-of-state healthcare
providers who offer such services. Citing the Supreme Court's observation in *H.L. v.
Matheson*, 450 U.S. 398 (1981), that, as applied to immature and dependent minors,
parental consent statutes serve "a significant state interest by providing an opportunity for
parents to supply essential medical and other information to a physician," *id.* at 411, the
State contends that performing an abortion for an unemancipated pregnant minor without
parental consent endangers that minor because it potentially denies abortion providers
access to essential medical information that could be supplied by a parent and threatens
the minor's ability to receive post-abortion care as well as interferes with a parent's
interest in being involved in their dependent child's abortion decision. *See id.* ("The
medical, emotional, and psychological consequences of an abortion are serious and can
be lasting; this is particularly so when the patient is immature. An adequate medical and
psychological case history is important to the physician. Parents can provide medical and

psychological data, refer the physician to other sources of medical history, such as family physicians, and authorize family physicians to give relevant data.") (internal footnotes omitted).

However, the dissemination of accurate information regarding a minor's reproductive care options is several steps removed from performing an abortion without parental consent.  The State has not articulated *any* specific psychological or physical harm to minors that is caused by the mere dissemination of truthful information concerning lawful reproductive healthcare options and the medical providers who provide such services, particularly given that such information is readily and widely available to any member of the public via a simple internet search.  Nor has the State presented evidence that being provided information about the availability of abortion in a state with more relaxed, less complex parental-consent requirements necessarily makes it less likely that a minor would thereafter consult with their parents regarding their reproductive health options or that prohibiting the dissemination of accurate facts about abortion services that are lawfully available to minors outside of Indiana and the medical providers who offer such services will correspondingly promote family cohesiveness or integrity or family communication.

As we recognized in granting Plaintiff's request for preliminary injunctive relief, "[i]n the context of a First Amendment challenge under the narrowly tailored test, the government has the burden of showing that there is evidence supporting its proffered justification."  *Weinberg v. City of Chi.*, 310 F.3d 1029, 1038 (7th Cir. 2002) (citation omitted); *see also Ind. Civil Liberties Union Found.*, 470 F. Supp. 3d at 904 ("In order to

**SA15**

show that a restriction is necessary to further a compelling governmental interest, [the government] cannot rely upon 'anecdote and supposition.'") (citation omitted).  The State has fallen short of satisfying its burden here with regard to PPGNHAIK's dissemination of truthful and accurate information regarding out-of-state abortion care options and providers to its unemancipated pregnant minor patients.  The connection between that speech and the ultimate harms identified by the State is simply too attenuated to "justify[] the necessity" of the prohibition.  *Weinberg*, 310 F.3d at 1038.

As discussed above, PPGNHAIK also wishes to provide referrals to out-of-state abortion care providers and to contact such providers on behalf of its unemancipated pregnant minor patients when asked to do so, which speech would be prohibited by the aid-or-assist statute.  Again, we note: the harms the State maintains the aid-or-assist statute is intended to alleviate are all connected to the performance of the abortion without parental consent, yet the State has provided no objective evidence directly connecting such speech to the outcome it intends to prohibit.  Nonetheless, we acknowledge that, insofar as providing a referral or contacting an out-of-state provider may be considered speech that is a step further along the path to the decision to obtain an abortion without parental consent than speech that merely informs patients of their reproductive care options, the State's prohibition of such referrals and communication with out-of-state providers is ostensibly more closely connected to the ultimate harms at which the aid-or-assist statute is directed.  Even assuming that prohibiting PPGNHAIK and its physicians from making referrals or contacting out-of-state abortion care providers on behalf of unemancipated pregnant minors to some degree furthers the State's

interests in the health and safety of minors and the parent-child relationship, the State has nonetheless failed to demonstrate that the aid-or-assist statute is narrowly tailored to further those interests.

The State attempts to overcome its failure to establish this showing by arguing that because the aid-or-assist statute prohibits PPGNHAIK's speech only as it relates to unemancipated minors who have neither obtained nor are seeking to obtain either parental consent for their abortion or a judicial bypass of Indiana's parental consent requirements, the statute prohibits only that speech "which *specifically* interferes with the State's compelling interests in protecting the parent-child relationship and welfare of the child[]" and is therefore narrowly tailored to further the State's compelling interests. Dkt. 89 at 25 (emphasis in original). For the following reasons, we disagree with that reasoning.

