IN THE
UNITED STATES COURT OF APPEALS
FOR THE SEVENTH CIRCUIT
No. 24-2219

| | | |
|---|---|---|
| PLANNED PARENTHOOD GREAT NORTHWEST, HAWAI'I, ALASKA, INDIANA, KENTUCKY, INC., | ) | |
| Plaintiff / Appellee, | ) | Appeal from the U.S. District Court for the Southern District of Indiana |
| v. | ) | Cause No. 1:17-cv-01636-SEB-CSW |
| COMMISSIONER, INDIANA DEPARTMENT OF HEALTH, et al., | ) | The Hon. Sarah Evans Barker, Judge |
| Defendants / Appellants. | ) | |

---

**BRIEF OF APPELLEE**

---


Gavin M. Rose
*Counsel of Record*
Kenneth J. Falk
ACLU of Indiana
1031 E. Washington St.
Indianapolis, IN 46202
317/635-4059
fax: 317/635-4105
kfalk@aclu-in.org
grose@aclu-in.org

Andrew Beck
American Civil Liberties Union
New York, NY 10004
(212) 549-2641
abeck@aclu.org

Jennifer Sandman
Ella Spottswood
Valentina De Fex
Planned Parenthood Federation of America
123 William St.
New York, NY 10038
jennifer.sandman@ppfa.org
ella.spottswood@ppfa.org
valentina.defex@ppfa.org

*Attorneys for the Appellee*

**APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**

Appellate Court No: 24-2219

Short Caption: Planned Parenthood Great Nw., Haw., Alaska, Ind., Ky., Inc. v. Commissioner, Ind. State Dep't of Health, et al.

To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in the front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

☐ **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1) The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):
Planned Parenthood Great Northwest, Hawai'i, Alaska, Indiana, Kentucky, Inc. (formerly Planned Parenthood of Indiana and Kentucky, Inc.)

(2) The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:
ACLU of Indiana, American Civil Liberties Union, Planned Parenthood Federation of America

(3) If the party, amicus or intervenor is a corporation:

i) Identify all its parent corporations, if any; and

None

ii) list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

None

(4) Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

N/A

(5) Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

N/A

---

Attorney's Signature: /s/ Gavin M. Rose Date: July 25, 2024

Attorney's Printed Name: Gavin M. Rose

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d). **Yes** ☑ **No** ☐

Address: 1031 E. Washington St.
Indianapolis, IN 46202

Phone Number: 317/635-4059 Fax Number: 317/635-4105

E-Mail Address: grose@aclu-in.org

**APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**

Appellate Court No: 24-2219

Short Caption: Planned Parenthood Great NW, Haw., Alaska, Ind., Ky., Inc v. Commissioner, Ind. State Dep't of Health, et al.

To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in the front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

☐ **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1) The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):
Planned Parenthood Great Northwest, Hawai'i, Alaska, Indiana, Kentucky, Inc. (formerly Planned Parenthood of Indiana and Kentucky, Inc.)

(2) The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:
ACLU of Indiana, American Civil Liberties Union, Planned Parenthood Federation of America

(3) If the party, amicus or intervenor is a corporation:

i) Identify all its parent corporations, if any; and

None

ii) list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

None

(4) Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

N/A

(5) Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

N/A

---

Attorney's Signature: /s/ Kenneth J. Falk Date: August 30, 2024

Attorney's Printed Name: Kenneth J. Falk

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d). **Yes** ☐ **No** ☑

Address: ACLU of Indiana, 1031 E. Washington St., Indianapolis, IN 46202

Phone Number: 317/635-4059 Fax Number: 317/635-4105

E-Mail Address: kfalk@aclu-in.org

**APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**

Appellate Court No: 24-2219

Short Caption: Planned Parenthood Great Nw., Haw., Alaska, Ind., Ky., Inc v. Commissioner, Ind. State Dep't of Health, et al.

To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in the front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

☐ **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1) The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):
Planned Parenthood Great Northwest, Hawai'i, Alaska, Indiana, Kentucky Inc. (formerly Planned Parenthood of Indiana and Kentucky, Inc.

(2) The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:
American Civil Liberties Union, ACLU of Indiana, Planned Parenthood Federation of America

(3) If the party, amicus or intervenor is a corporation:

i) Identify all its parent corporations, if any; and

None.

ii) list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

None.

(4) Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

N/A

(5) Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

N/A

---

Attorney's Signature: /s/ Andrew Beck Date: July 25, 2024

Attorney's Printed Name: Andrew Beck

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d). **Yes** ☐ **No** ☑

Address: 125 Broad Street, 18th Fl.
New York, NY 10004

Phone Number: (212) 549-2633 Fax Number: (212) 549-2650

E-Mail Address: abeck@aclu.org

**APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**

Appellate Court No: 24-2219

Short Caption: Planned Parenthood Great Northwest, Hawai'i, Alaska, Indiana, Kentucky v. Comm'r of the Ind. State Dept., et. al

To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in the front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

☐ **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1) The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):
Planned Parenthood Great Northwest, Hawai'i, Alaska, Indiana, Kentucky, Inc.

(2) The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:
Planned Parenthood Federation of America, American Civil Liberties Union, American Civil Liberties Union-Indiana

(3) If the party, amicus or intervenor is a corporation:

i) Identify all its parent corporations, if any; and

N/A

ii) list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

N/A

(4) Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

N/A

(5) Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

N/A

---

Attorney's Signature: /s/Jennifer Sandman Date: 7/25/2024

Attorney's Printed Name: Jennifer Sandman

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d). **Yes** ☐ **No** ☑

Address: 123 William St, 11th Floor

New York, NY 10038

Phone Number: 212-261-4584 Fax Number:

E-Mail Address: jennifer.sandman@ppfa.org

# APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT

Appellate Court No: 24-2219

Short Caption: Planned Parenthood Great Northwest, Hawai'i, Alaska, Indiana, Kentucky v. Comm'r of the Ind. State Dept., et al.

To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in the front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

☐ **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1) The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):
Planned Parenthood Great Northwest, Hawai'i, Alaska, Indiana, Kentucky, Inc.

(2) The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:
Planned Parenthood Federation of America, American Civil Liberties Union, American Civil Liberties Union-Indiana

(3) If the party, amicus or intervenor is a corporation:

i) Identify all its parent corporations, if any; and

N/A

ii) list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

N/A

(4) Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

N/A

(5) Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

N/A

---

Attorney's Signature: /s/Eleanor Spottswood Date: 7/25/2024

Attorney's Printed Name: Eleanor Spottswood

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d). **Yes** ☐ **No** ☑

Address: 123 William St, 11th Floor

New York, NY 10038

Phone Number: 212-261-4654 Fax Number:

E-Mail Address: ella.spottswood@ppfa.org

**APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**

Appellate Court No: 24-2219

Short Caption: Planned Parenthood Great NW, Hawai'i, Alaska, Indiana, Kentucky, Inc. v. Commissioner, Indiana State Dept. of Health

To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in the front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

☐ **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1) The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):
Planned Parenthood Great Northwest, Hawai' i, Alaska, Indiana, Kentucky, Inc.

(2) The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:
American Civil Liberties Union, ACLU of Indiana, Planned Parenthood Federation of America

(3) If the party, amicus or intervenor is a corporation:

i) Identify all its parent corporations, if any; and

None

ii) list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

None

(4) Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

N/A

(5) Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

N/A

---

Attorney's Signature: s/ Valentina De Fex Date: 12/17/24

Attorney's Printed Name: Valentina De Fex

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d). **Yes** ☐ **No** ☑

Address: 123 William St., 9th Floor

New York, NY 10038

Phone Number: (212) 261-4554 Fax Number: ________

E-Mail Address: valentina.defex@ppfa.org

## TABLE OF CONTENTS

**TABLE OF AUTHORITIES** ........ iii

**JURISDICTIONAL STATEMENT** ........ 1

**STATEMENT OF THE ISSUES** ........ 1

**STATEMENT OF THE CASE** ........ 3

**I. The challenged statute** ........ 3

**II. Planned Parenthood and its referral of minor patients to out-of-state abortion providers** ........ 4

**III. Procedural history** ........ 8

**SUMMARY OF ARGUMENT** ........ 11

**STANDARD OF REVIEW** ........ 14

**ARGUMENT** ........ 14

**I. Planned Parenthood's physicians are subject to disciplinary sanctions for any violation of the aid-or-assist statute, and Planned Parenthood therefore possesses standing to challenge that statute** ........ 15

A. Planned Parenthood's physicians face licensure consequences should they or any of Planned Parenthood's other employees engage in conduct prohibited by the aid-or-assist statute ........ 15

B. Planned Parenthood's injury is redressable ........ 21

C. Remand is not necessary to assess the effect of state-court developments, for the record already addresses them ........ 23

**II. The aid-or-assist statute's prohibition on speech about legal out-of-state abortion care is unconstitutional** ........ 24

A. As applied to Planned Parenthood, the aid-or-assist statute is a regulation of pure speech, not a regulation of conduct ........ 25

B. Without an underlying criminal offense, the First Amendment exception for "speech integral to criminal conduct" is entirely inapplicable ........ 30

C. The aid-or-assist statute does not survive strict scrutiny .................... 35

1. As a content- and viewpoint-based restriction on speech, the statute is subject to strict scrutiny .............................................................. 35

2. The statute is not justified by a compelling governmental interest 37

3. The statute is not narrowly tailored ............................................... 42

a. The statute is overinclusive insofar as it applies even when a minor's parent consents to an out-of-state abortion .................. 43

b. The statute is overinclusive insofar as it applies to mature minors and to minors who may not be able to obtain parental consent 46

c. The statute is also fatally underinclusive .................................. 48

D. The statute does not survive intermediate scrutiny ............................. 49

**CONCLUSION** ........................................................................................... 51

**CERTIFICATE OF WORD COUNT** ............................................................ 52

**CERTIFICATE OF SERVICE** ..................................................................... 52

## TABLE OF AUTHORITIES

***Cases***


*Amalgamated Food Employees Union Local 590 v. Logan Valley Plaza, Inc.*, 391 U.S. 308 (1968) .......... 32

*Apex Digital, Inc. v. Sears, Roebuck & Co.*, 572 F.3d 440 (7th Cir. 2009) .......... 20

*Bellotti v. Baird*, 443 U.S. 622 (1979) .......... 39,46

*Bigelow v. Virginia*, 421 U.S. 809 (1975) .......... *passim*

*Box v. Planned Parenthood of Ind. & Ky., Inc.*, 142 S. Ct. 2893 (2022) .......... 9

*Brown v. Entm't Merchants Ass'n*, 564 U.S. 786 (2011) .......... 40,49

*Cent. Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of N.Y.*, 447 U.S. 557 (1980) .......... 48

*Consumer Data Indus. Ass'n v. King*, 678 F.3d 898 (10th Cir. 2012) .......... 22

*DiGiore v. Ryan*, 172 F.3d 454 (7th Cir. 1999) .......... 24

*Dobbs v. Jackson Women's Health Org.*, 597 U.S. 215 (2022) .......... 3

*Florida Star v. B.J.F.*, 491 U.S. 524 (1989) .......... 40,48,49

*Friend v. Gasparino*, 61 F.4th 77 (2d Cir. 2023) .......... 13,31

*Giboney v. Empire Storage & Ice Co.*, 336 U.S. 490 (1949) .......... 30

*Golla v. Office of Chief Judge of Cook Cnty.*, 875 F.3d 404 (7th Cir. 2017) .......... 14

*Hamer v. Neighborhood Hous. Servs. of Chicago*, 897 F.3d 835 (7th Cir. 2018) .......... 18

*Hess v. Board of Trs. of S. Ill. Univ.*, 839 F.3d 668 (7th Cir. 2016) .......... 14

*Hill v. Colorado*, 530 U.S. 703 (2000) .......... 35

*Holder v. Humanitarian Law Project*, 561 U.S. 1 (2010) .......... 13,24,26,27

*Homoky v. Ogden*, 816 F.3d 448 (7th Cir. 2016) .......... 45

*Honeyfund.com Inc. v. Governor*, 94 F.4th 1272 (11th Cir. 2024) ............................ 36

*In re Merchanges Grain, Inc. ex rel. Mahern*, 93 F.3d 1347 (7th Cir. 1996)............. 20

*June Med. Servs., LLC v. Russo*, 591 U.S. 299 (2020)....................................... 9,11,18

*K.C. v. Individual Members of Med. Licensing Bd. of Ind.*, 121 F.4th 604 (7th Cir. 2024)................................................................................................ 25,28,30,33

*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992)................................................. 16

*Massachusetts v. EPA*, 549 U.S. 497 (2007)......................................................... 12,22

