No. 24-2219

**IN THE**
**UNITED STATES COURT OF APPEALS**
**FOR THE SEVENTH CIRCUIT**

PLANNED PARENTHOOD GREAT NORTHWEST, HAWAI'I, ALASKA, INDIANA, KENTUCKY, INC.,

*Plaintiff-Appellee*,

v.

COMMISSIONER, INDIANA STATE DEPARTMENT OF HEALTH, *et al.*,

*Defendants-Appellants.*

On Appeal from the United States District Court for the Southern District of Indiana, No. 1:17-cv-01636-SEB-CSW,
The Honorable Sarah Evans Barker, Judge

# REPLY BRIEF OF APPELLANTS

Office of the Attorney General
IGC South, Fifth Floor
302 W. Washington Street
Indianapolis, IN 46204
(317) 232-0709
James.Barta@atg.in.gov

THEODORE E. ROKITA
Attorney General of Indiana

JAMES A. BARTA
Solicitor General

JENNA M. LORENCE
Deputy Solicitor General

JOHN M. VASTAG
Deputy Attorney General

*Counsel for Appellants*

**TABLE OF CONTENTS**


TABLE OF AUTHORITIES .......... ii

INTRODUCTION .......... 1

ARGUMENT .......... 2

I. Planned Parenthood Has Not Demonstrated a Live Controversy .......... 2

II. The First Amendment Does Not Protect Planned Parenthood's Intentional Efforts to Facilitate Violations of Indiana Law .......... 5

- A. The challenged statute regulates conduct .......... 6
- B. Any regulated speech is integral to unlawful conduct .......... 10

III. Indiana's Prohibition on Intentionally Aiding or Assisting Minors with Avoiding Consent Requirements Survives Any Level of Scrutiny .......... 13

- A. The aid-or-assist statute advances compelling government interests .......... 13
- B. The law is narrowly tailored .......... 17
- C. The law survives intermediate scrutiny as well .......... 22

CONCLUSION .......... 23

## TABLE OF AUTHORITIES

### CASES

*Ayotte v. Planned Parenthood of N. New England*,
546 U.S. 320 (2006) .......... 13, 17

*Babbitt v. United Farm Workers Nat'l Union*,
442 U.S. 289 (1979) .......... 2, 13

*Bellotti v. Baird*,
443 U.S. 622 (1979) .......... 20, 22

*Bigelow v. Virginia*,
421 U.S. 809 (1975) .......... 12, 14, 15

*California v. Texas*,
593 U.S. 659 (2021) .......... 3

*City of Austin v. Reagan Nat'l Advert. of Austin, LLC*,
596 U.S. 61 (2022) .......... 17, 23

*Cntr. for Individual Freedom v. Madigan*,
697 F.3d 464 (7th Cir. 2012) .......... 21

*Doe v. City of Lafayette*,
377 F.3d 757 (7th Cir. 2004) .......... 18

*eBay Inc. v. MercExchange, L.L.C.*,
547 U.S. 388 (2006) .......... 19

*Giboney v. Empire Store & Ice Co.*,
336 U.S. 490 (1949) .......... 10, 11, 12

*Gonzalez v. Thaler*,
565 U.S. 134 (2012) .......... 4

*H.L. v. Matheson*,
450 U.S. 398 (1981) .......... 17

*Hamer v. Neighborhood Hous. Servs. of Chicago*,
897 F.3d 835 (7th Cir. 2018) .......... 21

*Hays v. City of Urbana*,
104 F.3d 102 (7th Cir. 1997) .......... 3

**CASES [CONT'D]**

*Hodgson v. Minnesota*,
497 U.S. 417 (1990) .......... 13, 17

*Holder v. Humanitarian Law Project*,
561 U.S. 1 (2010) .......... 8

*John Doe No. 1 v. Reed*,
561 U.S. 186 (2010) .......... 19, 20, 21

*K.C. v. Individual Members of Med. Licensing Bd.*,
121 F.4th 604 (7th Cir. 2024) .......... *passim*

*Keep Chicago Livable v. City of Chicago*,
913 F.3d 618 (7th Cir. 2019) .......... 5

*Lujan v. Defs. of Wildlife*,
504 U.S. 555 (1992) .......... 4

*Moody v. NetChoice, LLC*,
144 S. Ct. 2383 (2024) .......... 20, 21

*Nat'l Cycle, Inc. v. Savoy Reinsurance Co.*,
938 F.2d 61 (7th Cir. 1991) .......... 9

*National Institute of Family & Life Advocates v. Becerra*,
585 U.S. 755 (2018) .......... 9, 10

*Parham v. J.R.*,
442 U.S. 584 (1979) .......... 13

*Planned Parenthood Great Northwest, Hawaii, Alaska, Indiana, Kentucky v. Labrador*,
122 F.4th 825 (9th Cir. 2024) .......... 9

*Prince v. Massachusetts*,
321 U.S. 158 (1944) .......... 15

*Quillion v. Walcott*,
434 U.S. 246 (1978) .......... 13

*RAV v. City of St. Paul*,
505 U.S. 377 (1992) .......... 15

*Rice v. Paladin Enters., Inc.*,
128 F.3d 233 (4th Cir. 1997) .......... 14

**CASES [CONT'D]**

*Rosenberger v. Rector & Visitors of Univ. of Va.*,
515 U.S. 819 (1995) ........................................................ 17