The aid-or-assist statute explicitly provides that it applies unless the unemancipated minor "has obtained or is seeking to obtain: (1) parental consent; or a waiver of parental consent; under [Indiana Code § 16-34-2-4]." IND. CODE § 16-34-2-4.2(b). As discussed above, Indiana Code § 16-34-2-4 does not simply require verbal consent from a parent. Rather, it sets out a complex scheme of specific requirements, including that the consent be written and notarized, and that the physician performing the abortion comply with the identification and affidavit requirements described above. To have these requirements waived, a minor must undertake the process of obtaining a judicial bypass by proving to a juvenile court that they are mature enough to make the abortion decision without parental consent or that an abortion without parental consent

**SA17**

would be in their best interests.  Even if the minor succeeds in proving their entitlement to a judicial bypass, their parent(s) are still entitled to notification of their decision to have an abortion unless the juvenile court makes an additional finding that parental notification is not in the minor's best interests.

Given the complexity of these procedures and the time and energy (and, we assume, finances) required to complete them, not to mention the extremely narrow set of circumstances in which a minor, even *with* parental consent, can obtain an abortion in Indiana, there exist a myriad of reasons that a minor, either in consultation with their parents, or who, by reason of their maturity or because an abortion would be in their best interests and they would be entitled to a judicial bypass under Indiana law, would choose to seek abortion care in a neighboring state with less restrictive parental consent and notification requirements, rather than undertake compliance with Indiana Code § 16-34-2-4.  If a minor, for example, does not qualify for any of the three limited exceptions to Indiana's abortion ban (life or health of the mother, a pregnancy resulting from rape or incest, or a fatal fetal anomaly), or would otherwise qualify but is too far along in their pregnancy, the minor's only option for care would be to seek an abortion outside of Indiana.  In such cases, it is pointless for the minor to seek to comply with the parental consent requirements or to secure a judicial bypass because they still will not be able to legally obtain an abortion in Indiana, even if they have parental consent or would be entitled to a waiver of the parental consent requirements.  In other cases, whether due to ease of scheduling, physical proximity, or state specific restrictions on the abortion procedure, including whether an abortion may be obtained in a clinical setting, whether a

specific waiting period exists, or a specified length of time after a patient's last menstrual period when an abortion may be obtained, to name just a few reasons, a minor who has parental consent or who would be entitled to a judicial bypass might choose to lawfully obtain abortion care outside of Indiana, rather than seek to comply with Indiana Code § 16-34-2-4.

Thus, contrary to the State's contention, the aid-or-assist statute does not simply restrict PPGNHAIK's speech only as it relates to immature, dependent minors, but would also prevent PPGNHAIK and its physicians from speaking or otherwise communicating about out-of-state abortion care, even to minors who have parental consent for their abortion or who would be deemed mature enough to make the abortion decision for themselves but for whatever reason are not seeking to comply with Indiana's parental consent and/or judicial bypass procedures. The aid-or-assist statute is therefore not narrowly tailored to further the State's compelling interests in the physical and psychological well-being of minors and the parent-child relationship, which the Supreme Court in *Matheson* recognized were significant state interests in the context of an *immature* minor seeking to obtain an abortion. These interests do not justify a prohibition on speech related to out-of-state abortion options and/or on contacting such providers on behalf of a minor who is acting in consultation with her parents or to a mature minor capable of making the abortion decision independently, yet the aid-or-assist statute would nonetheless apply so long as such minors had not complied with the specific requirements of Indiana Code § 16-34-2-4.