*Matsumoto v. Labrador*, __ F.4th __, 2024 WL 4927266 (9th Cir. Dec. 2, 2024) ......................................................................................................... *passim*

*Members of Med. Licensing Bd. of Ind. v. Planned Parenthood Great Nw., Haw., Alaska, Ind., Ky., Inc.*, 211 N.E.3d 957 (Ind. 2023)..................................................... 6

*Nat'l Inst. of Family & Life Advocates v. Becerra*, 585 U.S. 755 (2018) ............... 12,26

*New York v. Ferber*, 458 U.S. 747 (1982) .................................................................. 29

*Nova Health Sys. v. Gandy*, 416 F.3d 1149 (10th Cir. 2005) ............................... 12,22

*Perry Educ. Ass'n v. Perry Local Educators' Ass'n,* 460 U.S. 37 (1983)..................... 37

*Planned Parenthood Great Nw., Haw., Alaska, Ind., Ky. v. Labrador*, __ F.4th __, 2024 WL 4966057 (9th Cir. Dec. 4, 2024)............................................................ 12,26,27,36

*Planned Parenthood of Ind. & Ky., Inc. v. Adams*, 937 F.3d 973 (7th Cir. 2019) ....... 9

*Planned Parenthood of Ind. & Ky., Inc. v. Box*, 991 F.3d 740 (7th Cir. 2021)............ 9

*Pleasant Grove City v. Summum*, 555 U.S. 460 (2009)............................................. 36

*Reed v. Town of Gilbert*, 576 U.S. 155 (2015) .......................................................... 35

*Rice v. Paladin Enterprises, Inc.*, 128 F.3d 233 (4th Cir. 1997)................................ 33

*Robinson v. McNeil Consumer Healthcare*, 615 F.3d 861 (7th Cir. 2010)................. 17

*Rodriguez de Quijas v. Shearson/Am. Exp., Inc.*, 490 U.S. 477 (1989)..................... 35

*Rosenberger v. Rector & Visitors of Univ. of Va.,* 515 U.S. 819 (1995) ............. *passim*

*Rumsfeld v. Forum for Academic & Institutional Rights, Inc.*, 547 U.S. 47 (2006) .. 28

*Smith v. Daily Mail Pub'g Co.*, 443 U.S. 97 (1979) ............................................. 40,49

*Speech First, Inc. v. Killeen*, 968 F.3d 628 (7th Cir. 2020)........................................ 15

*Steele v. Bulova Watch Co.*, 344 U.S. 280 (1952)....................................................... 31

*Texas v. Johnson*, 491 U.S. 397 (1989)....................................................................... 50

*United States v. Hansen*, 599 U.S. 762 (2023)............................................................ 30

*United States v. O'Brien*, 391 U.S. 367 (1968)................................................. 26,49,50

*United States v. Playboy Entm't Group*, 529 U.S. 803 (2000)................................... 40

*United States v. Stevens*, 559 U.S. 460 (2010)............................................ 28,29,34,45

*United States v. Williams*, 553 U.S. 285 (2008)............................................... 13,30,33

*Williams-Yulee v. Florida Bar*, 575 U.S. 433 (2015) .................................................. 40

*Yellowhammer Fund v. Attorney Gen. of Alabama*, __ F. Supp. 3d __, 2024 WL 1999546 (M.D. Ala. May 6, 2024)........................................................................... 31

***Rules***

Fed. R. Civ. P. 56(c)(1)............................................................................................ 20

Ind. R. App. P. 65(E)................................................................................................... 6

S.D. Ind. Local Rule 56-1(f)(1).................................................................................. 24

***Statutes***

Ind. Code § 16-34-2-1(a)............................................................................................. 3

Ind. Code § 16-34-2-1(a)(1)(B) .................................................................................... 5

Ind. Code § 16-34-2-1(a)(2)(C) .................................................................................... 5

Ind. Code § 16-34-2-1(a)(3)(C) .................................................................................... 5

Ind. Code § 16-34-2-1.1 .......... 18

Ind. Code § 16-34-2-4(b) .......... 3,41

Ind. Code § 16-34-2-4(c) .......... 3,47

Ind. Code § 16-34-2-4(e) .......... 3

Ind. Code § 16-34-2-4(f) .......... 4,46

Ind. Code § 16-34-2-4(l) .......... 41

Ind. Code § 16-34-2-4.2(a) .......... 43

Ind. Code § 16-34-2-4.2(b) .......... 44

Ind. Code § 16-34-2-4.2(c) .......... *passim*

Ind. Code § 16-34-2-4.2(d) .......... 21

Ind. Code § 25-1-9-4(3) .......... 4,15

Ind. Code § 25-1-9-9(a) .......... 15

Ind. Code § 31-19-9-1(b) .......... 38

Ind. Code § 31-34-2.5-1 .......... 38

Ind. Code § 35-45-5-2 .......... 32

Ind. Code § 35-48-4-11 .......... 32

***Legislation***

Ind. Senate Enrolled Act 1, Pub. L. No. 179-2022(ss) (2022) .......... 3

***Regulations***

Ind. Admin. Code tit. 844, r. 5-1-1(14) .......... 19

Ind. Admin. Code tit. 844, r. 5-2-7 .......... 20,39

Ind. Admin. Code tit. 844, r. 5-2-12 .......... 11,12,19

***Other Sources***

American Med. Ass'n, *Code of Medical Ethics*, Opinion 1.2.3 .................................. 20

Carol K. Kane, Ph.D., Am. Med. Ass'n, *Recent Changes in Physician Practice Arrangements: Private Practice Dropped to Less than 50 Percent of Physicians in 2020* (2021) ........................................................................................................... 20

Chronological Case Summary, *Members of Med. Licensing Bd. of Ind. v. Planned Parenthood Great Nw., Haw., Alaska, Ind., Ky., Inc.*, No. 22S-PL-00338 (Ind.) ......... 6

Physicians Advocacy Inst., *Updated Report: Hospital and Corporate Acquisition of Physician Practices and Physician Employment 2019-2023* (Apr. 2024) ............. 19,20

Unopposed Mot. for Extension of Time to File Pet. for Reh'g En Banc (Dkt. 146-1), *K.C. v. Indiv. Members of Med. Licensing Bd. of Ind.*, No. 23-2366 (7th Cir. Nov. 19, 2024) ........................................................................................................... 25

## JURISDICTIONAL STATEMENT

The appellants' jurisdictional statement is not complete and correct.

The district court had original jurisdiction over this case pursuant to 28 U.S.C. § 1331. Federal-question jurisdiction was premised on alleged violations of the First and Fourteenth Amendments to the United States Constitution. (Dkt. 1 at 18-20). As set forth below (*see infra* at 15-24), the appellants' contention that the district court lacked jurisdiction to grant relief is erroneous.

This Court has appellate jurisdiction pursuant to 28 U.S.C. § 1291. The final judgment from which this appeal is taken awarded judgment to, and entered a permanent injunction in favor of, the plaintiff, thereby disposing of all remaining issues in this case, and was entered on May 1, 2024. (Dkt. 113). The appellants filed a motion to alter or amend the judgment pursuant to Rule 59(e) of the Federal Rules of Civil Procedure on May 29, 2024. (Dkt. 117). That motion was denied by the district court on July 12, 2024. (Dkt. 121). The notice of appeal was filed on July 15, 2024. (Dkt. 122).

This is not an appeal from the decision of a magistrate judge.

## STATEMENT OF THE ISSUES

Indiana Code § 16-34-2-4.2(c)—the statute challenged in this litigation—prohibits any person from "knowingly or intentionally aid[ing] or assist[ing] an unemancipated pregnant minor in obtaining an abortion without the [parental] consent required by [Indiana Code § 16-34-2-4]." Indiana interprets this statute to prohibit Planned Parenthood Great Northwest, Hawai'i, Alaska, Indiana, Kentucky,

Inc. ("Planned Parenthood") and its physicians from disseminating to minors factually accurate information about legal out-of-state abortion practices. This is so even when the minor has their parent's consent (but not the state-specific form of consent required by Indiana Code § 16-34-2-4) to obtain an abortion, even when the minor is sufficiently mature to make the abortion decision without their parent's involvement, and even when involving their parent could lead to physical or mental abuse. Indeed, it is so even when the minor is categorically ineligible to receive an abortion in Indiana.

Neither the Supreme Court nor any other court has ever held that the First Amendment tolerates a prohibition on the dissemination of truthful information merely because the recipients of that information are minors.

The issues presented for review are:

1. Whether Planned Parenthood has standing to challenge the aid-or-assist statute given that its physicians are subject to discipline by the Medical Licensing Board of Indiana if they, or anyone on their staff, violate the statute.

2. Whether the district court properly concluded that the aid-or-assist statute, as applied to Planned Parenthood's speech activity, constitutes a content- and viewpoint-based restriction on pure speech that fails the requisite strict scrutiny under the First Amendment.

## STATEMENT OF THE CASE[1]

### I. The challenged statute

Following *Dobbs v. Jackson Women's Health Organization*, 597 U.S. 215 (2022), Indiana became the first state to pass new legislation curtailing access to abortion. *See* Ind. Senate Enrolled Act 1, Pub. L. No. 179-2022(ss), § 21 (2022). Abortions in Indiana may only be provided if they are "necessary to prevent any serious health risk to the pregnant woman or to save the pregnant woman's life," if "the fetus is diagnosed with a lethal fetal anomaly," or if "the pregnancy is the result of rape or incest." Ind. Code § 16-34-2-1(a).

Unless the pregnancy resulted from rape or incest by their parent, legal guardian, or custodian ("parent or guardian"), unemancipated minors seeking an abortion under these limited circumstances face an additional hurdle. These patients have two options: either they may obtain their parent or guardian's "notarized written consent" to an abortion, Ind. Code § 16-34-2-4(b); or they may petition a juvenile court for a waiver of the parental-consent requirement, Ind. Code § 16-34-2-4(c). Absent a showing that it is in the best interests of the minor "to obtain an abortion without parental notification," the minor's parent or guardian will be notified of the minor's request for a waiver of the parental-consent requirement. Ind. Code § 16-34-2-4(e). And the consent requirement will be waived if the juvenile court determines "that the minor is mature enough to make the abortion decision

[1] All record citations are made to the docket entry and page number as assigned by the district court's electronic case filing system ("Dkt."). Where available, citations are also made to the appellants' Short Appendix ("SA") or their Appendix ("A"). All internet citations were last visited on December 18, 2024.

independently" or if "an abortion would be in the minor's best interests." Ind. Code § 16-34-2-4(f).

The statute challenged in this litigation then provides, in its entirety, as follows:

> A person may not knowingly or intentionally aid or assist an unemancipated pregnant minor in obtaining an abortion without the consent required by [Indiana Code § 16-34-2-4].

Ind. Code § 16-34-2-4.2(c) ("the aid-or-assist statute"). An individual who violates this statute is civilly liable to the minor and their parent or guardian. Ind. Code § 16-34-2-4.2(d). When that individual is a professional licensed by the Medical Licensing Board of Indiana, they are also subject to "disciplinary sanctions" for "knowingly violat[ing] any state statute or rule . . . regulating the profession in question." Ind. Code § 25-1-9-4(3).

## II. Planned Parenthood and its referral of minor patients to out-of-state abortion providers

Planned Parenthood Great Northwest, Hawai'i, Alaska, Indiana, Kentucky, Inc. ("Planned Parenthood") operates 11 health centers in Indiana where thousands of people receive a broad range of reproductive and sexual health services, including pregnancy diagnosis and counseling; contraceptive care and provision; testing, treatment, and vaccination for sexually transmitted infections; annual medical examinations; HIV prevention and treatment services; cancer screenings; gender-affirming hormone care; and educational services related to fertility and pregnancy. (Dkt. 85-1 at 2 [A77]). At the time that the record was developed in the district court, state-court litigation had resulted in a preliminary injunction barring the

enforcement of Indiana's near-total abortion ban as well as its requirement that allowable abortions be performed in a hospital or a hospital-owned ambulatory outpatient surgical center. (*Id.* at 8-9 [A83-A84]). Planned Parenthood therefore offered procedural abortion services at three of its health centers and offered abortions using medication alone at four of its centers. (*Id.* at 2 [A77]). Procedural abortions were available through the first trimester of pregnancy, and medication abortions were available through 70 days after the first day of a patient's last menstrual period. (*Id.*).