*Rumsfeld v. Forum for Acad. & Inst'l Rts., Inc.*,
547 U.S. 47 (2006) ........................................................ 6, 7

*Susan B. Anthony List v. Driehaus*,
573 U.S. 149 (2014) ........................................................ 3

*Sweeney v. Raoul*,
990 F.3d 555 (7th Cir. 2021) ........................................................ 2

*Turner Broad. Sys., Inc. v. FCC*,
512 U.S. 622 (1994) ........................................................ 22

*United States v. Hansen*,
599 U.S. 762 (2023) ........................................................ 6, 10, 11

*United States v. O'Brien*,
391 U.S. 367 (1968) ........................................................ 12, 17, 22

*United States v. Sineneng-Smith*,
590 U.S. 371 (2020) ........................................................ 9

*United States v. Stevens*,
559 U.S. 460 (2010) ........................................................ 12

*United States v. Willaims*,
553 U.S. 285 (2008) ........................................................ 21

*Ward v. Rock Against Racism*,
491 U.S. 781 (1989) ........................................................ 22

*Williams-Yulee v. Florida Bar*,
575 U.S. 442 (2015) ........................................................ 15, 21, 22

*Word Seed Church v. Village of Hazel Crest*,
111 F.4th 814 (7th Cir. 2024)........................................................ 4

**STATUTES**

18 U.S.C. § 2339A(b)........................................................ 8

**STATUTES [CONT'D]**

Ind. Code § 16-34-2-4(c) ........ 21

Ind. Code § 16-34-2-4(f)–(j) ........ 20

Ind. Code § 16-34-2-4.2(a) ........ 16

Ind. Code § 16-34-2-4.2(b) ........ 18

Ind. Code § 16-34-2-4.2(c) ........ *passim*

Ind. Code § 25-1-22-13(b) ........ 7

**REGULATIONS**

844 Ind. Admin. Code 5-2-12 (2024) ........ 5

## INTRODUCTION

Planned Parenthood's argument that the First Amendment allows it to enable minors to avoid parental consent requirements is stuck in the past, on both the facts and the law. First, Planned Parenthood has not established that there is still a live controversy. When it presented evidence in the district court, Planned Parenthood provided abortions in Indiana. Now, it does not. So any discussion of whether or how Planned Parenthood's physicians or employees might violate the law is speculative, as is whether an injunction would actually redress their claimed harms.

Second, this Court has recently rejected Planned Parenthood's argument that its physicians may "hold a veto over the state's power to protect its citizens." *K.C. v. Individual Members of Med. Licensing Bd.*, 121 F.4th 604, 630 (7th Cir. 2024), by aid-or-assisting in violations of law. Like the law at issue in *K.C.*, the challenged law here imposes a general restriction on conduct, and any speech swept in on the margins does not trigger heightened scrutiny. Any speech caught in that prohibition is only that which is integral to unlawful conduct. Coaching a specific minor on how to procure a secret abortion is not a lawful means of contravening Indiana's "valid[] regulat[ion]" of minors' access to medication and surgery absent parental consent. *Id.*

Regardless, the statute survives any level of review. It advances a core and compelling State interest by protecting children—its most vulnerable citizens—and safeguarding their relationship with their most important caregivers. And Indiana has narrowly tailored its law to apply where speech is calculated to evade Indiana

law. If a minor can demonstrate her parents' consent or her own maturity, then she is free to seek whatever procedures she desires.

This Court should reverse.

## ARGUMENT

### I. Planned Parenthood Has Not Demonstrated a Live Controversy

Planned Parenthood concedes that it has "lost its ability to pursue relief against the Commissioner of the Indiana State Department of Health" and "the injunction should be modified to run only against the Members of the Indiana Medical Licensing Board." Resp. Br. 15 n.3. It also does not dispute that potential civil liability to third parties cannot establish standing against state officers. *See* Appellants' Br. 15–17. The parties are thus in agreement that, at the very least, the injunction must be narrowed to "run only against the Members of the Medical Licensing Board." Resp. Br. 15 n.3. The only dispute concerns whether Planned Parenthood provided evidence at summary judgment establishing that the district court had jurisdiction to enter a permanent injunction against the Board.

To establish standing in a pre-enforcement challenge, a challenger must show "*both* 'an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute,' *and* 'a credible threat of prosecution thereunder.'" *Sweeney v. Raoul*, 990 F.3d 555, 559 (7th Cir. 2021) (emphasis added) (quoting *Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 298 (1979)). Here, Planned Parenthood invokes the possibility of "licensure consequences" for physicians "should they or any of Planned Parenthood's other

employees engage" in prohibited conduct. Resp. Br. 16. But no evidence establishes that the "likelihood of future enforcement is 'substantial.'" *California v. Texas*, 593 U.S. 659, 670 (2021) (quoting *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 164 (2014)).

Although Planned Parenthood argues that physicians themselves could be subject to sanctions, Resp. Br. 16, the evidence is more equivocal. It only indicates that Planned Parenthood wishes to have unspecified "employees," "agents," and "staff" undertake actions that violate Indiana law. A81–A84 ¶¶ 19–25. Planned Parenthood responds that the term "employees and agents" is broad enough to encompass physicians. Resp. Br. 16–17. But the term does not necessarily encompass them—a point underscored by Planned Parenthood's declaration. That declaration explains that, at the time Planned Parenthood was still providing abortions in Indiana, "staff other than a physician" would handle a minor's "initial visit," A77–A78 ¶ 7, and "[g]enerally, the physicians who perform abortions for [Planned Parenthood] do not see the patient until the time of the abortion," *id.* at 3 (¶ 9). The declaration itself thus belies the suggestion that "staff" always includes "physicians" or that any physicians were "in a position" to provide minors lacking the consent needed to obtain abortions in Indiana with information about how to circumvent Indiana's requirements, *Hays v. City of Urbana*, 104 F.3d 102, 103–04 (7th Cir. 1997).