For these reasons, we hold that the aid-or-assist statute does not survive strict scrutiny as applied to the speech PPGNHAIK has shown that the statute will prohibit. Therefore, application of the statute to PPGNHAIK would violate the First Amendment. However, because there are various other applications of Indiana Code § 15-24-2-4.2(c) that would not involve impermissible restrictions on speech, PPGNHAIK's entitlement to permanent injunctive relief extends no further than the speech described and approved herein. *See Ayotte v. Planned Parenthood of N. New England*, 546 U.S. 320, 328–29 (2006) ("We prefer … to enjoin only the unconstitutional applications of a statute while leaving other applications in force, … or to sever its problematic portions while leaving the remainder intact.") (internal citations omitted).

### III.   Conclusion

For the foregoing reasons, Plaintiff's Motion for Summary Judgment [Dkt. 85] is GRANTED and Defendants' Motion for Summary Judgment [Dkt. 88] is DENIED.

Defendants are hereby PERMANENTLY ENJOINED from enforcing Indiana Code § 16-34-2-4.2(c), insofar as it would prohibit Plaintiff and its physicians from disseminating to minors information regarding legal abortion practices and abortion care providers in states other than Indiana and from providing referrals to and contacting out-of-state abortion providers on behalf of their minor patients.  Final judgment shall issue accordingly.

IT IS SO ORDERED.

Date:   _____5/1/2024_____

SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

**SA20**

Distribution:

Andrew Beck
AMERICAN CIVIL LIBERTIES UNION FOUNDATION
abeck@aclu.org

Melissa A. Cohen
PLANNED PARENTHOOD FEDERATION OF AMERICA
melissa.cohen@ppfa.org

Kenneth J. Falk
ACLU OF INDIANA
kfalk@aclu-in.org

Thomas M. Fisher
OFFICE OF THE ATTORNEY GENERAL
tom.fisher@atg.in.gov

Gavin Minor Rose
ACLU OF INDIANA
grose@aclu-in.org

Jennifer Sandman
PLANNED PARENTHOOD FEDERATION OF AMERICA
jennifer.sandman@ppfa.org

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

PLANNED PARENTHOOD GREAT )
NORTHWEST, HAWAII, ALASKA, )
INDIANA, KENTUCKY, INC, )
                                  )
        Plaintiff, )
                                  )
        v. )      No. 1:17-cv-01636-SEB-CSW
                                  )
COMMISSIONER, INDIANA STATE )
DEPARTMENT OF HEALTH, et al., )
                                  )
        Defendants. )

**INJUNCTION AND FINAL JUDGMENT**

Pursuant to the Court's ruling simultaneously entered on this date, judgment is

entered in favor of Plaintiff and against Defendants on Plaintiff's First Amendment

challenge to Indiana Code § 16-34-2-4.2(c).

IT IS ORDERED as follows:

Defendants, their employees, agents, and successors in office are hereby

PERMANENTLY ENJOINED from enforcing Indiana Code § 16-34-2-4.2(c), only

insofar as it would prohibit Plaintiff and its physicians from disseminating to minors

information regarding legal abortion practices and abortion care providers in states other

than Indiana and from providing referrals to and contacting out-of-state abortion

providers on behalf of their minor patients.  Defendants are hereby further ordered to

inform forthwith all the affected Indiana state governmental entities of this injunction.

Date: _____5/1/2024_____                *Sarah Evans Barker*

                                      SARAH EVANS BARKER, JUDGE
                                      United States District Court
                                      Southern District of Indiana

**SA22**

Distribution:

James A. Barta
Office of the Indiana Attorney General
james.barta@atg.in.gov

Andrew Beck
AMERICAN CIVIL LIBERTIES UNION FOUNDATION
abeck@aclu.org

Kenneth J. Falk
ACLU OF INDIANA
kfalk@aclu-in.org

Gavin Minor Rose
ACLU OF INDIANA
grose@aclu-in.org

Jennifer Sandman
PLANNED PARENTHOOD FEDERATION OF AMERICA
jennifer.sandman@ppfa.org

## CERTIFICATE OF SERVICE

I hereby certify that on October 25, 2024, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Seventh Circuit by using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.


_s/James A. Barta_
James A. Barta
Solicitor General


Office of the Indiana Attorney General
Indiana Government Center South
302 W. Washington Street
Indianapolis, IN 46204-2770
Telephone: (317) 232-0709
Facsimile: (317) 232-7979
James.Barta@atg.in.gov