Before Indiana's requirement that abortions be provided in a hospital took effect, *see* Ind. Code §§ 16-34-2-1(a)(1)(B), (a)(2)(C), (a)(3)(C), Planned Parenthood was regularly contacted by patients, including unemancipated minors, for abortion services under circumstances in which it was unable to perform the abortion, such as where a patient sought abortion care at a point later in pregnancy than was offered at Planned Parenthood's health centers. (Dkt. 85-1 at 6 [A81]). In such a case, its employees and agents would inform patients, including unemancipated minors, that they have the option to receive abortion services in states other than Indiana. (*Id.* at 6-7 [A81-A82]). For example, Planned Parenthood is aware that in neighboring states there are abortion providers who offer abortion services into the second trimester, and Planned Parenthood would inform patients and those seeking abortion services of the availability of those services in other states. (*Id.* at 7 [A82]). It usually directed patients to abortionfinder.org, which contains the most up-to-date information regarding where abortion services are available and to what gestational age. (*Id.*).

Some of Planned Parenthood's health centers also would provide an information sheet about other locations where patients can access abortion. (*Id.*).

Planned Parenthood also is aware that the judicial bypass procedure established by Indiana law—which provides that notice to a minor's parents or guardians may be ordered even if the court finds that the minor is mature enough to make the abortion decision without parental consent—is more onerous than the comparable requirements in Indiana's neighboring states. (*Id.*). In light of this, it advises minors who wish to avoid these onerous requirements, or to avoid any possibility that their parents or guardians would be informed of their attempt to obtain an abortion, that they may seek abortion care in another state. (*Id.*). Depending on the circumstances, it might also provide contact information for an out-of-state provider. (*Id.*).

The preliminary injunction against Indiana's post-*Dobbs* abortion statutes was vacated by the Indiana Supreme Court on June 30, 2023. *See Members of Med. Licensing Bd. of Ind. v. Planned Parenthood Great Nw., Haw., Alaska, Ind., Ky., Inc.*, 211 N.E.3d 957, 985 (Ind. 2023).[2] While Planned Parenthood therefore no longer provides abortion care in Indiana, it continues to provide reproductive health services, including to unemancipated minors. (Dkt. 85-1 at 9 [A84]). The services it continues to provide include pregnancy tests and other pregnancy-related services as

---

[2] Under Indiana's appellate rules, the Indiana Supreme Court's decision did not become final until it was formally "certified" to the trial court, a process similar to the issuance of a mandate in federal courts. *See* Ind. R. App. P. 65(E). This decision was certified on August 21, 2023. *See* Chronological Case Summary, *Members of Med. Licensing Bd. of Ind. v. Planned Parenthood Great Nw., Haw., Alaska, Ind., Ky., Inc.*, No. 22S-PL-00338 (Ind.), *available through* https://public.courts.in.gov/MyCase#/vw/Search.

well as referrals for abortion care. (*Id.*).

In fact, the abortion restrictions now in effect render Planned Parenthood's provision of information to minors regarding the availability of out-of-state abortion care, and the related referrals it offers, even more important and more frequent. (*Id.*). Given that abortions may now only be provided in Indiana under severely limited circumstances, Planned Parenthood wishes to inform patients seeking an abortion prohibited by Indiana law of their right and ability to receive abortion care in another state and to further provide referrals to obtain this care. (*Id.* at 10 [A85]). On top of this, an abortion in a hospital generally costs between $5,000.00 and $7,000.00, whereas an abortion in a clinic generally costs between $400.00 and $750.00. (*Id.* at 9 [A84]). Therefore, insofar as an abortion in a hospital is almost certainly cost prohibitive for an unemancipated minor, Planned Parenthood ensures that it provides information about out-of-state alternatives to all unemancipated minors seeking abortion care without the consent of their parent or guardian, even those who previously would have sought a judicial bypass in state court. (*Id.* at 10 [A85]).

Planned Parenthood wishes to be able to continue to provide this information to unemancipated minors who seek abortion care—including those who are pregnant as a result of sexual activity other than rape or incest by a parent or guardian—but who have not obtained the consent of their parents or guardians to an abortion and who have not obtained a judicial bypass pursuant to Indiana Code § 16-34-2-4. (*Id.* at 8 [A83]). And, if a patient requests or appears to need more help, Planned Parenthood would like to be able to assist them with a referral by making contact

with an out-of-state abortion provider, either by contacting the out-of-state provider in the minor's presence or by contacting the out-of-state provider and having that provider contact the patient directly. (*Id.* at 7-8 [A82-A83]). However, were it not for the district court's injunction against the enforcement of the aid-or-assist statute, Planned Parenthood's doctors and other providers would not be permitted to do so insofar as providing this information and referral constitutes "aid[ing] or assist[ing] an unemancipated pregnant minor in obtaining an abortion without the consent required by [Indiana Code § 16-34-2-4]," Ind. Code § 16-34-2-4.2(c), and doing so can give rise to both civil liability and licensing sanctions. (Dkt. 85-1 at 8 [A83]).

## III. Procedural history

On May 18, 2017, Planned Parenthood filed its Complaint for Declaratory and Injunctive Relief ("Complaint"). (Dkt. 1 [A55-A75]). In its Complaint, Planned Parenthood challenged three separate provisions of Indiana Senate Enrolled Act 404, Pub. L. No. 173-2017 (2017). First, it challenged Indiana Code § 16-34-2-4(e) ("the parental-notice statute") to the extent that statute allows a juvenile court to notify a parent or guardian of even a mature minor of their child's abortion decision. (Dkt. 1 at 18-19 [A72-A73]). Second, it challenged Indiana Code §§ 16-34-2-4(b) and (l) ("the identification-and-affidavit statutes"), which impose requirements concerning the identification that physicians must collect prior to providing an abortion to a minor and require that physicians execute an affidavit attesting to the sufficiency of the identification provided. (*Id.* at 19-20 [A73-A74]). And third, it challenged the aid-or-assist statute at issue in this appeal. (*Id.* at 19 [A73]).

On June 28, 2017, the district court issued a preliminary injunction against the enforcement of all three challenged provisions. (Dkt. 26 [A1-A51]). Indiana appealed the preliminary injunction only to the extent that it enjoined the parental-notice statute. A divided panel of this Court affirmed the injunction, *see Planned Parenthood of Ind. & Ky., Inc. v. Adams*, 937 F.3d 973 (7th Cir.), *reh'g en banc denied*, 949 F.3d 997 (7th Cir. 2019), and reached the same conclusion after its initial decision was vacated and remanded for further consideration in light of *June Medical Services, LLC v. Russo*, 591 U.S. 299 (2020), *see Planned Parenthood of Ind. & Ky., Inc. v. Box*, 991 F.3d 740 (7th Cir. 2021). While Indiana's second certiorari petition was pending, the Supreme Court decided *Dobbs* and this case was remanded once again for further consideration in light of that intervening decision. *See Box v. Planned Parenthood of Ind. & Ky., Inc.*, 142 S. Ct. 2893 (2022).

On remand, Planned Parenthood conceded that its challenge to the parental-notice statute did not survive *Dobbs*. (Dkt. 77 at 2). After the Indiana Supreme Court subsequently vacated the state-court injunction against the enforcement of the requirement that abortions be provided in a licensed hospital or hospital-owned ambulatory surgical center, Planned Parenthood ceased providing abortions in Indiana and therefore withdrew its challenge to the identification-and-affidavit statutes to which it was no longer subject. (Dkts. 101 & 102). This case therefore proceeded to judgment only on Planned Parenthood's challenge to the aid-or-assist statute.

On May 1, 2024, the district court issued its Order on Cross Motions for

Summary Judgment addressed to this issue. (Dkt. 112 [SA1-SA21]). The court concluded first that, while the aid-or-assist statute "clearly encompasses restrictions on conduct . . . as well as speech," as applied to Planned Parenthood "any violation of the statute obviously 'depends on what they say'" and therefore the statute "imposes a direct burden on speech." (Dkt. 112 at 8-10 [SA8-SA10] [quoting *Holder v. Humanitarian Law Project*, 561 U.S. 1, 27 (2010)]). The court then rejected Indiana's argument that the aid-or-assist statute prohibits only speech "integral to criminal conduct," for an unemancipated minor "who travels out of state . . . to obtain an abortion legal in that state is not committing a criminal offense or unlawful act." (*Id.* at 10-11 [SA10-SA11]). Finally, the court determined that the aid-or-assist statute does not survive the strict scrutiny demanded of any content-based regulation of pure speech. (*Id.* at 12-20 [SA12-SA20]).

The district court therefore permanently enjoined the enforcement of the statute "insofar as it would prohibit [Planned Parenthood] and its physicians from disseminating to minors information regarding legal abortion practices and abortion care providers in states other than Indiana and from providing referrals to and contacting out-of-state abortion providers on behalf of their minor patients." (*Id.* at 20 [SA20]; *see also* Dkt. 113 at 1 [SA22]). On May 29, 2024, Indiana filed its Motion to Alter or Amend the Judgment, in which it contended that the permanent injunction erroneously ran against the Judge of the Marion Superior Court, Juvenile Division, who had originally been sued due to their role in enforcing the parental-notice statute. (Dkt. 117). The district court denied this motion on July 12, 2024, but

"clarif[ied] that the permanent injunction issued in this litigation does not apply to the Judge." (Dkt. 121 at 2 [A53]).

This appeal ensues.

## SUMMARY OF ARGUMENT

The aid-or-assist statute prohibits Planned Parenthood and its physicians from providing factual information to minor patients about legal out-of-state abortion care. Planned Parenthood clearly has standing to challenge the statute, and the statute is subject to, and fails, strict scrutiny under the First Amendment.

1. Indiana's standing argument, raised for the first time on appeal, is without merit. While it does not dispute that Planned Parenthood's physicians are subject to discipline should they disseminate information about legal out-of-state abortion care to unemancipated minors, it contends that the record does not establish that they will do so insofar as it speaks in terms of Planned Parenthood's "employees and agents" but does not use the word "physicians." To state the obvious, the unqualified reference to "employees and agents" *includes* Planned Parenthood's physicians. Throughout proceedings below, Indiana repeatedly acknowledged—and even sought to benefit from—this shared understanding. Its about-face now comes too late in the day. *See, e.g.*, *June Med. Servs. LLC v. Russo*, 591 U.S. 299, 317-18 (2020), *abrogated on other grounds by Dobbs v. Jackson Women's Health Org.*, 597 U.S. 215 (2022). Ultimately, however, this is an academic issue, for Planned Parenthood's physicians are subject to discipline even when those acting under their supervision disseminate information about out-of-state abortion care. *See* Ind.

Admin. Code tit. 844, r. 5-2-12.

Indiana's other standing arguments fare no better. The fact that the aid-or-assist statute also contains a civil liability provision does not affect the redressability of Planned Parenthood's injury to the extent that injury results from Indiana's enforcement of its own statute. *See, e.g.*, *Massachusetts v. EPA*, 549 U.S. 497, 525 (2007). The sole authority on which Indiana relies recognizes this explicitly. *See Nova Health Sys. v. Gandy*, 416 F.3d 1149, 1158 (10th Cir. 2005). Nor is a remand necessary to assess the impact of parallel state-court litigation on Planned Parenthood's standing. Indiana's requirement that abortions be performed in a hospital setting took effect long before the district court's summary-judgment decision issued in this case, and the record establishes unequivocally that this development only exacerbates Planned Parenthood's injury caused by the aid-or-abet statute. Having chosen not to dispute these facts earlier, Indiana does not get a second bite at the apple.

2. The statute's prohibition on the dissemination of factually accurate information about legal out-of-state abortion care directly impinges on Planned Parenthood's "pure speech." *See, e.g.*, *Nat'l Inst. of Family & Life Advocates v. Becerra*, 585 U.S. 755, 763, 766-73 (2018); *Planned Parenthood Great Nw., Haw., Alaska, Ind., Ky. v. Labrador*, __ F.4th __, 2024 WL 4966057, at *12 (9th Cir. Dec. 4, 2024). This is so despite the fact that the statute also regulates non-speech conduct, for the Supreme Court has been clear that, even when a law may generally "be described as directed at conduct," traditional First Amendment principles apply when

"the conduct triggering coverage under the statute consists of communicating a message." *Holder v. Humanitarian Law Project*, 561 U.S. 1, 28 (2010). That holding fits this case to a tee.

Nor, despite Indiana's contention to the contrary, is Planned Parenthood's speech unprotected as "integral to criminal conduct." For this First Amendment exception to apply, the speech must pertain to unlawful conduct distinct from the challenged statute itself. *See, e.g.*, *United States v. Williams*, 553 U.S. 285, 298 (2008); *Matsumoto v. Labrador*, __ F.4th __, 2024 WL 4927266, at *18 (9th Cir. Dec. 2, 2024); *Friend v. Gasparino*, 61 F.4th 77, 90 (2d Cir. 2023). Here, there is no such predicate offense: Planned Parenthood only disseminates information about *legal* out-of-state abortion care. Not only is Indiana's invocation of this doctrine entirely circular but, if successful, it would uproot far-ranging authority.