More important, Planned Parenthood's description of how it operated when it still performed abortions in Indiana sheds no light on how it operates *now*. Between when summary judgment was briefed and final judgment was entered, Planned

Parenthood lost the ability to perform abortions in Indiana. That event has had significant consequences. For example, Planned Parenthood itself concedes that non-physician staff no longer conduct "initial visit[s]" in Indiana with minors who might be seeking abortions. *See* Resp. Br. 19. Planned Parenthood asks this Court to infer from this concession that physicians are now more likely to take actions that would violate Indiana's aid-or-assist statute. But "[s]tanding is not 'an ingenious academic exercise in the conceivable'"; it requires a "factual showing of perceptible harm." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 566 (1992). The problem for Planned Parenthood is that no evidence addresses what physicians are doing now.

Lacking concrete facts, Planned Parenthood accuses the State of going back on some "shared understanding" of how it operates. Resp. Br. 16–17. But the lines that Planned Parenthood plucks from briefs filed as far back as 2017 are describing the evidence as it was when Planned Parenthood was still performing abortions in Indiana. None address how things changed after Planned Parenthood lost the ability to perform Indiana abortions. That is why the State encouraged the district court to withhold judgment when the prospect arose that Planned Parenthood might lose the ability to perform abortions in Indiana. Dkt. 89 at 2. In all events, courts "have an independent obligation to determine whether subject-matter jurisdiction exists," *Word Seed Church v. Village of Hazel Crest*, 111 F.4th 814, 819 (7th Cir. 2024)—an issue that "can never be waived or forfeited." *Gonzalez v. Thaler*, 565 U.S. 134, 141 (2012). Thus, when "the passage of time has resulted in changed facts and circumstances," at the very least a court should "remand for a determination of

standing." *Keep Chicago Livable v. City of Chicago*, 913 F.3d 618, 623, 626 (7th Cir. 2019).

Planned Parenthood alternatively argues that, even if physicians at its facilities are no longer in a position to violate the aid-or-assist statute themselves, they could be held liable for the actions of any staff member. Resp. Br. 19. That argument only raises more questions. True, physicians are "responsible for the conduct of each and every person" they employ and "for every action or failure to act by said employee" in the course of the employment relationship. 844 Ind. Admin. Code 5-2-12 (2024). But the record does not speak to how Planned Parenthood uses physicians in Indiana now that it no longer performs abortions or how those physicians interact with staff. The Court can only guess at which physicians might still be on staff, which non-physicians are acting under the direction of physicians, and how personnel interact with unemancipated minors who might be seeking abortions. Planned Parenthood's generic statements of intention, Resp. Br. 18, are no substitute for evidence. In the same way, the district court had no evidence as to whether Planned Parenthood's harms are redressable. No one has established how Planned Parenthood's staff would react to an injunction against only the State, when private parties can still bring civil claims for any non-consensual out-of-state referral for a minor.

## II. The First Amendment Does Not Protect Planned Parenthood's Intentional Efforts to Facilitate Violations of Indiana Law

Even if a live controversy existed, there is no First Amendment problem here. Indiana's law regulates conduct, not speech. It proscribes any action that aids or

assists a minor in procuring a secret abortion without the necessary consent—as part of Indiana's broader scheme requiring parental consent for medical procedures and regulating abortion specifically. The mere fact that Planned Parenthood might use words in violating the statute does not transmute a regulation of conduct into one of speech—a point this Court recently made in *K.C. v. Individual Members of Medical Licensing Board of Indiana*, 121 F.4th 604, 628–31 (7th Cir. 2024). And to the extent the statute regulates speech at all, "it stretches no further than speech integral to unlawful conduct." *United States v. Hansen*, 599 U.S. 762, 783 (2023).

### A. The challenged statute regulates conduct

Planned Parenthood concedes that the challenged statute "reaches a wide variety of non-speech conduct." Resp. Br. 25. That's because the challenged statute does not mention speech; rather, it regulates conduct alone. It prohibits *any* effort to "knowingly or intentionally aid or assist an unemancipated pregnant minor in obtaining an abortion without the consent required." Ind. Code § 16-34-2-4.2(c). The mere fact that the statute can implicate speech does not distinguish it from other laws that regulate conduct, such as anti-discrimination regulations that require "an employer to take down a sign reading 'White Applicants Only,'" or equal-access requirements that compel schools to send emails for military recruiters. *Rumsfeld v. Forum for Acad. & Inst'l Rts., Inc.*, 547 U.S. 47, 60–62, 70 (2006).