As a content- and viewpoint-based restriction on speech, the aid-or-assist statute is subject to strict scrutiny. *See, e.g.*, *Rosenberger v. Rector & Visitors of Univ. of Va.,* 515 U.S. 819, 828-29 (1995). Indiana cannot meet this standard. While it asserts an interest in protecting the parent-child relationship, the Supreme Court has been clear that states have *no* interest "in shielding [their] citizens from information about activities outside [their] borders." *Bigelow v. Virginia*, 421 U.S. 809, 827-28 (1975). If that were not enough—and it is—Indiana's asserted interest does not even attempt to explain its decision to prohibit the dissemination of information about only one form of care while allowing persons to freely share information about all manner of other pregnancy-related services.

Nor is the aid-or-assist statute narrowly tailored to advance Indiana's asserted interest. Not only does the statute apply to a wide variety of circumstances where a minor seeks an abortion with their parent's consent but, despite asserting an interest in ensuring parental involvement in a minor's decision-making, Indiana has chosen to prohibit the dissemination of information about only one type of care. The statute is thus both overinclusive and underinclusive with respect to Indiana's interest.

## STANDARD OF REVIEW

This Court "review[s] a district court's grant of summary judgment *de novo*." *Golla v. Office of Chief Judge of Cook Cnty.*, 875 F.3d 404, 407 (7th Cir. 2017) (citation omitted). "The question on a motion for summary judgment is whether the moving party has shown there is 'no genuine dispute as to any material fact,' and is entitled to summary judgment as a matter of law." *Id.* (quoting Fed. R. Civ. P. 56(a)). When a case is decided on cross-motions for summary judgment this Court will "constru[e] all facts and draw[] all reasonable inferences in favor of the party against whom the motion under consideration was filed." *Hess v. Board of Trs. of S. Ill. Univ.*, 839 F.3d 668, 673 (7th Cir. 2016) (citations omitted).

## ARGUMENT

To be abundantly clear: absent the district court's injunction, the aid-or-assist statute would prohibit Planned Parenthood and its physicians from disseminating factually accurate information to willing listeners. Given that its physicians are subject to discipline if Planned Parenthood does so, this Court's jurisdiction is secure. And the statute, as applied here, constitutes a content- and viewpoint-based

restriction on pure speech that does not survive the requisite strict scrutiny. The judgment must be affirmed.

## I. Planned Parenthood's physicians are subject to disciplinary sanctions for any violation of the aid-or-assist statute, and Planned Parenthood therefore possesses standing to challenge that statute

Pursuant to Indiana law, Planned Parenthood's physicians are subject to "disciplinary sanctions" for "knowingly violat[ing] any state statute or rule . . . regulating the[ir] profession." Ind. Code § 25-1-9-4(3). Potential sanctions include monetary fines, a letter of reprimand or formal censure, placement on probationary status, or even the suspension or revocation of a doctor's medical license. Ind. Code § 25-1-9-9(a). Indiana does not dispute that a physician who provides information to a minor patient about their out-of-state alternatives for abortion care is subject to professional discipline for doing so.[3]

### A. Planned Parenthood's physicians face licensure consequences should they or any of Planned Parenthood's other employees engage in conduct prohibited by the aid-or-assist statute

---

[3] Indiana begins its jurisdictional argument by contending that, after the state-court injunction was lifted such that abortions could no longer be provided in a clinical setting, Planned Parenthood lost its ability to pursue relief against the Commissioner of the Indiana State Department of Health insofar as it is no longer a licensed abortion clinic. (Br. of Appellants 14-15). While this hospital-only requirement remains the subject of ongoing state-court litigation, Planned Parenthood concedes that, at present, the injunction should be modified to run only against the Members of the Indiana Medical Licensing Board.

Indiana also articulates the familiar "credible threat of enforcement" test to determine standing to mount a pre-enforcement challenge. (Br. of Appellants 17-18). Where First Amendment rights are concerned, this is only half the test. In this context, standing exists *either* when a plaintiff intends "to engage in a course of conduct arguably affected by a policy" and "faces a credible threat the policy will be enforced against him when he does" *or* when he experiences "a chilling effect on his speech that is objectively reasonable, and that he self-censors as a result." *Speech First, Inc. v. Killeen*, 968 F.3d 628, 638 (7th Cir. 2020) (citations omitted). Nonetheless, the distinction does not appear to matter to Indiana's jurisdictional arguments, and this issue is not discussed further.

The record establishes that Planned Parenthood's physicians face licensure consequences should they or any of Planned Parenthood's other employees engage in conduct prohibited by the aid-or-assist statute, and this suffices to establish standing.[4] Indiana recognized as much below. Not only did it repeatedly acknowledge that Planned Parenthood's physicians provide information about the availability of out-of-state abortion care but, even after Planned Parenthood ceased providing abortions, it did not question Planned Parenthood's ability to challenge the aid-or-assist statute. For the first time on appeal, it now seizes on the fact that the record details the provision of information by Planned Parenthood's "employees and agents" but does not use the word "physicians" (Dkt. 85-1 at 6-7) and, from here, contends that Planned Parenthood lacks standing to challenge this statute. (Br. of Appellants 17-21).

For two reasons, Indiana's jurisdictional argument is without merit.

*First,* to state the obvious, Planned Parenthood's unqualified reference in the record to its "employees and agents" *includes* its physicians. (*See* Dkt. 85-1 at 6-7 [A81-A82]).

Throughout proceedings below, Indiana repeatedly acknowledged this. On preliminary injunction, it described Planned Parenthood's "concession" that "its physicians and staff regularly advise children and others seeking abortion how to

[4] A corporate plaintiff that desires to engage in activity prohibited by statute has standing to challenge that statute even when the consequences for a violation are directed at the corporation's employees rather than the corporation itself, for the corporation has still suffered direct injury that is caused by the statute and redressable by a favorable decision. *See, e.g.*, *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992). Indiana does not contend to the contrary.

avoid restrictions of Indiana law by seeking abortions out of state" and contended that it "need not tolerate the advice of physicians urging Hoosier children to . . . seek[] an abortion in another state." (Dkt. 22 at 30-31 [cleaned up]). It then attempted at length to justify the aid-or-assist statute itself as a "reasonable regulation *of physicians*." (*Id.* at 31-33 [emphasis added]). And it reiterated this understanding on summary judgment, describing the manner in which "the statute prevents [Planned Parenthood's] physicians from advising Hoosier children to evade Indiana's criminal laws . . . by seeking an abortion in another jurisdiction" (Dkt. 89 at 18).

Both on preliminary injunction and on summary judgment, the district court accepted the parties' shared understanding that Planned Parenthood's reference to its "employees and agents" includes its physicians. (*See* Dkt. 26 at 43 [A43] [referencing "the information {Planned Parenthood} and its physicians seek to convey"]; Dkt. 112 at 5 [SA5] [describing the manner in which Planned Parenthood's "employees and physicians currently inform {its} clients, including unemancipated minors, that they have the option to receive abortion services in states other than Indiana"]). Even were there some ambiguity in its use of the phrase "employees and agents," this would have been appropriate, for Indiana's repeated acknowledgment that Planned Parenthood's physicians, and not just non-physician staff, refer patients to out-of-state providers almost certainly constitutes a judicial admission. *See, e.g.*, *Robinson v. McNeil Consumer Healthcare*, 615 F.3d 861, 872 (7th Cir. 2010) (an attorney's statement "that negates a factual claim that the party making the statement might have made or considered making" binds the party so long as the

statement was "deliberate, clear and unambiguous") (citations omitted).

Having conceded standing in the court below, Indiana's jurisdictional argument here comes too late in the day. As the Supreme Court has held, "[a] State's unmistakable concession of standing as part of its effort to obtain a quick decision from the District Court on the merits . . . bars [this Court's] consideration of it here." *June Med. Servs. LLC v. Russo*, 591 U.S. 299, 317-18 (2020), *abrogated on other grounds by Dobbs v. Jackson Women's Health Org.*, 597 U.S. 215 (2022). That observation applies equally here. Indeed, even Indiana's docketing statement governing this appeal did not question either the district court's or this Court's jurisdiction. (Dkt. 123 at 1-3).[5]

Against all this, Indiana now relies on the fact that, before Planned Parenthood ceased providing abortions in the state, a patient's "initial visit . . . once they decide to obtain an abortion" was conducted by "staff other than a physician." (Br. of Appellants 19). These "initial visits" at which patients would receive certain state-mandated information prior to the abortion procedure, *see* Ind. Code § 16-34-2-1.1, no longer take place at Planned Parenthood insofar as it no longer provides abortions. Regardless, the fact that non-physician staff on occasion refer patients to out-of-state providers does not mean that physicians do not also do so. Anticipating the potential

[5] This Court has stressed "the importance of docketing statements" and has held that "language contained in a docketing statement" may be given "effect on a matter other than subject-matter jurisdiction." *Hamer v. Neighborhood Hous. Servs. of Chicago*, 897 F.3d 835, 839 (7th Cir. 2018). While a jurisdictional argument may not be forfeited, when that argument depends on a factual contention that a party conceded throughout the course of litigation, the same considerations resulting in this Court's holding in *Hamer* dictate that the party should be held to its concession.

vacatur of the state-court injunction that allowed it to continue providing abortions through August 2023, Planned Parenthood made clear that it would continue to "provide reproductive health services other than abortion, including to unemancipated minors," and that these services "include pregnancy tests and other pregnancy-related services as well as referrals for abortion care." (Dkt. 85-1 at 9 [A84]). The fact that Planned Parenthood's non-physician staff no longer visit with abortion patients only increases the likelihood that these referrals will be made directly by its physicians.

*And second,* Planned Parenthood's physicians are subject to discipline even when they do not directly refer a minor patient to an out-of-state abortion provider but when that referral is instead made by nurses or administrative staff. Under regulations promulgated by the Medical Licensing Board itself, a physician is "responsible for the conduct of each and every person employed by the practitioner for every action or failure to act by said employee or employees in the course of said employee's employment relationship with said practitioner." Ind. Admin. Code tit. 844, r. 5-2-12 (internal parenthetical omitted); *see also* Ind. Admin. Code tit. 844, r. 5-1-1(14) (defining "practitioner" to include, as is relevant here, "a person who holds a license to practice medicine") (cleaned up). It does not matter which of Planned Parenthood's staff members discusses with patients the availability of out-of-state providers, for its physicians are subject to discipline no matter what.[6]

[6] Although the regulation speaks in terms of persons "employed" by a physician, this reference is clearly intended to include persons acting under a physician's supervision. After all, physicians rarely if ever employ other staff directly. Nearly 80% of physicians in the United States are employed by hospitals or other corporate entities. *See* Physicians Advocacy

This is underscored by the fact that it is Planned Parenthood's *physicians* that have the duty to "refer a patient to another practitioner in any case where the referring practitioner does not consider himself/herself qualified to treat the patient." Ind. Admin. Code tit. 844, r. 5-2-7. The Code of Medical Ethics published by the American Medical Association similarly provides that "[p]hysicians' fiduciary obligations to promote patients' best interests and welfare can include . . . referring patients to other professionals to provide care." American Med. Ass'n, *Code of Medical Ethics*, Opinion 1.2.3, *available at* https://code-medical-ethics.ama-assn.org/sites/amacoedb/files/2022-08/1.2.3.pdf. The fact that Planned Parenthood's physicians sometimes satisfy these obligations by delegating responsibilities to non-physician staff is of no moment.[7]

---

Inst., *Updated Report: Hospital and Corporate Acquisition of Physician Practices and Physician Employment 2019-2023*, p.13 (Apr. 2024), *available at* https://www.physiciansadvocacyinstitute.org/Portals/0/assets/docs/PAI-Research/PAI-Avalere%20Physician%20Employment%20Trends%20Study%202019-2023%20Final.pdf?ver=uGHF46u1GSeZgYXMKFyYvw%3d%3d. And the overwhelming majority of other physicians practice through ownership structures such as limited liability companies or partnerships. *See* Carol K. Kane, Ph.D., Am. Med. Ass'n, *Recent Changes in Physician Practice Arrangements: Private Practice Dropped to Less than 50 Percent of Physicians in 2020*, p.18 (2021), *available at* https://www.ama-assn.org/system/files/2021-05/2020-prp-physician-practice-arrangements.pdf.

Any other interpretation would thus render the regulation virtually meaningless. *See, e.g.*, *In re Merchanges Grain, Inc. ex rel. Mahern*, 93 F.3d 1347, 1353-54 (7th Cir. 1996) (statutes interpreted to "avoid rendering them meaningless").