Planned Parenthood protests that Indiana's law is "different in kind" from anti-discrimination or equal-access laws because it "prohibits Planned Parenthood from disseminating its own message." Resp. Br. 28 n.10. To begin with, even the district court did not always think it was clear whether Planned Parenthood's

referrals convey a message, because referrals are "generic, non-medical information that does not involve professional judgment." A43. And the same protest could be lodged against an anti-discrimination regulation that requires an employer to take down a sign reading "White Applicants Only"—a statement that certainly qualifies as a "message." *See Rumsfeld*, 547 U.S. at 62. Nor does the law prevent Planned Parenthood from disseminating its own message about abortion. Planned Parenthood is "free . . . to express whatever views [it] may have on" abortion or on Indiana laws regulating it. Resp. Br. 28 n.10. It is *only* where its conduct aids or assists an unemancipated pregnant minor in evading consent requirements that Planned Parenthood runs afoul of the statute. Ind. Code § 16-34-2-4.2(c). Indiana's law is concerned with what people do, not what they say.

This Court's recent decision in *K.C. v. Individual Members of Medical Licensing Board of Indiana*, 121 F.4th 604 (7th Cir. 2024), forecloses Planned Parenthood's argument. There, this Court rejected a First Amendment challenge to a substantially similar Indiana statute that prohibits a "physician or other practitioner" from "aid[ing] or abet[ting] another . . . in the provision of gender transition procedures to a minor." Ind. Code § 25-1-22-13(b). Although the Court recognized that someone might violate the statute using words—for example, a physician might refer a minor to a practitioner in another State for a gender-transition procedure legal in that other State—the Court observed that the statute itself "does not address speech at all." *K.C.*, 121 F.4th at 630. The statute "says

physicians must avoid some *action*, not that they must avoid some *language*." *Id.* The same is true here.

Planned Parenthood argues *K.C.* is inapposite because "the Court appears to have treated the plaintiffs in that case as having mounted an overbreadth challenge" rather than an "as-applied challenge." Resp. Br. 28–29. That is incorrect. In *K.C.*, the Court understood that the plaintiffs raised an "as applied" challenge. 121 F.4th at 628–29. It simply disagreed that a facially neutral regulation of conduct becomes a speech regulation based on how it might be "applied." *Id.* at 629–30. Nor can *K.C.* be dismissed because the challengers there brought a broader as-applied challenge than the challengers here. *Contra* Resp. Br. 29–30. In *K.C.*, this Court explained that it was considering situations such as "when an Indiana physician aids and abets a physician licensed in both Indiana and Illinois providing gender transition services in Illinois." *See* 121 F.4th at 631. In other words, *K.C.* understood that its analysis regarding whether the statute regulated speech or conduct could apply to out-of-state referrals. *Id.*

Like the plaintiffs in *K.C.*, Planned Parenthood argues that *Holder v. Humanitarian Law Project*, 561 U.S. 1 (2010), means that Indiana's law regulates speech. But also like the plaintiffs in *K.C.*, Planned Parenthood ignores that *Holder* concerned a statute that regulated speech on its face. *See, e.g.*, 18 U.S.C. § 2339A(b) (defining "training" as "instruction or teaching"). By contrast, Indiana's statute does not mention speech. Actions violate the statute based on whether they aid or assist a

child in evading consent requirements before an abortion, regardless of what words are used (if any at all).

Planned Parenthood's other cases do not help it. Resp. Br. 26. Even if this Court wanted to rely instead on the Ninth Circuit's decision in *Planned Parenthood Great Northwest, Hawaii, Alaska, Indiana, Kentucky v. Labrador*, 122 F.4th 825 (9th Cir. 2024), while ignoring *K.C.*, "[o]ne panel may not overrule another without circulating the decision to the full court under Circuit Rule 40(f)." *Nat'l Cycle, Inc. v. Savoy Reinsurance Co.*, 938 F.2d 61, 64 (7th Cir. 1991). In any event, the First Amendment issue in *Labrador* was not even briefed by the parties; the only dispute was about jurisdiction. 122 F.4th at 843. Indeed, one judge on the panel declined to join the majority's discussion of the merits, because it was not "presented by the parties," had "not been briefed," and was "unnecessary to the resolution of this appeal." *Id.* at 845 (Miller, J., concurring in part and concurring in judgment). Dicta on an issue not presented by the parties cannot control this Court's decision. *See United States v. Sineneng-Smith*, 590 U.S. 371, 379–80 (2020).

Planned Parenthood's interpretation of *National Institute of Family & Life Advocates v. Becerra*, 585 U.S. 755 (2018), is similarly unpersuasive. The law in that case plainly "compell[ed] individuals to speak a particular message," through a "government-drafted script about the availability of state-sponsored services" including "abortion—the very practice that petitioners are devoted to opposing." *Id.* at 766. So, on its face, the law facially regulated speech, unlike Indiana's law, which regulates conduct. Further, because petitioners were required "to inform women how

they can obtain state-subsidized abortions" while "try[ing] to dissuade women from choosing that option," the required notice "plainly alter[ed]" the petitioner's speech. *Id.* (quotation omitted). But here, it is not clear how this limitation on evading consent laws alters Planned Parenthood's speech. Further, even if Planned Parenthood were correct, Indiana's law does not limit "[t]he dissemination of information about available medical services." Resp. Br. 26. It limits "knowingly or intentionally" aiding and abetting a minor in circumventing Indiana's parental consent law. Ind. Code § 16-34-2-4.2(c). As explained above (at 7)*,* Planned Parenthood is still free to share any message it wishes regarding parental consent laws generally or abortion laws in other states.