[7] The undisputed evidence thus demonstrates that Planned Parenthood's physicians are at risk of disciplinary sanctions from the Medical Licensing Board should they violate the aid-or-assist statute, and jurisdiction therefore exists. But, if this Court is not satisfied with that evidence, it does not entitle Indiana to summary judgment, for it has only pointed to a perceived gap in the record, not to undisputed evidence demonstrating that Planned Parenthood's physicians do not intend to refer patients to out-of-state providers. *See* Fed. R. Civ. P. 56(c)(1); *cf. Apex Digital, Inc. v. Sears, Roebuck & Co.*, 572 F.3d 440, 443-45 (7th Cir. 2009) (describing standard for evaluating evidence when a factual attack on jurisdiction is mounted). Under these circumstances, if Indiana's argument had any merit—which it

### B. Planned Parenthood's injury is redressable

Indiana's next argument—that Planned Parenthood's injury is not redressable—can be easily rejected. If Planned Parenthood's physicians refer an unemancipated minor to an out-of-state abortion provider, they are subject to discipline by the Medical Licensing Board. The injunction prevents this. That is quintessential redressability.

Indiana does not dispute this, but nonetheless suggests that Planned Parenthood might refrain from referring unemancipated minors to out-of-state abortion providers *even with* an injunction out of fear of the aid-or-assist statute's civil liability provision, *see* Ind. Code § 16-34-2-4.2(d). (Br. of Appellants 19-20). This contention has no basis in reality.

At this point, state officials have been enjoined from enforcing the statute for more than seven years. (*See* Dkt. 26 [A1-A51]). The summary-judgment record speaks in the present tense: Planned Parenthood "informs[s] patients and those seeking abortion services of the availability of those services in other states," it "usually directs patients to abortionfinder.com," some of its health centers "provide an information sheet with information about other locations where patients can access abortion," and it "advises minors who wish to avoid" the onerous judicial bypass procedure established by Indiana law "that they may seek abortion care in another state." (Dkt. 85-1 at 7 [A82]). Not only will an injunction against the Medical

---

plainly does not—the proper recourse would be a limited remand to allow the district court to determine in the first instance whether Planned Parenthood's physicians intend to engage in activity proscribed by the aid-or-assist statute.

Licensing Board provide meaningful relief to Planned Parenthood and its physicians, but it already has.

It is of no moment that the injunction does not run against private persons who might invoke the aid-or-assist statute's civil liability provision. After all, "[a] plaintiff satisfies the redressability requirement when he shows that a favorable decision will relieve a discrete injury to himself. He need not show that a favorable decision will relieve his *every* injury." *Massachusetts v. EPA*, 549 U.S. 497, 525 (2007) (quoting *Larson v. Valente*, 456 U.S. 228, 244 n.15 (1982)) (emphasis in original).

The Tenth Circuit's decision in *Nova Health Systems v. Gandy*, 416 F.3d 1149 (10th Cir. 2005), relied on by Indiana, is not to the contrary. That case arose as a challenge to an abortion statute that was *only* enforceable through civil litigation, and the state officials named as defendants, who had not even voiced an intention to pursue redress under the statute, were indistinguishable "from anyone else who could possibly have a claim someday under [the statute]." *Id.* at 1153, 1157. In holding this tenuous relationship between the statute and the defendants insufficient to satisfy the causation and redressability prongs of the standing calculus, the Tenth Circuit distinguished *Nova Health* from "suits against state enforcement officers to challenge the laws they execute as a representative of the state." *Id.* at 1158 (cleaned up). The case at bar is just such a suit, and Planned Parenthood's injuries are redressable.[8]

---

[8] In fact, following *Nova Health*, the Tenth Circuit rejected a state's attempt to apply that decision to circumstances indistinguishable from the case at bar. *See Consumer Data Indus. Ass'n v. King*, 678 F.3d 898, 906 (10th Cir. 2012) ("So long as the plaintiff faces a credible threat of enforcement, redressability is generally not an obstacle, and our decision

### C. Remand is not necessary to assess the effect of state-court developments, for the record already addresses them

Finally, Indiana contends that Planned Parenthood's standing became "unclear" after the state's restrictive abortion statute took effect and Planned Parenthood ceased providing abortions. (Br. of Appellants 20). This is wrong.

While this case was pending in the district court, the existence of state-court litigation challenging Indiana's prohibition on the provision of abortions in a clinical setting (*see supra* at 6-7) was known to all parties. Planned Parenthood therefore detailed, without contravention, the effect that vacatur of the state-court injunction would have on its provision of out-of-state referrals to minor patients. Upon the vacatur of the injunction, the record makes clear, Planned Parenthood "will continue to operate health centers throughout Indiana that provide reproductive health services other than abortion, including to unemancipated minors," and thus will continue "to provide [information about out-of-state abortion care] to unemancipated minors." (Dkt. 85-1 at 9 [A84]). In fact, once the hospital-only requirement took effect, its provision of this information became "even more important and more frequent" as this information is provided even to those "who previously would have sought a judicial bypass in juvenile court." (*Id.* at 9-10 [A84-A85]). As it was required

in *Nova Health* does not carve out an exception in cases where the state defendant shares enforcement power with private litigants."). The Ninth Circuit has also recently rejected a similar argument. *See Matsumoto v. Labrador*, __ F.4th __, 2024 WL 4927266, at *8 (9th Cir. Dec. 2, 2024) ("Where a state statute specifically grants enforcement powers to multiple government authorities, an injunction against the exercise of those powers by any one of those authorities suffices to establish redressability. . . . [A] plaintiff need not sue every defendant that may cause her harm."). As *Nova Health* itself recognizes, this jurisprudence stands on solid footing.

to do, Planned Parenthood articulated these facts in its summary-judgment briefing (Dkt. 86 at 8-9 n.3), and Indiana chose not to contest them (Dkt. 89 at 4).

In fact, while Indiana noted specifically that the parallel state-court litigation might impact Planned Parenthood's standing to challenge the identification-and-affidavit statutes (*id.* at 2-3), it advanced no similar argument concerning the aid-or-assist statute. Its argument on appeal ignores the undisputed facts developed on summary judgment, and it does not get a second bite at the apple to try to dredge up a factual dispute. *See, e.g.*, *DiGiore v. Ryan*, 172 F.3d 454, 461 (7th Cir. 1999) ("A party opposing a motion for summary judgment must raise any genuine material factual disputes to the district court or risk losing them."), *overruled on other grounds by Whetsel v. Network Property Servs., LLC*, 246 F.3d 897, 904 (7th Cir. 2001); *see also* S.D. Ind. Local Rule 56-1(f)(1).

## II. The aid-or-assist statute's prohibition on speech about legal out-of-state abortion care is unconstitutional

Planned Parenthood desires to provide factually accurate information about the availability of out-of-state providers to patients who cannot legally obtain an abortion in Indiana but who might be able to receive legal care elsewhere. (*See* Dkt. 112 at 11 [SA11]). The district court properly applied *Bigelow v. Virginia*, 421 U.S. 809 (1975), *Holder v. Humanitarian Law Project*, 561 U.S. 1 (2010), and a wide variety of other Supreme Court precedent to hold that the aid-or-assist statute is subject to, and fails, strict scrutiny. To be sure, since the filing of Indiana's brief, this Court upheld the constitutionality of a statute, addressing the provision of referrals for certain gender-affirming care, worded similarly to the statute challenged here.

*See K.C. v. Individual Members of Med. Licensing Bd. of Ind.*, 121 F.4th 604, 628-31 (7th Cir. 2024). But it did so based on its belief that the challengers in that case were seeking the ability to refer patients to providers (both in-state and out-of-state) who could not legally provide care. *See id.* at 630-31. That is simply not the case in this as-applied challenge, where Planned Parenthood *only* seeks to speak about lawful out-of-state abortion services, and the district court expressly limited its injunction to referrals to "*legal* abortion practices and abortion care providers in states other than Indiana." (Dkt. 113 at 1 [SA22] [emphasis added]).[9]

### A. As applied to Planned Parenthood, the aid-or-assist statute is a regulation of pure speech, not a regulation of conduct

In its brief, Indiana commingles two distinct First Amendment concepts: whether the aid-or-assist statute regulates conduct rather than speech (Br. of Appellants 21-22 [citing *United States v. O'Brien*, 391 U.S. 367, 375 (1968)]) and whether the speech it regulates is "integral to unlawful conduct" and therefore categorically unprotected (*id.* at 22 [citing, *inter alia*, *United States v. Hansen*, 599 U.S. 762, 783 (2023)]). Because these concepts are altogether distinct, they must be addressed separately.

As applied here, the statute regulates pure speech. To be sure, as Indiana notes, it also reaches a wide variety of non-speech conduct. But this case concerns only Planned Parenthood's ability to share information about the availability of out-

---

[9] The challengers in *K.C.* have expressed an intention to seek rehearing *en banc*. *See* Unopposed Mot. for Extension of Time to File Pet. for Reh'g En Banc (Dkt. 146-1), *K.C. v. Indiv. Members of Med. Licensing Bd. of Ind.*, No. 23-2366 (7th Cir. Nov. 19, 2024). That request is currently due on December 27, 2024.

of-state abortion providers and to refer patients to those providers, and the district court only enjoined the statute to the extent that it reaches those expressive activities. (*See* Dkt. 113 at 1 [SA22]). The dissemination of information about available medical services constitutes "pure speech" protected by the First Amendment. *See, e.g.*, *Nat'l Inst. of Family & Life Advocates v. Becerra*, 585 U.S. 755, 763, 766-73 (2018) (applying traditional First Amendment principles to a statute mandating the provision of information about the availability of "comprehensive family planning services"). The Ninth Circuit recently reached this precise conclusion in invalidating an Idaho statute prohibiting out-of-state referrals for abortion care. *See Planned Parenthood Great Nw., Haw., Alaska, Ind., Ky. v. Labrador* ("*PPGNHAIK*"), __ F.4th __, 2024 WL 4966057, at *12 (9th Cir. Dec. 4, 2024) ("The professional medical speech at issue here is entitled to at least as much First Amendment protection as other speech.").

Of course, "when 'speech' and 'nonspeech' elements [of a challenged statute] are combined in the same course of conduct, a sufficiently important governmental interest in regulating the nonspeech element can justify incidental limitations on First Amendment freedoms." *O'Brien*, 391 U.S. at 376. But, even when a large swath of non-speech conduct falls within a statute's ambit, traditional First Amendment principles govern when the statute is applied to speech rather than conduct. Indiana's argument to the contrary contravenes the Supreme Court's holding in *Holder v. Humanitarian Law Project*, 561 U.S. 1 (2010).

The plaintiffs in *Holder* mounted a First Amendment challenge to a federal

criminal statute prohibiting the provision of "material support or resources to a foreign terrorist organization." *Id.* at 8-9. Of course, the majority of circumstances in which a person might provide "material support or resources" likely do not implicate free-speech protections at all. But that did not mean that, *when* the statute was applied to speech activities, it should still be viewed as a regulation of conduct. Concluded the Court:

> The Government argues that [the statute] should . . . receive intermediate scrutiny because it *generally* functions as a regulation of conduct. That argument runs headlong into a number of our precedents, most prominently *Cohen v. California*, 403 U.S. 15 (1971). *Cohen* also involved a generally applicable regulation of conduct, barring breaches of the peace. But when *Cohen* was convicted for wearing a jacket bearing an epithet, we did not apply *O'Brien*. Instead, we recognized that the generally applicable law was directed at Cohen because of what his speech communicated—he violated the breach of the peace statute because of the offensive content of his particular message. We accordingly applied more rigorous scrutiny and reversed his conviction.
>
> This suit falls into the same category. The law here may be described as directed at conduct . . . but as applied to plaintiffs the conduct triggering coverage under the statute consists of communicating a message.

*Id.* at 27-28 (cleaned up) (emphasis in original). The same can be said of the aid-or-assist statute. There are certainly circumstances where the statute may be applied to non-expressive activity—just as there are any number of ways to support a terrorist organization that do not implicate the First Amendment. But the specific activity in which Planned Parenthood wishes to engage here "consists of communicating a message." *See, e.g.*, *PPGNHAIK*, 2024 WL 4966057, at *12 (The statute "directly prohibits medical professionals from 'referring' a patient 'across state lines to access abortion services.' That is, it prohibits speech that is distinct

from the actual provision of treatment.").[10]

This Court's recent decision in *K.C.* is not to the contrary. In that case, as noted, a divided panel concluded that a similarly worded provision of Indiana law prohibiting licensed medical professionals from "aid[ing] or abet[ting] another physician or practitioner in the provision of" certain forms of gender-affirming care "to a minor" regulated conduct, not speech. *See* 121 F.4th at 628-31. This conclusion, however, followed almost entirely from the fact that the statute "extend[ed] to in-state referrals" where care was banned as well as to referrals "to physicians in [other] states where gender-transition procedures are illegal." *Id.* at 630. In other words, this Court appears to have treated the plaintiffs in that case as having mounted an overbreadth challenge that hinged on whether "a substantial number of [the statute's] applications are unconstitutional, judged in relation to the statute's plainly legitimate sweep." *United States v. Stevens*, 559 U.S. 460, 473 (2010).