**B. Any regulated speech is integral to unlawful conduct**

To the extent that speech is regulated by the aid-or-assist statute, the speech is unprotected because it is "integral to unlawful conduct." *Hansen*, 599 U.S. at 783 (citing *Giboney v. Empire Store & Ice Co.*, 336 U.S. 490, 502 (1949)). The challenged statute prohibits only efforts intentionally calculated to help minors obtain abortions without the parental or judicial consent required by Indiana law. *See* Ind. Code § 16-34-2-4.2(c). The statute is therefore identical in all ways relevant for First Amendment analysis to the aiding-and-abetting statute challenged in *K.C.*, 121 F.4th at 629. And this Court held there that the law only regulated "speech integral to criminal or unlawful conduct." *Id.* Most importantly, *K.C.* rejected Planned Parenthood's same arguments that "*Hansen* and *Giboney* do not govern" because "an out-of-state-referral to a state permitting gender transition procedures would not be 'integral to unlawful conduct.'" *Id.* at 630. This Court disagreed: the law in *K.C.*

"permissibly reache[d] assisting out-of-state providers," because "the state must be able to preclude its physicians from using their authority to help the state's citizens" gain access to "validly regulate[d] treatment." *Id.* at 630–31. Otherwise, "physicians would hold a veto over the state's power to protect its citizens." *Id.*

Planned Parenthood's principal response is to argue that its speech is not intended to bring about any unlawful act because the abortions it wishes to facilitate are legal. Resp. Br. 30–31. But that misses the point of the statute. The unlawful act, and the "unlawful conduct" that Planned Parenthood's speech is integral to, *Hansen*, 599 U.S. at 783, is the evasion of Indiana's consent requirements. Any speech incidentally included cannot be separated from the underlying conduct that Indiana is regulating: actions calculated to aid minors in obtaining abortions without required consent. *See K.C.*, 121 F.4th at 629–30. This, therefore, is not a situation in which the government relies on a regulation directed at speech to justify its regulation of speech. Planned Parenthood's speech is not both "speech and the criminal conduct to which that speech is integral." *Contra* Resp. Br. 30. To the contrary, just as in *Hansen*, 599 U.S. at 762, and *Giboney*, 336 U.S. at 502, this case concerns the application of a generally applicable regulation of conduct to "[s]peech intended to bring about" that "unlawful act." *Hansen*, 599 U.S. at 783. If Planned Parenthood does not think the consent statute can be violated by its actions, that is an argument that the law does not apply—not that it violates the First Amendment.

This is also why Planned Parenthood's citation to *K.C.*'s analysis fails. Resp. Br. 33. If plaintiffs in that case believed they had not violated the law because they

had not committed the underlying violation (performing certain gender-transition procedures on minors), "the defendant's first course of action would not be a federal constitutional challenge—it would be to move for dismissal of the lawsuit." 121 F.4th at 629. *K.C.* interpreted the aiding-and-abetting law at issue to apply only to principal violations of that law regulating cross-sex hormones and operations for minors. 121 F.4th at 628–29. So too here—the law only applies when a practitioner violates the underlying law regarding evasion of parental consent.

Neither *Bigelow v. Virginia*, 421 U.S. 809 (1975), nor *United States v. Stevens*, 559 U.S. 460 (2010), suggest otherwise. Resp. Br. 34–35. *Bigelow*—a case the district court never mentioned—involved regulations related to publications, which everyone agreed was protected speech. 421 U.S. at 819. And *Stevens*, 559 U.S. at 472, addressed an overbreadth challenge to a law criminalizing speech: "depictions" of "animal cruelty." As Planned Parenthood stresses, however, it has not brought an overbreadth claim. Resp. Br. 28. Instead, Planned Parenthood seeks to prevent Indiana from regulating efforts to aid minors in obtaining abortions without required consent, "merely because the conduct" is "carried out by means of language." *Giboney*, 336 U.S. at 502. The First Amendment does not require the government to enact laws twice over just because speech happens to be "picked up" in enforcement of laws limiting conduct. *K.C.*, 121 F.4th at 630.

At most, the statute regulates conduct with both "'speech' and 'nonspeech elements.'" *United States v. O'Brien*, 391 U.S. 367, 376 (1968). Thus, it should only be subject to intermediate scrutiny, which it satisfies. *See* pp. 22–23, *infra*.

## III. Indiana's Prohibition on Intentionally Aiding or Assisting Minors with Avoiding Consent Requirements Survives Any Level of Scrutiny

Indiana's statute survives any level of scrutiny. The statute promotes compelling interests by safeguarding parental rights, familial relations, and children's wellbeing, *see Hodgson v. Minnesota*, 497 U.S. 417, 445 (1990), and is narrowly tailored. Planned Parenthood's efforts to deny that the statute advances any compelling interest amounts to disagreement with precedent recognizing that parents have a critical role in making important decisions affecting their children, including decisions about abortion. And Planned Parenthood cannot identify any narrower statute that would just as effectively protect Indiana's compelling interests.

### A. The aid-or-assist statute advances compelling government interests

Planned Parenthood cannot deny that States have compelling reasons to involve a child's parents or guardians in making important decisions. The law entrusts parents with "making life's difficult decisions" for their children. *Parham v. J.R.*, 442 U.S. 584, 602 (1979). And the Constitution protects the "relationship between parent and child." *Quillion v. Walcott*, 434 U.S. 246, 255 (1978). Thus, even during the era in which the Supreme Court treated abortion as constitutionally protected—a status abortion no longer enjoys—the Court permitted States to "require parental involvement" in decisions by minors about abortion. *Ayotte v. Planned Parenthood of N. New England*, 546 U.S. 320, 326 (2006). And in the same way that Indiana has compelling reasons to involve a minor's parents in decisions about abortion, Indiana has compelling reasons to prevent Planned Parenthood and others from helping minors obtain abortions without parental involvement.