---

[10] Indiana's attempt to distinguish *Holder* (Br. of Appellants 23-24) is difficult to follow. To be sure, the terms "material support" and "training," at issue in that case, were defined to include specific speech activities. (*See id.* at 24 [citing 18 U.S.C. § 2339A(b)]). But the aid-and-assist statute similarly applies to some speech activities, including those in which Planned Parenthood engages. Clearly the constitutional analysis does not depend on the Indiana General Assembly's failure to enact a definitional statute saying as much. Focusing on the specific statute at issue in *Holder*, Indiana ignores the principle for which that case stands.

*Rumsfeld v. Forum for Academic & Institutional Rights, Inc.*, 547 U.S. 47 (2006)—relied upon by Indiana (*see* Br. of Appellants 24-26)—is different in kind. There, the Court upheld an equal-access statute that might require universities that "send e-mails or post notices on bulletin boards" for some employers to do so for military recruiters as well. 547 U.S. at 61. In the same way that a non-discrimination statute might "require an employer to take down a sign reading 'White Applicants Only,'" the equal-access provision affected speech only incidentally. *Id.* at 62. Here, the aid-or-assist statute prohibits Planned Parenthood from disseminating its own message. That is a far cry from a generally applicable equal-access provision. *Cf. id.* at 60 ("Law schools remain free under the [equal-access] statute to express whatever views they may have on the military's . . . policy.").

But overbreadth analysis does not govern, and should not be undertaken, when a plaintiff challenges a statute only to the extent that it applies to specific speech. *See, e.g.*, *id.* at 484 ("It is not the usual judicial practice, nor do we consider it generally desirable, to proceed to an overbreadth issue unnecessarily—that is, before it is determined that the statute would be valid as applied.") (cleaned up); *New York v. Ferber*, 458 U.S. 747, 773-74 (1982) (When a statute is "not substantially overbroad," any overbreadth that may exist "should be cured through case-by-case analysis of the fact situations to which its sanctions, assertedly, may not be applied.") (quoting *Broadrick v. Oklahoma*, 413 U.S. 601, 615-16 (1973)).

This is just such an as-applied challenge. From the inception of this litigation, Planned Parenthood has challenged the aid-or-assist statute *only* insofar as it prohibits referrals to out-of-state providers who may lawfully provide abortion care. (*See* Dkt. 1 at 19 [A73] ["To the extent that {the aid-or-assist statute} prevents {Planned Parenthood} and its staff from informing its minor patients and prospective minor patients of the abortion options available in other states, the statute compels silence in violation of the First Amendment."]). It reiterated the narrowness of its challenge on summary judgment. (*See* Dkt. 85 at 20; Dkt. 92 at 19). And the district court accordingly enjoined the statute *only* "insofar as it would prohibit [Planned Parenthood] and its physicians from disseminating to minors information regarding legal abortion practices and abortion care providers in states other than Indiana and from providing referrals to [these providers]." (Dkt. 113 at 1 [SA22]).

*K.C.*'s analysis was premised on the panel's conclusion that the plaintiffs in

that case had failed to "limit their challenge . . . to [the statute's] bar on aiding and abetting out-of-state providers." 121 F.4th at 631. Whether or not that is the proper interpretation of the plaintiffs' position there, it is plainly not what Planned Parenthood sought or what the district court ordered here. The overbreadth analysis undertaken by the panel majority in *K.C.* is inapplicable, and the aid-or-assist statute's prohibition on out-of-state referrals impinges on Planned Parenthood's speech.

### B. Without an underlying criminal offense, the First Amendment exception for "speech integral to criminal conduct" is entirely inapplicable

Next, Indiana's invocation of the First Amendment exclusion of "speech integral to criminal conduct," *see Giboney v. Empire Storage & Ice Co.*, 336 U.S. 490, 498 (1949), founders on the rudimentary fact that it is not illegal for a minor to travel to another state to obtain an abortion. This narrow exception to the First Amendment is only applicable when speech pertains to an underlying offense, and Indiana's circular argument—that information about legal out-of-state abortion care is categorically unprotected because the dissemination of this information is prohibited by the aid-or-assist statute itself—runs headfirst into far-reaching authority.

The *sine qua non* of this exception is that the speech must be "intended to bring about a particular *unlawful* act." *United States v. Hansen*, 599 U.S. 762, 783 (2023) (emphasis added); *see also United States v. Williams*, 553 U.S. 285, 298 (2008) (recognizing that speech "intended to induce or commence *illegal activities*" is not protected by the First Amendment) (emphasis added); *Giboney*, 336 U.S. at 498

(holding that the First Amendment does not "extend[] its immunity to speech or writing used as an integral part of conduct *in violation of a valid criminal statute*") (emphasis added). When "there is no predicate crime," speech cannot be deemed "unprotected for being 'integral to criminal conduct.'" *Friend v. Gasparino*, 61 F.4th 77, 90 (2d Cir. 2023) (quoting *Stevens*, 559 U.S. at 468); *see also Matsumoto v. Labrador*, __ F.4th __, 2024 WL 4927266, at *18 (9th Cir. Dec. 2, 2024) ("To qualify as speech 'integral to unlawful conduct,' the speech must be done in furtherance of the commission of an underlying criminal offense."); *Yellowhammer Fund v. Attorney Gen. of Alabama*, __ F. Supp. 3d __, 2024 WL 1999546, at *19 (M.D. Ala. May 6, 2024) ("For the *Giboney* exception to have tractable limits, the speech at issue must bear some relation to an independently unlawful course of conduct.").

Ignoring this predicate-crime requirement, Indiana appears to contend that Planned Parenthood's provision of information about lawful out-of-state abortion care is at once speech and the criminal conduct to which that speech is integral. (Br. of Appellants 23). There is no support whatsoever for this stunningly circular contention: "Labeling protected speech as criminal speech cannot, by itself, make that speech integral to criminal conduct." *Matsumoto*, 2024 WL 4927266, at *18. Indeed, if the contention had legs, *Holder* and *Stevens*—and, it would seem, countless other cases invalidating a statute on First Amendment grounds—were wrongly decided.[11]

[11] Indiana cites both *Giboney* and *Steele v. Bulova Watch Co.*, 344 U.S. 280 (1952). (Br. of Appellants 23). *Steele* merely recognized that Congress "in prescribing standards of conduct for American citizens may project the impact of its laws beyond the territorial boundaries of the United States," 344 U.S. at 282, and did not concern the First Amendment at all. And, as the Supreme Court subsequently recognized, the problem in *Giboney* was that the union picketing there at issue was "directed at an illegal end"— that is, a violation of

Here, there is no predicate crime. In fact, there is no crime at all. To reiterate: Planned Parenthood desires to refer unemancipated minors to abortion providers in states where they may *legally* obtain an abortion without satisfying the complex procedures established by Indiana Code § 16-34-2-4. The district court only enjoined the aid-or-assist statute to the extent that it prohibits the dissemination of this information about *legal* care. (*See* Dkt. 113 at 1 [SA22]). "A legal abortion . . . is not a criminal offense and so cannot serve as the 'underlying offense' to render otherwise protected speech unprotected." *Matsumoto*, 2024 WL 4927266, at *18. If accepted, Indiana's argument to the contrary would appear to apply to a wide variety of protected speech. Can Indiana prohibit telling a gambling enthusiast that he should try his luck in Las Vegas on the basis that gambling is criminal in Indiana (*see* Ind. Code § 35-45-5-2)? Can it prohibit informing an individual with a degenerative disease that she may wish to relocate to a state where medical marijuana is legal (*see* Ind. Code § 35-48-4-11)? Conversely, can Illinois prohibit one of its residents from recommending that a friend take advantage of Indiana's more favorable regulations regarding the possession of firearms?

The answer to all of these questions is a resounding "no." In the absence of a predicate crime, the narrow First Amendment exception for "speech integral to criminal conduct" is inapplicable.

Neither the case law relied upon by Indiana nor this Court's recent decision in

antitrust laws. *Amalgamated Food Employees Union Local 590 v. Logan Valley Plaza, Inc.*, 391 U.S. 308, 314 (1968), *abrogated on other grounds by Hudgens v. NLRB*, 424 U.S. 507 (1976).

*K.C.* is to the contrary. *United States v. Williams*, 553 U.S. 285 (2008), upheld against an overbreadth challenge a federal statute prohibiting "offers to provide or requests to obtain child pornography," the receipt or distribution of which is plainly illegal. *Id.* at 297, 299. And *Rice v. Paladin Enterprises, Inc.*, 128 F.3d 233 (4th Cir. 1997), rejected a First Amendment defense in a wrongful death suit brought against the publisher of a 130-page instruction manual "on how to murder and to become a professional killer." *Id.* at 239. In other words, both cases arose under circumstances where the predicate criminal offense was obvious.

Similarly, *K.C.*'s invocation of the "speech integral to criminal conduct" exception was premised on this Court's assumption that the plaintiffs in that case desired to refer patients to in-state providers governed by Indiana's ban on gender-affirming care. *See* 121 F.4th at 628-29. The majority's holding, after all, revolved around the conclusion that Indiana could not apply its statute "to speech that did not aid or abet a principal violation of [the ban]," *id.*, and a "principal violation" of Indiana law cannot be committed outside of Indiana's borders.

Here, "both sides agree" that the aid-or-assist statute prohibits Planned Parenthood "from providing information to young women about abortion options *outside the state of Indiana* where parental-involvement requirements might be less expansive." (Dkt. 26 at 41 [A41] [emphasis added] [cleaned up]; *see also* Dkt. 112 at 8 [SA8] [the aid-or-assist statute prohibits the provision of "information to minors regarding the names/locations of *out-of-state abortion services* that would not require parental consent and/or notice"] [emphasis added]). An abortion provider in Illinois

or Michigan cannot violate Indiana Code § 16-34-2-4's substantive restriction on abortion care and, unlike in *K.C.*, there is thus no "principal violation" of Indiana law.

Indiana's argument to the contrary contravenes Supreme Court precedent. Take, for instance, *Bigelow v. Virginia*, 421 U.S. 809 (1975), in which a newspaper publisher in Virginia, where abortion was illegal at the time of prosecution, disseminated an advertisement announcing the legality of abortion in New York. *Id.* at 811-12. Although he was initially convicted for violating a statute prohibiting an individual from "encourag[ing] or prompt[ing] the procuring of abortion," *id.* at 812, the Supreme Court held the distribution of "factual material of clear public interest" to be constitutionally protected notwithstanding its "encourage[ment]" of activity that would be illegal in Virginia, *id.* at 822 (internal quotation omitted). If Indiana is correct, then the publisher's speech was categorically unprotected, and *Bigelow* was wrongly decided.

Indiana's argument is also inconsistent with *United States v. Stevens*, 559 U.S. 460 (2010), in which the Court invalidated a federal statute prohibiting the creation, sale, or possession of "a depiction of animal cruelty," where "animal cruelty" was defined in terms of conduct prohibited by federal law or by the law of the state where the creation, sale, or possession took place. *Id.* at 464-65. While not addressing the "speech integral to criminal conduct" exception other than in passing, the Court's overbreadth analysis highlighted the fact that "[a] depiction of entirely lawful conduct runs afoul of the ban if that depiction later finds its way into another State where the same conduct is unlawful." *Id.* at 475-76. Here, the "depiction of entirely lawful

conduct"—that is, the dissemination of information about the availability of out-of-state abortion providers—has *already* found its way "into another State where the same conduct is unlawful": Indiana prohibits out-of-state referrals merely because certain abortions have been banned inside the state.

In the absence of a predicate offense, the "speech integral to criminal conduct" exception is inapplicable. *K.C.* must be interpreted consistently with this abundant jurisprudence.[12]

### C. The aid-or-assist statute does not survive strict scrutiny

#### 1. As a content- and viewpoint-based restriction on speech, the statute is subject to strict scrutiny

Traditional First Amendment jurisprudence, which protects "the right of every citizen to reach the minds of willing listeners," *Hill v. Colorado*, 530 U.S. 703, 728 (2000) (cleaned up), therefore applies.