Planned Parenthood's efforts to gainsay Indiana's interests lack merit. First, Planned Parenthood argues that there is no "state interest 'in shielding . . . citizens from information about activities" in another State. Resp. Br. 37, 39. But there are limited circumstances in which the law can prohibit the dissemination of information—for example, speech acts undertaken "with specific, if not criminal, intent." *Rice v. Paladin Enters., Inc.*, 128 F.3d 233, 248 (4th Cir. 1997). And Indiana's law is so cabined. The statute prohibits knowing or intentional efforts to help unemancipated minors obtain abortions without the parental or judicial consents required under Indiana law. Ind. Code § 16-34-2-4.2(c). Nothing prevents Planned Parenthood from telling minors that it thinks abortion is beneficial or that other States have better abortion laws. The law targets only the conduct that most directly implicates Indiana's interests—conduct specifically calculated to help minors obtain an abortion without any prior parental notice or a parent's consent.

*Bigelow* is not to the contrary. The First Amendment analysis in that case—which concerned the dissemination of information to adults—turned on the reality that the advertisement at issue "did more than simply propose a commercial transaction" but shared "factual material of clear 'public interest.'" 421 U.S. at 821. The law here does not prevent Planned Parenthood from sharing information of public interest with adults entitled to make decisions for themselves. It regulates interactions with minors, prohibiting intentional efforts to help unemancipated minors obtain abortions without the involvement of their parents—the people who have legal responsibility to make important decisions for their children. Whatever

States' power where adults are concerned, States have greater leeway to protect children's wellbeing. *See Prince v. Massachusetts*, 321 U.S. 158, 168 (1944).

Relatedly, by ensuring Indiana parents have the opportunity to be involved in a potentially life-changing decision affecting their children, Indiana is not seeking to "acquire power or supervision over the internal affairs of another State." Resp. Br. 38 (quoting *Bigelow*, 421 U.S. at 824). The challenged statute regulates conduct only within Indiana, protecting the relationship of Indiana parents with their children. And the statute reaches only knowing or intentional efforts by Planned Parenthood and others in Indiana who interfere with that constitutionally protected relationship.

Planned Parenthood also argues that Indiana's law is underinclusive because some amount of the information it wishes to give to unemancipated pregnant minors who lack parental consent is available from other sources. Resp. Br. 40. But, of course, the First Amendment contains no "freestanding 'underinclusiveness limitation.'" *Williams-Yulee v. Florida Bar*, 575 U.S. 433, 449 (2015) (quoting *RAV v. City of St. Paul*, 505 U.S. 377, 387 (1992)). Planned Parenthood's suggestion that Indiana's refusal to regulate the entire Internet and every other avenue of information casts doubt on Indiana's interest is wrong. It conflates information generally available to the public with the State's legitimate concern for information provided directly to an unemancipated minor to help her evade Indiana law. Indiana lawmakers' decision to focus on "their most pressing concern" hardly suggests the law fails to advance a compelling interest. *Id.* And Planned Parenthood ignores that the injunction it seeks

to defend both authorizes Planned Parenthood to share information that cannot be obtained other sources and also sanctions direct referrals.

Next, Planned Parenthood hypothesizes that the challenged statute might fail to advance its interests in some situations. Resp. Br. 41. Planned Parenthood posits it might want to share information with minors who have "obtained parental consent *in general*" for an abortion but do not have the written, notarized consent required under Indiana law. *Id.* There are multiple problems with that objection. First, if a minor has a parent's consent, it is not clear the statute would apply. The statute "does not apply to a person who aids or assists an unemancipated pregnant minor who has obtained or is seeking to obtain" the necessary consent. Ind. Code. § 16-34-2-4.2(a). Second, Planned Parenthood overlooks that there are other state interests demanding that consent be written and notarized—requirements that help to prevent fraud. And third, Planned Parenthood ignores that the injunction it seeks to defend covers much more than the situation in which a physician wishes to give information to a minor who has a parent's support for an abortion. It covers even situations in which the minor's parents would counsel against an abortion.

Similarly, Planned Parenthood claims that the statute is self-defeating because a hypothetical situation could arise in which a minor suffers harm from an abortion in another State because a "cautious" Indiana physician deterred by the statute declined to share medical records. Resp. Br. 42. But the challenged statute does not prohibit the sharing of medical records; it prohibits actions calculated to help unemancipated minors obtain abortions without required consents. And as Supreme

Court precedent establishes, laws involving parents in decisions about abortions generally protect minors' wellbeing. *See, e.g.*, *H.L. v. Matheson*, 450 U.S. 398, 410 (1981); *Ayotte*, 546 U.S. at 326; *Hodgson*, 497 U.S. at 444. Planned Parenthood's speculation about a hypothetical situation that might never arise cannot sustain the current injunction, which covers situations in which cutting out parents would harm the minor.