"[I]t is axiomatic that the government may not regulate speech based on its substantive content or the message it conveys." *Rosenberger v. Rector & Visitors of Univ. of Va.,* 515 U.S. 819, 828 (1995) (citation omitted). The aid-or-assist statute prohibits Planned Parenthood from disseminating factually accurate information to its patients, or even from reaching out to other providers, based on the content of the message it wishes to convey, and this alone subjects the statute to strict scrutiny. *See, e.g.*, *Reed v. Town of Gilbert*, 576 U.S. 155, 163 (2015).

More than that, the statute also regulates Planned Parenthood's speech based

---

12 If it cannot be so interpreted, it must be overruled. *See Rodriguez de Quijas v. Shearson/Am. Exp., Inc.*, 490 U.S. 477, 484 (1989) (only the Supreme Court has "the prerogative of overruling its own decisions").

on the *viewpoint* it wishes to convey, for Indiana does not care if persons inform pregnant minors of the states in which they cannot obtain an abortion or of pregnancy-related resources that may be available to them. "When the government targets not subject matter but particular views taken by speakers on a subject, the violation of the First Amendment is all the more blatant." *Rosenberger*, 515 U.S. at 829; *see also, e.g.*, *Honeyfund.com Inc. v. Governor*, 94 F.4th 1272, 1278 (11th Cir. 2024) (Viewpoint-based "restrictions are an egregious form of content discrimination and likely even invalid per se.") (cleaned up); *cf. Pleasant Grove City v. Summum*, 555 U.S. 460, 469 (2009) (noting that, in a traditional public forum, "any restriction on the content of the speech must satisfy strict scrutiny . . . and restrictions based on viewpoint are prohibited").

The closest that Indiana comes to disputing that the aid-or-assist statute is content- and viewpoint-based is a brief contention that the statute "has nothing to do with the content of the call or referral" made by Planned Parenthood. (Br. of Appellants 26). On its face, that is wrong. If Planned Parenthood hands a young person a piece of paper with a list of Illinois-based healthcare providers where the patient can get prenatal care, it violates no law. Change the words on the paper to a list of Illinois-based healthcare providers that offer abortion care, and Planned Parenthood has violated the law. That is the essence of content- and viewpoint-based discrimination. *See, e.g.*, *Planned Parenthood Great Nw., Haw., Alaska, Ind., Ky. v. Labrador*, __ F.4th __, 2024 WL 4966057, at *12 (9th Cir. Dec. 4, 2024) (concluding that a similar statute prohibiting out-of-state abortion referrals "is a content-based

restriction on speech" and "forbids expression of a particular viewpoint").

Given that its statute is both content- and viewpoint-based, Indiana bears the burden of demonstrating that the statute is "necessary to serve a compelling state interest and that it is narrowly drawn to achieve that end." *Perry Educ. Ass'n v. Perry Local Educators' Ass'n,* 460 U.S. 37, 45 (1983). And its rationale for regulating speech must be divorced from "the specific motivating ideology or the opinion or perspective of the speaker." *Rosenberger*, 515 U.S. at 829. Indiana has not met these standards.

**2. The statute is not justified by a compelling governmental interest**

Indiana has no legitimate, let alone compelling, interest in preventing Planned Parenthood from providing information to pregnant Hoosiers, whether minors or not, about abortion care that is legal and available in other states. This is because, as the Supreme Court has long recognized, any asserted state interest "in shielding its citizens from information about activities outside [its] borders, activities that [its] police powers do not reach," is "entitled to little, if any, weight." *Bigelow*, 421 U.S. at 827-28; *see also id.* at 824-25 (A State "may not, under the guise of exercising internal police powers, bar a citizen of another State from disseminating information about an activity that is legal in that State."); *Matsumoto v. Labrador*, __ F.4th __, 2024 WL 4927266, at *18 (9th Cir. Dec. 2, 2024) ("Idaho's asserted police powers do not properly extend to abortions legally performed outside of Idaho.").

Indiana nonetheless asserts that different rules apply when information about legal out-of-state abortion care is provided to a minor. This is so, it insists, because of its "compelling interest in protecting the parent-child relationship and the child's

well-being." (Br. of Appellants 27-30). There are at least five problems with its contention that the aid-or-assist statute advances this interest.

*First,* Indiana's asserted interest is not remotely tethered to the viewpoint discrimination occasioned by the aid-or-assist statute. *See Rosenberger*, 515 U.S. at 829. Indiana would have no problem, for instance, if Planned Parenthood refers minor patients to an adoption agency (the consent of a minor's parents is generally not necessary for that minor to place a child up for adoption, *see* Ind. Code § 31-19-9-1(b)), if it provides information to a pregnant minor about Indiana's safe haven law (*see* Ind. Code § 31-34-2.5-1) or similar statutes in other jurisdictions, or if it shares information about the availability of counseling or any other non-abortion medical or mental-health service (either inside or outside Indiana)—regardless of whether the minor's parent would object to this care. Indiana's asserted interest in protecting the parent-child relationship and minors' well-being is just as applicable to these situations. But the aid-or-assist statute singles out information about and referrals for abortion care.

*Second,* Indiana's asserted interest appears to be just another way of saying that it disapproves of the fact that other states have less restrictive abortion laws. After all, while the aid-or-assist statute prohibits Planned Parenthood from sharing information with pregnant minors, Indiana's ultimate concern is these minors might actually be able to obtain an abortion in another state without the form of parental consent required by Indiana law. As the Supreme Court recognized, however, "[a] State does not acquire power or supervision over the internal affairs of another State

merely because the welfare and health of its own citizens may be affected when they travel to that State." *Bigelow*, 421 U.S. at 824.

There are exceedingly few circumstances in which the First Amendment tolerates a prohibition on the dissemination of factually accurate information—even to minors. Indiana can point to no case that has ever deemed speech about legal medical care to be sufficiently harmful that it cannot be shared with minors. Indeed, it appears to recognize the distinction between regulating a particular procedure and prohibiting the dissemination of information about that procedure, for its own regulations *require* doctors to "refer a patient to another practitioner" whenever they are not "qualified to treat the patient." Ind. Admin. Code tit. 844, r. 5-2-7.

Indiana's extensive reliance on pre-*Dobbs* case law upholding, with certain exceptions, parental notification and consent requirements (*see* Br. of Appellants 28-30)—none of which applied the First Amendment's strict-scrutiny analysis—only underscores that its concern is not with the dissemination of truthful information but with the availability of abortion care in its sister states. Even this jurisprudence recognizes that a minor may be "mature and well enough informed to make intelligently the abortion decision on her own." *Bellotti v. Baird*, 443 U.S. 622, 647 (1979) (plurality). But more importantly, as *Bigelow* makes clear, Indiana's concern about the availability of abortion care in other states is not entitled to any weight. *See* 421 U.S. at 824-28.

*Third,* and relatedly, Indiana's asserted interest does not pertain to Planned Parenthood *sharing* information with minors but to minors *having* that information.

As the district court recognized, the information disseminated by Planned Parenthood "is readily and widely available to any member of the public via a simple internet search." (Dkt. 112 at 15). Other methods of obtaining this information doubtless abound. To be sure, Planned Parenthood provides information to willing listeners so that pregnant minors are not required to undertake independent research. But the wide availability of this information casts significant doubt on the degree to which Indiana's aid-or-assist statute actually advances its asserted interest.

Under strict scrutiny, the government "bears the risk of uncertainty" and thus must demonstrate "a direct causal link" between its regulation and the harm it wishes to prevent. *Brown v. Entm't Merchants Ass'n*, 564 U.S. 786, 799-800 (2011); *see also, e.g.*, *United States v. Playboy Entm't Group*, 529 U.S. 803, 816-19 (2000). It has offered no evidence supporting the "link" that it asks this Court to find; indeed, in the district court it offered no evidence at all. Thus, "even assuming the statute serve[s] a state interest of the highest order," there is no evidence that it "accomplish[es] its stated purpose." *Smith v. Daily Mail Pub'g Co.*, 443 U.S. 97, 105 (1979) (invalidating statute that applied to newspapers but not "the electronic media or any [other] form of publication"). While certainly relevant to the narrow-tailoring requirement, a statute's "[u]nderinclusiveness can also reveal that [it] does not actually advance a compelling interest." *Williams-Yulee v. Florida Bar*, 575 U.S. 433, 449 (2015) (quoting *R.A.V. v. St. Paul*, 505 U.S. 377, 387 (1992)); *see also Florida Star v. B.J.F.*, 491 U.S. 524, 540 (1989) (statute's "facial underinclusiveness" raises "serious doubts" about whether it is serving the state's asserted "interests").

*Fourth,* the aid-or-assist statute does not prohibit Planned Parenthood from disseminating information to minors who have not obtained parental consent *in general* but prohibits it from disseminating information to minors who have not obtained *a specific form* of parental consent: "the consent required by [Indiana Code § 16-34-2-4]." Ind. Code § 16-34-2-4.2(c). This Indiana-specific requirement means that a parent's consent must be in writing and notarized, that the parent must produce government-issued identification as well as "some evidence" that "provides an articulable basis for a reasonably prudent person to believe that the person is the [minor's] parent," and that the physician performing the abortion must sign an affidavit attesting to the adequacy of this evidence. Ind. Code §§ 16-34-2-4(b), (l).

In other words, in many situations the aid-or-assist statute prohibits Planned Parenthood from disseminating information to minors who are seeking an abortion *with their parent's consent*. Now that the state-court injunction has been lifted and Indiana's prohibition on the provision of abortions in clinical settings has taken effect, these situations arise with greater frequency. (Dkt. 85-1 at 8-10 [A83-A85]). For instance, Planned Parenthood disseminates information about out-of-state abortion care to persons who may not wish to (or be able to) incur the additional expense of receiving abortion care in a hospital setting. (*Id.* at 9-10 [A84-A85]). Similarly, it may refer a minor patient to an out-of-state provider simply because that provider is geographically closer. In these situations, by its terms the aid-or-assist statute prohibits Planned Parenthood from disseminating information *even if* the minor's parent is standing next to the minor when they receive this information—for the out-

of-state physician providing abortion care will almost certainly not be obtaining the specific form of "consent required by" Indiana law. Ind. Code § 16-34-2-4.2(c).

Indiana's asserted interest in protecting the parent-child relationship and the minor's well-being clearly has no applicability when Planned Parenthood provides information to a minor seeking an abortion with their parent's consent. And yet the aid-or-assist statute prohibits it from doing so even then.

*And fifth*, to the extent that Indiana asserts that the aid-or-assist statute is necessary to ensure that out-of-state abortion providers have access to a minor's "medical and other information" (Br. of Appellants 29), its argument is plainly off-base and, in fact, the aid-or-assist statute is self-defeating.

Suppose a physician in another state desired to review a minor's medical records before providing abortion care and sought this information from Planned Parenthood or any other Indiana provider. A cautious Indiana provider could be concerned that the aid-or-assist statute itself might be read to *prohibit* them from sharing this information. Indeed, the statute could chill such a risk-averse provider even from giving medical records directly to the minor or the minor's parent—at least if they know why the records are being requested. Indiana cannot assert an interest in ensuring that an out-of-state provider has access to a minor's medical information to justify a statute that may obstruct that provider from accessing this information.

**3. The statute is not narrowly tailored**

For many of the same reasons that Indiana's asserted interest is not advanced by the aid-or-assist statute, the statute is also not narrowly tailored to this interest.

a. The statute is overinclusive insofar as it applies even when a minor's parent consents to an out-of-state abortion

The statute is overinclusive with respect to Indiana's interest. As the district court recognized, because it does not require parental consent in general but instead incorporates Indiana's state-specific requirements for obtaining consent, *see* Ind. Code §§ 16-34-2-4.2(a), (c), the aid-or-assist statute prohibits Planned Parenthood from providing information about out-of-state alternatives to many minors *even though* they have their parent's consent to receive an abortion. (Dkt. 112 at 18-19 [SA18-SA19]). This facet of the statute has become even more pronounced now that the state-court injunction has been lifted such that pregnant minors may only receive an abortion in Indiana in three limited circumstances and, even then, only in a hospital setting. (*See* Dkt. 85-1 at 8-10 [A83-A85]).

Indiana resists this conclusion by suggesting that the aid-or-assist statute does not prohibit Planned Parenthood from "assisting a parent who is willing to consent to their minor child's abortion but needs assistance navigating the process." (Br. of Appellants 41). This suggestion is impossible to square with the text of the statute itself, which prohibits assistance "in obtaining an abortion" without the specific "consent required by [Indiana Code § 16-34-2-4]." Ind. Code § 16-34-2-4.2(c). Providing information to a parent—or a friend, or a teacher, or anyone else—so that they may use that information to assist a minor in obtaining an abortion is still "assisting" that minor in obtaining an abortion. And, of course, "contacting out-of-state abortion providers on behalf of . . . minor patients" (Dkt. 113 at 1 [SA22]) is prohibited by the aid-or-assist statute regardless of the parent's involvement.