Finally, statute does not discriminate against certain viewpoints. Viewpoint discrimination occurs "when the specific motivating ideology or the opinion or perspective of the speaker is the rationale for the restriction." *Rosenberger v. Rector & Visitors of Univ. of Va.*, 515 U.S. 819, 829 (1995). But Indiana's law does not prohibit messages based on a speaker's ideology or opinion—it does not mention content at all. It exclusively concerns whether a person is knowingly or intentionally aiding a minor to obtain an abortion without required consent. Just as a prohibition on burning draft cards was not viewpoint discrimination against protesters of the draft, *see United States v. O'Brien*, 391 U.S. 367, 381–82 (1968), preventing aid in evading Indiana's abortion laws is not viewpoint discrimination just because Planned Parenthood supports abortion. Planned Parenthood errs, as the district court did, in presuming that "any examination of speech or expression inherently triggers heightened First Amendment concern." *City of Austin v. Reagan Nat'l Advert. of Austin, LLC*, 596 U.S. 61, 73 (2022).

### B. The law is narrowly tailored

The aid-or-assist statute is also narrowly tailored to advance Indiana's compelling interests. Narrow tailoring requires a court to "ask whether there are

other reasonable ways to achieve the goals with a lesser burden on constitutionally protected activity." *Doe v. City of Lafayette*, 377 F.3d 757, 773 (7th Cir. 2004) (cleaned up). There is no less restrictive way for Indiana to just as effectively pursue its interests in safeguarding the parent-child relationship and minors' well-being without prohibiting knowing and intentional efforts to circumvent Indiana's requirement of parental or judicial consent. Tellingly, neither Planned Parenthood nor the district court have offered any such alternative.

Planned Parenthood claims that the aid-or-assist statute is "overinclusive insofar as it applies even when a minor's parent consents to an out-of-state abortion." Resp. Br. 43. Once again, Planned Parenthood seems to misapprehend the law. If a minor "has obtained or is seeking to obtain" parental consent or a judicial waiver, then the statute does not apply. Ind. Code § 16-34-2-4.2(c). Planned Parenthood does not think that can be "squared" with the statute's language because it prohibits aid and assistance "without the specific 'consent required by [Indiana Code § 16-34-2-4].'" Resp. Br. 44. But § 16-34-2-4.2(b) explains that "[t]his section does not apply to a person who aids or assists an unemancipated pregnant minor who has obtained *or is seeking to obtain*" the necessary consent or waiver (emphasis added). And of course Planned Parenthood would only incur liability for knowing or intentional misconduct.

Regardless, Planned Parenthood's concern for minors who have their parents' support for an abortion cannot sustain the injunction. The injunction is not limited to situations in which minors are trying to get abortions with their parents' help. Planned Parenthood argues the Court should tolerate an overbroad injunction

because it would be "practically unworkable" to limit it. Resp. Br. 45. As the party seeking pre-enforcement relief, however, Planned Parenthood has the obligation to demonstrate its entitlement to all relief in the permanent injunction before a court may grant such relief. *Accord eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006). And its rhetorical question—"how is Planned Parenthood or the Medical Licensing Board to know of the minor's conversation with her parents, and what degree of involvement constitutes consultation," Resp. Br. 45—perfectly encapsulates why the statute's specific proof requirements for consent are necessary. Indiana assures itself that a minor has the consent of her parents because there are clear demarcations to establish that consent.

More broadly, Planned Parenthood's complaints illustrate a fundamental problem with the injunction. Planned Parenthood characterizes its claim as an "as-applied challenge." Resp. Br. 29. But the injunction does not enjoin the statute's application to a specific set of facts. It sweeps "more broadly," *John Doe No. 1 v. Reed*, 561 U.S. 186, 194 (2010), enjoining the statute's application to a vast range of potential interactions that Planned Parenthood may have with pregnant minors. It applies equally to interactions with a 17 ½ year-old with her parents' consent as to interactions with a 12-year-old who walks into a clinic without her parents' knowledge. To obtain that kind of sweeping relief, Planned Parenthood must meet the standard for a facial challenge. *See id.* But it does not attempt to show the statute's potential unconstitutional applications are "substantial . . . judged in

relation" to its "plainly legitimate sweep." *Moody v. NetChoice, LLC*, 144 S. Ct. 2383, 2397 (2024).

Next, Planned Parenthood argues that the statute is overinclusive when it could apply to a minor that is mature enough to make the abortion decision. Resp. Br. 46. But Planned Parenthood does not even attempt to defend the district court's mistaken assumption that the State has no interest in aiding parental involvement even in mature minors. *See* Br. 37–38; *Bellotti v. Baird*, 443 U.S. 622, 643 n.23 (1979) ("[T]he fact that a minor may be very much an adult in some respects does not mean that his or her need and opportunity for growth under parental guidance and discipline have ended."). Nor does Planned Parenthood explain why its concern for "mature" minors justifies an injunction that covers immature minors too. To obtain relief that extends beyond a specific factual situation, Planned Parenthood must meet the standard for a facial challenge. *See John Doe*, 561 U.S. at 194. It cannot.

Besides, Indiana law offers minors an opportunity to demonstrate on a case-by-case basis that they are mature enough to obtain an abortion without a parent's consent or, in some circumstances, a parent's involvement. A minor may go before a judge—with no filing fee, free counsel available, an extremely fast decision timeline, and an expedited appeal if she so chooses—and receive a judicial determination that she is mature enough to make the decision for herself. Ind. Code § 16-34-2-4(f)–(j). Planned Parenthood argues that a minor who intends to seek an abortion out-of-state cannot avail herself of this procedure because a court case must be filed "in the county in which the pregnant minor resides or in which the abortion will be performed."