Apparently recognizing this, Indiana highlights the statute's inapplicability when a minor "has obtained or is seeking to obtain parental consent or a waiver of parental consent *under section 4 of this chapter*." Ind. Code § 16-34-2-4.2(b) (cleaned up) (emphasis added). Its brief, however, omits the last six words of this provision. (Br. of Appellants 42). Like subsections (a) and (c), this provision requires a form of parental consent specific to Indiana, not parental consent in general.

Its strained reading of the statute aside, Indiana assumes that, any time a minor has their parent's consent to obtain an abortion, Planned Parenthood will *only* be providing information about the availability of out-of-state abortion care to the parent. There is no support for this assumption. Planned Parenthood provides pregnancy diagnosis and other pregnancy-related services (Dkt. 85-1 at 2 [A77]) and, in many circumstances, a minor may seek information about their options before consulting with their parent—perhaps to make the ensuing conversation easier. In other circumstances, the pregnant minor rather than their parent may simply assume responsibility for researching out-of-state alternatives. To say the least, Planned Parenthood's relationship is with the pregnant minor, not their parent.

Far from "[h]ypothetical" (Br. of Appellants 41), the applicability of the aid-or-assist statute to situations where a minor is seeking an abortion with their parent's consent is a feature of the statute itself. And, given (a) that the overwhelming majority of minors obtaining an abortion do so with their parent's consent (Dkt. 14-1 at 2) and (b) that abortion care in Indiana is now severely limited, it is a feature with everyday consequences to Planned Parenthood and its patients.

Indiana nonetheless contends that, even if the aid-or-assist statute is overbroad, the district court's injunction should simply be modified to apply only to circumstances where a minor is "acting in consultation with her parents." (Br. of Appellants 42). This argument has been waived by not being advanced below. *See, e.g.*, *Homoky v. Ogden*, 816 F.3d 448, 455 (7th Cir. 2016).

Waiver notwithstanding, aside from being practically unworkable—how is Planned Parenthood or the Medical Licensing Board to know of the minor's conversation with her parents, and what degree of involvement constitutes "consultation"?—this contention turns the narrow-tailoring requirement on its head. The statute's applicability to a wide variety of circumstances that cannot be justified by its asserted interest means that the statute is unconstitutional under strict scrutiny. Indiana may choose to rewrite its statute to apply to fewer circumstances, but the narrow-tailoring requirement does not allow, let alone require, a court to undertake this task for it. *See, e.g.*, *United States v. Stevens*, 559 U.S. 460, 481 (2010) ("We will not rewrite a law to conform it to constitutional requirements, for doing so would constitute a serious invasion of the legislative domain and sharply diminish [the legislature's] incentive to draft a narrowly tailored law in the first place.") (cleaned up).[13]

---

[13] Indiana concludes its argument by asserting that its statutory requirements for obtaining and evidencing parental consent (or a judicial bypass of these requirements) are not complex. (Br. of Appellant 42-43). This is highly debatable. But the point is not whether these requirements are complex or not; the point is that they are Indiana-specific. Indiana Code § 16-34-2-4, of course, does not apply to a physician providing out-of-state abortion care and does not allow a minor seeking that care to obtain a judicial bypass of parental-consent requirements, and so a minor seeking an out-of-state abortion with parental consent is still seeking an abortion "without the consent required by section 4." Ind. Code § 16-34-2-4.2(c).

b. The statute is overinclusive insofar as it applies to mature minors and to minors who may not be able to obtain parental consent

The district court also highlighted the aid-or-assist statute's applicability not only to immature minors but also to minors "mature enough to make the abortion decision for themselves." (Dkt. 112 at 19 [SA19]).

Even post-*Dobbs*, Indiana itself continues to allow a mature minor to make this decision independently and, under appropriate circumstances, without even notifying their parent. *See* Ind. Code § 16-34-2-4(f). While Indiana excerpts the Supreme Court's statement that even a minor who is "very much an adult in some respects" may have a continuing need "for growth under parental guidance and discipline" (Br. of Appellants 37 [quoting *Bellotti v. Baird*, 443 U.S. 622, 643 n.23 (1979) (plurality)]), it takes this language entirely out of context. Far from casting doubt on some minors' ability to make the abortion decision without parental involvement, the Supreme Court was merely explaining why "objective, though inevitably arbitrary, criteria such as age limits" may often be used as a proxy for maturity. *Bellotti*, 443 U.S. at 643 n.23. That is doubtless permissible in many circumstances, but strict scrutiny demands more.

Aside from mature minors, the aid-or-assist statute also prevents Planned Parenthood from disseminating information about the availability of out-of-state abortion care under a variety of circumstances where the sharing of this information cannot possibly impinge on the parent-child relationship. Some minors, though not formally emancipated, simply do not know where their parents are. (Dkt. 14-1 at 4; Dkt. 14-7 at 6-7). Others may risk physical or mental abuse, or being expelled from

their home, should they inform their parent of their pregnancy or of their abortion decision. (Dkt. 14-1 at 4; Dkt. 14-3 at 3; Dkt. 14-6 at 5-6, 11; Dkt. 14-7 at 4-6). And others may be forced by their parent to carry their pregnancy to term. (Dkt. 14-1 at 4; Dkt. 14-4 at 2-3; Dkt. 14-6 at 6, 11-12; Dkt. 14-7 at 5). In these situations, the aid-or-assist statute may serve to damage, rather than strengthen, the parent-child relationship—perhaps irreparably so.

These considerations, of course, explain in part why Indiana has established a procedure for minors to judicially bypass its parental-consent requirement. *See* Ind. Code § 16-34-2-4(c). But, as noted repeatedly, that procedure is not available to a patient seeking an out-of-state abortion and has no bearing whatsoever on out-of-state abortion care, *cf. id.* (requiring a petition to be filed "in the county in which the pregnant minor resides or in which the abortion is to be performed"), yet the aid-or-assist statute prohibits out-of-state referrals even to minors who would qualify for a bypass. Indiana's detailed invocation of its bypass procedure ignores this.

Indiana's response to all this is to reiterate its suggestion that the district court's injunction should have been limited to specific instances where it felt that the aid-and-assist statute does not protect the parent-child relationship. (Br. of Appellants 38-39). That suggestion, aside from representing a tacit admission that the statute is not narrowly tailored, remains practically unworkable, is waived for failure to raise the argument below, impermissibly intrudes on the legislative domain, and is entirely without legal support. (*See supra at* 45).[14]

[14] Indiana's insistence that Planned Parenthood show that "a substantial number of the law's applications are unconstitutional, judged in relation to the statute's plainly legitimate

c. <u>The statute is also fatally underinclusive</u>

In addition to its overinclusiveness, the aid-or-assist statute is also significantly underinclusive.

For one, Indiana's asserted interest does not pertain specifically to abortion care. Rather, it insists more generally that it has an interest in ensuring that a pregnant minor's parent is involved in the decision-making process. And yet the aid-or-assist statute allows a medical provider (or anyone else) to advise a pregnant minor to carry their fetus to term, to inform them about available resources should they do so, or to refer them to a medical or mental-health practitioner for any reason other than abortion care. Indiana's decision to address only abortion care casts suspicion on the sincerity of the interest it invokes. *See, e.g.*, *Florida Star v. B.J.F.*, 491 U.S. 524, 540 (1989). It also highlights the underinclusiveness of its statute.

On top of this, as noted, Indiana's asserted interest pertains not to Planned Parenthood *sharing* information about the availability of out-of-state abortion care but to minors *having* this information. This information, however, is already widely available online and elsewhere. And, while surely any attempt to regulate the dissemination of this information in other fora would be unconstitutional for many of

---

sweep" (Br. of Appellants 38 [cleaned up]) erroneously conflates overbreadth doctrine with the narrow-tailoring requirement imposed on content- and viewpoint-based censorship. Overbreadth is primarily a doctrine of standing that allows for the invocation of the speech rights of persons not before the Court. *See, e.g.*, *Cent. Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of N.Y.*, 447 U.S. 557, 565 n.8 (1980). Narrow tailoring, on the other hand, "is not an application of the 'overbreadth' doctrine" but instead ensures that, "to the extent [a statute's] limitations are unnecessary to serve the State's interest, they are invalid." *Id.* Indiana's argument would uproot virtually every decision that has ever found a law invalid under heightened scrutiny.

the same reasons that the statute at issue here is unconstitutional, the failure of Indiana to address other avenues through which minors might access this information underscores the statute's underinclusivity.

In *Florida Star*, the Supreme Court deemed a statute fatally underinclusive when it prohibited the publication of information identifying a crime victim in an "instrument of mass communication" but allowed the same information to be shared by a "smalltime disseminator." 491 U.S. at 540. The aid-or-assist statute, which prohibits referrals to individual patients but does not address the mass dissemination of truthful information, is even worse. *See also Brown v. Entm't Merchants Ass'n*, 564 U.S. 786, 802 (2011) (statute underinclusive that "singled out the purveyors of video games for disfavored treatment" while leaving untouched "booksellers, cartoonists, and movie producers"); *Smith v. Daily Mail Pub. Co.*, 443 U.S. 97, 104-05 (1979) (statute underinclusive that restricted newspapers but not electronic media or other publications from disseminating information). For this reason, too, the aid-or-assist statute is not narrowly tailored.

**D. The statute does not survive intermediate scrutiny**

Finally, even if this Court determines that the aid-or-assist statute regulates primarily conduct with only an incidental burden on speech, it still must pass muster under intermediate scrutiny. *See United States v. O'Brien*, 391 U.S. 367, 376-77 (1968). This requires that the statute "further[] an important or substantial governmental interest . . . unrelated to the suppression of free expression" and that the restriction on First Amendment freedoms be "no greater than is essential to the

furtherance of that interest." *Id.* at 377.

There is significant reason to question whether the aid-or-assist statute is "unrelated to the suppression of free expression." This analysis turns not on the language of the statute itself but on the precise activity in which Planned Parenthood wishes to engage. *See, e.g.*, *Texas v. Johnson*, 491 U.S. 397, 407-10 (1989) (detailing the criminal defendant's political protest in holding that a state's invocation of a flag-desecration statute was related to the suppression of expression). As stressed throughout, despite its invocation of a seemingly neutral interest—protecting the parent-child relationship—Indiana has chosen to prohibit referrals only to abortion providers while allowing persons to disseminate information about any other form of medical or mental-health care. That is a prohibition related to the free-speech activity itself.

Ultimately, however, the aid-or-assist statute fails even under intermediate scrutiny because its restriction on First Amendment activity is far greater than necessary to advance Indiana's asserted interest. *Bigelow* holds that a state has no interest whatsoever in restricting the dissemination of information about legal out-of-state abortion care. *See* 421 U.S. 809, 824-28 (1975). And, as detailed extensively above, the statute's overinclusivity does not exist around the fringes. Indiana restricts significantly more speech "than is essential to the furtherance of [its] interest." *O'Brien*, 391 U.S. at 377. Even if the aid-or-assist statute is deemed a regulation of conduct, its application here remains unconstitutional.

## CONCLUSION

The judgment should be affirmed in all respects.


Gavin M. Rose
*Counsel of Record*
Kenneth J. Falk
ACLU of Indiana
1031 E. Washington St
Indianapolis, IN 46202
317/635-4059
fax: 317/635-4105
kfalk@aclu-in.org
grose@aclu-in.org

Andrew Beck
American Civil Liberties Union
New York, NY 10004
(212) 549-2641
abeck@aclu.org

Jennifer Sandman
Ella Spottswood
Valentina De Fex
Planned Parenthood Federation of America
123 William St.
New York, NY 10038
(212) 261-4584
jennifer.sandman@ppfa.org
ella.spottswood@ppfa.org
valentina.defex@ppfa.org

*Attorneys for the Appellee*

## CERTIFICATE OF WORD COUNT

I hereby certify that this brief complies with the type-volume limitation of Circuit Rule 32(c) insofar as it contains 13,989 words, excluding the parts of the brief exempted by Appellate Rule 32(a)(7)(B)(iii).

/s/ Gavin M. Rose
Gavin M. Rose
Attorney at Law

## CERTIFICATE OF SERVICE

I hereby certify that on the 20th day of December, 2024, I electronically filed the foregoing document with the Clerk of the Court for the United States Court of Appeals for the Seventh Circuit by using the CM/ECF system. Service will be made on all ECF-registered counsel by operation of the Court's electronic system.

/s/ Gavin M. Rose
Gavin M. Rose
Attorney at Law