Resp. Br. 47 (quoting Ind. Code § 16-34-2-4(c)). But that ignores the statute says "or": the action can be filed where the abortion is performed or where the minor "resides."

Although the injunction reaches more broadly than the hypothetical concerns Planned Parenthood raises, Planned Parenthood argues the Court should disregard the mismatch on "waive[r]" grounds. Resp. Br. 45. But Indiana could not have argued that the district court's injunctive relief reached too far "before the judge acted" to enter it. *Hamer v. Neighborhood Hous. Servs. of Chicago*, 897 F.3d 835, 838 (7th Cir. 2018). Nor did Indiana have an obligation to raise the issue "with [the] judge after an order has been entered." *Id.* In any event, the injunction provides facial relief without requiring that Planned Parenthood meet the burden for a disfavored facial challenge. *See John Doe*, 561 U.S. at 194. And "neither parties nor courts can disregard the requisite inquiry" for facial relief. *Moody*, 603 U.S. at 744. So this Court is bound to "vigorously enforce" that standard, *Cntr. for Individual Freedom v. Madigan*, 697 F.3d 464, 477 (7th Cir. 2012) (quoting *United States v. Williams*, 553 U.S. 285, 292 (2008)), independently of the parties.

Planned Parenthood's final attack is that the statute is underinclusive. Planned Parenthood faults Indiana for prohibiting efforts to cut parents out of the decisionmaking process for abortion but not for other types of procedures. Resp. Br. 48. As noted above, the First Amendment imposes no "freestanding 'under inclusiveness limitation.'" *Williams-Yulee*, 575 U.S. at 449. Indiana policymakers can focus on their most "pressing concern." *Id.* Here, there is reason for policymakers to focus on abortion. Not only is abortion an especially "grave decision" with unique

harms and a unique legal history, but *Bellotti*, 443 U.S. at 641, abortion is a controversial issue that elicits responses that few other medical regulations do. Although Planned Parenthood professes a desire to coach minors on how to obtain abortions without their parents' consent, it points to no evidence that persons are helping Indiana children secretly obtain brain surgeries or blood pressure medications without their parents' knowledge or consent.

Planned Parenthood also argues that information about abortion is "already widely available online and elsewhere." Resp. Br. 48. But Indiana's decision not to regulate every conceivable source of information regarding abortion is a feature not a bug. It shows that policymakers focused on their "most pressing concern," *Williams-Yulee*, 575 U.S. at 449—intentional efforts to help minors evade Indiana abortion regulations. "The First Amendment does not put a State to [an] all-or-nothing choice," forcing Indiana to regulate everything related to abortion or nothing. *Id.* at 451. As Planned Parenthood's failure to identify any alternative to the challenged statute illustrates, the statute is narrowly tailored to advance compelling interests.

### C. The law survives intermediate scrutiny as well

Regardless, because the aid-or-assist statute regulates conduct, not speech, it should at most be subject to intermediate scrutiny. *See O'Brien*, 391 U.S. at 376–77; *Turner Broad. Sys., Inc. v. FCC*, 512 U.S. 622, 643–44 (1994). Thus, it must "further[] an important or substantial governmental interest," "be unrelated to the suppression of free expression," and must not "burden substantially more speech than is necessary." *Turner Broad. Sys., Inc.*, 512 U.S. at 662 (quoting *Ward v. Rock Against Racism*, 491 U.S. 781, 799 (1989)). Indiana has compelling interests in safeguarding

the parent-child relationship and promoting the welfare of minors. And it has tailored its law to apply to no more activity than necessary, bolstered by its broad provisions lifting restrictions in the case of mature or parentally supported minors.

Planned Parenthood's two objections are easily dispatched. First, Planned Parenthood "question[s]" whether the challenged statute is "unrelated to the suppression of free expression" because it does not cover forms of medical care other than abortion. Resp. Br. 50. But that argument ignores the unique issues that abortion raises. It also ignores that a content-neutral statute does not become content-based simply because it requires some "examination of speech." *City of Austin*, 596 U.S. at 74. Second, Planned Parenthood repeats its arguments that the statute is more restrictive than necessary. Resp. Br. 50. That argument fails for the reasons above. Indeed, Planned Parenthood's complaints that the statute does not cover every source of information about abortion highlights its narrowness.

## CONCLUSION

The district court's judgement should be reversed.

Respectfully submitted,

THEODORE E. ROKITA
Attorney General

s/ James A. Barta
JAMES A. BARTA
Solicitor General

JENNA M. LORENCE
Deputy Solicitor General

JOHN M. VASTAG
Deputy Attorney General

Office of the Attorney General
302 W. Washington Street
IGSC-Fifth Floor
Indianapolis, IN 46204
(317) 232-0709
James.Barta@atg.in.gov

**CERTIFICATE OF COMPLIANCE**

1. This document complies with the type-volume limitation of Circuit Rule 32(c) because this document contains 6,074 words, excluding the parts exempted by Fed. R. App. P. 32(f).

2. This document complies with the typeface requirements of Circuit Rule 32(b) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word in Century Schoolbook 12-point font.

January 28, 2025

/s/ James A. Barta
James A. Barta

**CERTIFICATE OF SERVICE**

I hereby certify that on January 28, 2025, I electronically filed the foregoing document with the Clerk of the Court for the United States Court of Appeals for the Seventh Circuit using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

January 28, 2025

/s/ James A. Barta
James A. Barta