No. 24-2219

**IN THE**
**UNITED STATES COURT OF APPEALS**
**FOR THE SEVENTH CIRCUIT**

---

PLANNED PARENTHOOD GREAT NORTHWEST, HAWAI'I, ALASKA, INDIANA, KENTUCKY, INC.,

*Plaintiff-Appellee,*

v.

COMMISSIONER, INDIANA STATE DEPARTMENT OF HEALTH, et al.,

*Defendants-Appellants.*

---

On Appeal from the United States District Court for the Southern District of Indiana, No. 1:17-cv-01636-SEB-CSW, The Honorable Sarah Evans Barker, Judge

---

# APPELLANTS' PETITION FOR REHEARING EN BANC OF THE PANEL DECISION AFFIRMING THE PERMANENT INJUNCTION

---


THEODORE E. ROKITA
Attorney General of Indiana

JAMES A. BARTA
Solicitor General

JOHN P. LOWREY
Deputy Solicitor General

LAUREN R. LABAUMBARD
Deputy Attorney General

Office of the Attorney General
IGC South, Fifth Floor
302 W. Washington Street
Indianapolis, IN 46204
(317) 232-0709
James.Barta@atg.in.gov

*Counsel for Appellants*

## RULE 40 STATEMENT

A. The panel's application of strict scrutiny, and approach to it, conflicts with *Chiles v. Salazar*, 607 U.S. 627 (2026), *Williams-Yulee v. Florida Bar*, 575 U.S. 433 (2015), *John Doe No. 1 v. Reed*, 561 U.S. 186 (2010), *K.C. v. Individual Members of Medical Licensing Board of Indiana*, 121 F.4th 604 (7th Cir. 2024), and *Brandt by and through Brandt v. Griffin*, 147 F.4th 867 (8th Cir. 2025).

B. The panel decision also decides an important question—whether States have a compelling interest in involving a child's parents in all stages of a medical decision—that conflicts with decisions that include *Ayotte v. Planned Parenthood of Northern New England*, 546 U.S. 320 (2006), *Troxel v. Granville*, 537 U.S. 57 (2000), and *H.L. v. Matheson*, 450 U.S. 398, 410 (1981).

## TABLE OF CONTENTS


RULE 40 STATEMENT .......... i

TABLE OF AUTHORITIES .......... iii

INTRODUCTION .......... 1

BACKGROUND .......... 2

ARGUMENT .......... 4

I. Under Supreme Court and Circuit Precedent, Intermediate—Not Strict—Scrutiny Applies .......... 4

II. In Applying Strict Scrutiny, the Panel Disregarded Supreme Court Precedent Establishing the Importance of Parental Involvement .......... 8

III. The Panel's Narrow Tailoring Analysis Is Fundamentally Flawed .......... 11

CONCLUSION .......... 15

## TABLE OF AUTHORITIES

**CASES**

*Ayotte v. Planned Parenthood of Northern New England*,
546 U.S. 320 (2006) .......... 8

*Bellotti v. Baird*,
443 U.S. 622 (1979) .......... 9, 14

*Bigelow v. Virginia*,
421 U.S. 809 (1975) .......... 10, 11

*Brandt by and through Brandt v. Griffin*,
147 F.4th 867 (8th Cir. 2025) .......... 7

*Chiles v. Salazar*,
607 U.S. 627 (2026) .......... 4, 5, 6

*Copeland v. Vance*,
893 F.3d 101 (2d Cir. 2018) .......... 11

*Doe v. Rokita*,
54 F.4th 518 (7th Cir. 2022) .......... 13

*Free Speech Coal., Inc. v. Paxton*,
606 U.S. 461 (2025) .......... 4, 6

*H.L. v. Matheson*,
450 U.S. 398 (1981) .......... 9, 10

*Hodgson v. Minnesota*,
497 U.S. 417 (1990) .......... 8

*Holder v. Humanitarian Law Project*,
561 U.S. 1 (2010) .......... 6

*John Doe No. 1 v. Reed*,
561 U.S. 186 (2010) .......... 11, 12, 13

*K.C. v. Individual Members of Medical Licensing Board of Indiana*,
121 F.4th 604 (7th Cir. 2024) .......... *passim*

*Lockett v. Planned Parenthood of Ind., Inc.*,
42 N.E.3d 119 (Ind. Ct. App. 2015) .......... 2, 14

**CASES [CONT'D]**

*Matsumoto v. Labrador*,
122 F.4th 787 (9th Cir. 2024) ........................................ 15

*Rumsfeld v. F. for Acad. & Institutional Rts., Inc.*,
547 U.S. 47 (2006) ........................................ 5

*Troxel v. Granville*,
530 U.S. 57 (2000) ........................................ 2, 8

*United States v. Hansen*,
599 U.S. 762 (2023) ........................................ 5

*Ward v. Rock Against Racism*,
491 U.S. 781 (1989) ........................................ 12, 13

*Welty v. Dunaway*,
No. 25-5738, 2026 WL 2874671 (6th Cir. Sept. 24, 2026) .............. 10, 15

*Williams-Yulee v. Florida Bar*,
575 U.S. 433 (2015) ........................................ 14

**STATUTES AND LEGISLATION**

Ind. Code § 16-34-2-4 ........................................ 2, 4, 5, 13

Ind. Code § 16-34-2-4(b) ........................................ 2

Ind. Code § 16-34-2-4(f) ........................................ 12

Ind. Code § 16-34-2-4.2(b) ........................................ 2, 5

Ind. Code § 16-34-2-4.2(c) ........................................ *passim*

Ind. Code § 16-34-2-4.2(c)-(d) ........................................ 2

Ind. Code § 16-36-1-3 ........................................ 2

Ind. Code § 16-36-1-5(b) ........................................ 2

Ind. Code § 16-36-7-41 ........................................ 13

Ind. Code § 33-42-14-1 ........................................ 13

Ind. Code § 33-42-17-2(a)-(b) ........................................ 13

Ind. Code § 33-42-17-3 ........................................ 13

**STATUTES AND LEGISLATION [CONT'D]**

Youth Health and Safety Act, 2021 Ill. Legis. Serv. P.A. 102-685 (June 1, 2022) ........ 15

**OTHER AUTHORITIES**

*Notary Locator*, Am. Ass'n of Notaries, https://www.notarypublicstamps.com/find-a-notary ........ 13

*What is a Notary Public?*, Nat'l Notary Ass'n, https://www.nationalnotary.org/knowledge-center/about-notaries/what-is-a-notary-public ........ 13

## INTRODUCTION

This case concerns an important issue: whether and to what extent Indiana can protect parents' ability to guide children facing decisions about whether to end pregnancies.

Indiana generally requires parents to consent to a minor child's abortion and, to ensure that requirement is effective, prohibits intentionally aiding or assisting minors in obtaining abortions without parental consent. A divided panel held that Planned Parenthood has a First Amendment right to help minors circumvent Indiana's consent requirement by supplying minors with information about out-of-state abortion providers, making referrals to those providers, and booking appointments for minors. That decision, however, departs from bedrock principles.

In holding that Indiana's law fails to advance a compelling interest, the majority disregarded Supreme Court precedent establishing that Indiana has an "interest in keeping parents involved in every stage of a minor's decision about whether to get an abortion." Op. 47 (Scudder, J., concurring). And it reached a result "impossible" to square with *K.C. v. Individual Members of Medical Licensing Board of Indiana*, 121 F.4th 604 (7th Cir. 2024), which upheld an Indiana law limiting what "physicians may tell minor patients about the availability of gender transition procedures in other states." Op. 50 (Scudder, J., concurring).

The majority then erred again in examining the specifics of Planned Parenthood's challenge. It invoked concerns about how Indiana's law might be applied to atypical, hypothetical situations—such as situations in which a minor might

have an abusive parent—to hold that Indiana cannot enforce its law even where Planned Parenthood's sole motive is to veto the decision of fit parents.

This Court should grant rehearing to ensure that Indiana can protect the "right" and "high duty" of parents to care for their children. *Troxel v. Granville*, 530 U.S. 57, 65 (2000) (plurality op.).

## BACKGROUND

Generally, a medical provider cannot provide services to minors in Indiana without the consent of the minor's parent or guardian. *See* Ind. Code §§ 16-36-1-3, 16-36-1-5(b). Abortion is no exception: To perform an abortion on a minor, a provider needs a parent's or guardian's consent or a valid waiver of consent. § 16-34-2-4.

In 2017, after a girl obtained an abortion from Planned Parenthood without her mother's knowledge by using a friend's ID and having a boyfriend's mother pose as her mother, *see Lockett v. Planned Parenthood of Ind., Inc.*, 42 N.E.3d 119, 124–25 (Ind. Ct. App. 2015), Indiana strengthened its parental-consent requirements with S.E.A. 404. S.E.A. 404 requires abortion providers to see an ID, to have some basis for believing the adult is the minor's parent, and to obtain a notarized written consent. Ind. Code § 16-34-2-4(b). S.E.A. 404 also imposes civil liability on those who "knowingly or intentionally aid or assist an unemancipated pregnant minor in obtaining an abortion without the consent required." § 16-34-2-4.2(c)-(d). It does not violate the statute to help a minor obtain the required consent. § 16-34-2-4.2(b).

Planned Parenthood challenged S.E.A. 404. Dkt. 1. Relevant here, it argued that the First Amendment protects Planned Parenthood's efforts to aid and assist minors with obtaining abortions without a valid parental or judicial consent by

disseminating information about out-of-state abortion providers, providing referrals to them, and contacting them. SA5-SA6. The district court agreed, and enjoined enforcement of S.E.A. 404 insofar as it would prevent Planned Parenthood from "disseminating to minors information regarding legal abortion practices and abortion care providers in [other] states" and "providing referrals to and contacting out-of-state abortion providers on behalf of their minor patients." SA22.

A divided panel affirmed. Op. 2. The majority held that Indiana's "aid-or-assist law amounts to a content-based and viewpoint-based restriction on speech," reasoning it "prohibits speech of the view that an unemancipated minor would benefit . . . from the information or referrals." Op. 19, 31. Applying strict scrutiny, the majority also ruled that Indiana "fail[ed]" to satisfy it. Op. 19. The majority concluded that S.E.A. 404's aid-or-assist provision does not advance compelling state interests, and that the law is "both overinclusive and underinclusive." Op. 36-40.

Judge Scudder concurred. He argued that Indiana's law advances "the State's interest [] in keeping parents involved in their children's most consequential, life-altering decisions, including at the information-gathering stage"—an interest the Supreme Court "has recognized . . . many times over." Op. 50-51 (Scudder, J., concurring). Judge Scudder also "part[ed] ways with the majority's narrow tailoring analysis," explaining that Indiana's law was overinclusive only because Indiana requires written consents for abortions to be notarized. Op. 51-53 (Scudder, J., concurring).

## ARGUMENT

### I. Under Supreme Court and Circuit Precedent, Intermediate—Not Strict—Scrutiny Applies

To preserve parents' traditional role in their children's care, Indiana prohibits abortion providers from performing abortions on minors without a parent's consent and prohibits "knowingly or intentionally aid[ing] or assist[ing] an unemancipated pregnant minor in obtaining an abortion" without that required consent. Ind. Code §§ 16-34-2-4, 16-34-2-4.2(c). That secondary-liability provision prohibits the full sweep of actions designed to help underage girls obtain abortions in secret—from making appointments for abortions to driving children to those appointments. Yet the panel held the highest level of scrutiny applies because Planned Parenthood knowingly helps minors circumvent Indiana's parental-consent requirement by providing information about out-of-state abortion providers, contacting those providers on minors' behalf, and referring minors to those providers. That holding is wrong and warrants review.

A. As the Supreme Court has explained, "laws regulating conduct in ways that incidentally sweep in speech" are "generally" subject only to intermediate scrutiny. *Chiles v. Salazar*, 607 U.S. 627, 643 (2026). That is true even if a person challenges the law's application to speech: "[A]n ordinance against outdoor fires would not require a court to apply strict scrutiny even if it prohibited burning a flag in protest, because the law forbids conduct without regard to the message it may convey." *Id.* (citation modified); *see Free Speech Coal., Inc. v. Paxton*, 606 U.S. 461, 492 (2025) (intermediate scrutiny applies to age-verification requirements that gate access to

protected material); *Rumsfeld v. F. for Acad. & Institutional Rts., Inc.*, 547 U.S. 47, 62 (2006) (intermediate scrutiny applies to an antidiscrimination law "requir[ing] an employer to take down a sign reading 'White Applicants Only'" and to equal-access regulations that require schools to send emails for military recruiters).

S.E.A. 404 is at most subject to intermediate scrutiny. S.E.A. 404 "does not address speech at all." *K.C. v. Individual Members of Med. Licensing Bd. of Ind.*, 121 F.4th 604, 630 (7th Cir. 2024). Rather, it prohibits providing abortions to minors without parental consent, and its aid-or-assist provision enforces that consent requirement. Ind. Code §§ 16-34-2-4, 16-34-2-4.2(b). Because Planned Parenthood wishes to help minors circumvent Indiana's parental-consent requirement by supplying information and referrals, S.E.A. 404 affects some speech. But any burden is "plainly incidental" to Indiana's decision to require parental consent for minors seeking abortions. *Rumsfeld*, 547 U.S. at 62; *see United States v. Hansen*, 599 U.S. 762, 783 (2023) (explaining that many aiding-and-abetting laws do not trigger *any* scrutiny).

This feature makes S.E.A. 404 fundamentally different from the law in *Chiles*. In *Chiles*, the Supreme Court applied strict scrutiny to a Colorado law that prevented a therapist from expressing "[a]cceptance, support, and understanding" for clients wishing to change their sexual orientation or gender identity while allowing therapists to express acceptance, support, and understanding for clients wishing to explore sexual or gender identities. 607 U.S. at 645 (citation modified). The law, however, did not burden speech to enforce a content-neutral regulation of conduct. Instead,

Colorado "train[ed] directly on the content of [the therapist's] speech and permit[ted] her to express some viewpoints but not others." *Id.* at 650.

Indiana, by contrast, does not burden Planned Parenthood's speech because the State disagrees with the "view" that a "minor would benefit from abortion." Op. 31. It burdens speech only to give effect to its parental-consent requirements. This can be easily seen. Planned Parenthood can give the same information or referrals to two different girls—one whose parents are willing to consent to an abortion and one whose parents have refused consent. Providing a referral for an abortion obtained with parental consent Indiana requires does not trigger liability under S.E.A. 404; going behind the backs of parents who have refused consent will. What "trigger[s]" liability under S.E.A. 404 is not the message's "content," *Holder v. Humanitarian Law Project*, 561 U.S. 1, 27-28 (2010), but the parents' unwillingness to consent to abortion. Any effect on speech is "therefore only incidental to the statute's regulation of activity." *Free Speech Coal.*, 606 U.S. at 483.

B. The majority's decision to apply strict scrutiny conflicts with decisions from this Court and the Eighth Circuit, which have upheld materially similar laws.

In *K.C.*, this Court rejected a First Amendment challenge to an Indiana law that forbids medical providers from both providing gender-transition procedures to minors and aiding or abetting the procedures' provision. 121 F.4th at 630. Medical providers argued that the law violated the First Amendment "as applied" to their efforts to "refer[] patients to other physicians" for gender-transition procedures or "discuss[] where and to what extent gender transition procedures are available." *Id.*

at 628. But this Court upheld the law, rejecting arguments that strict scrutiny applied. The Court explained that Indiana's law "does not address speech at all," but only "burdens speech incidentally because it targets conduct: facilitating the provision of gender transition procedures." *Id.* at 629-30. The same is true here.

The en banc decision in *Brandt by and through Brandt v. Griffin*, 147 F.4th 867 (8th Cir. 2025), reinforces that nothing more than intermediate scrutiny applies. In *Brandt*, a healthcare professional challenged Arkansas's ban on providing gender-transition procedures to minors and referring them out of State. 147 F.4th at 888. She, too, argued the law was a "content based" regulation of speech subject to strict scrutiny. *Id.* But the Eighth Circuit disagreed. "This is not a case," the court explained, "where the only conduct which the State sought to punish was the fact of communication." *Id.* at 890 (citation modified). "Rather," Arkansas "seeks to prohibit the conduct of providing gender transition procedures to minors." *Id.* Thus, "any restriction on speech is plainly incidental to the [State's] regulation of conduct." *Id.* (citation modified).

S.E.A. 404 is indistinguishable from the statutes that *K.C.* and *Brandt* upheld. Even the majority opinion admits that this case and *K.C.* are "similar." Op. 22 n.4. The only difference the panel saw between the cases inheres in the scope of the plaintiffs' challenge: the *K.C.* plaintiffs sought to engage in speech that was "integral to unlawful conduct" whereas Planned Parenthood wishes to facilitate legal abortions. Op. 23 n.4, 27-28. But that does not avoid *K.C.* *K.C.* held that, even if Indiana had done "more than regulate speech integral to unlawful conduct," strict scrutiny would

not apply to the providers' challenge because any burdens on speech were "incidental" to Indiana's regulation of gender-transition procedures. 121 F.4th at 629. En banc review to resolve that conflict is warranted.

## II. In Applying Strict Scrutiny, the Panel Disregarded Supreme Court Precedent Establishing the Importance of Parental Involvement

Even if strict scrutiny applies, the panel erred in applying it. "[M]any times," the Supreme Court has recognized that States have a "compelling interest" in "keeping parents involved in their children's most consequential, life-altering decisions, including at the information-gathering stage." Op. 51 (Scudder, J., concurring). But the majority held that S.E.A. 404's ban on aiding or assisting minors in obtaining abortions without parental consent does not advance any compelling interest, declaring that Indiana has no interest in preventing minors from receiving "factually accurate information" about abortion's availability in other States. Op. 39-40 (majority op.). That rationale squarely conflicts with Supreme Court precedent.

A. The Supreme Court has long recognized the "fundamental right of parents to make decisions concerning the care, custody, and control of their children." *Troxel v. Granville*, 530 U.S. 57, 66 (2000) (plurality op.). Even when the Court recognized a federal right to abortion, the Court repeatedly upheld requirements that promote or "require parental involvement" in decisions by minors about abortion. *Ayotte v. Planned Parenthood of N. New England*, 546 U.S. 320, 326 (2006); *see Hodgson v. Minnesota,* 497 U.S. 417, 444-45 (1990) (the "strong and legitimate interest" that "justifies state-imposed requirements that a minor obtain his or her parent's consent before undergoing an operation, marrying, or entering military service,

extends also to the minor's decision to terminate her pregnancy"); *H.L. v. Matheson*, 450 U.S. 398, 410 (1981) ("parents have an important guiding role to play in the upbringing of their children, which presumptively includes counseling them on important decisions") (citation modified); *Bellotti v. Baird*, 443 U.S. 622, 639 (1979) (recognizing a "special interest" in encouraging minors "to seek the advice of her parents"). Now there is no longer a federal right to abortion, it is "doubly" clear that States have a compelling interest in "keeping parents involved." Op. 51 (Scudder, J., concurring).

Despite the cases upholding parental notification and consent requirements, the majority asserted that "no evidence" shows S.E.A. 404 advances a compelling interest. Op. 38-39. It asserted there is a "significant difference" between a statute that requires notice to a parent about an abortion and a statute that "block[s] access to accurate information about or a referral to an out-of-state provider." Op. 39. That defies logic. By its terms, the aid-or-assist provision applies only if Planned Parenthood "*knowingly or intentionally* aid[s] or assist[s] an unemancipated pregnant minor in obtaining an abortion without the consent required by" Indiana law. Ind. Code § 16-34-2-4.2(c) (emphasis added). Because the aid-or-assist provision prohibits only conduct designed to undermine a valid parental-consent requirement, it necessarily advances the same interests supporting that requirement.

The record bears this out. Planned Parenthood does not merely wish to aid or assist minors who will seek abortions with the knowledge and consent of parents. Planned Parenthood also deems it "critically important" to facilitate abortions for

minors who seek "to avoid any possibility that their parent or guardian will be informed of their attempt to obtain an abortion." A82-83 (Smith Decl. ¶¶ 21-22). Sustaining the majority's rationale would require jettisoning Supreme Court decisions explaining that laws which encourage consultation between a minor and parent "plainly serve[] . . . a significant state interest." *H.L.*, 450 U.S. at 411.

B. Much of the majority's disagreement with S.E.A. 404 stems from the belief that *Bigelow v. Virginia*, 421 U.S. 809 (1975), condemns laws restricting the dissemination of "factually accurate information" to minors. Op. 39-40; *see* Op. 33-36. But *Bigelow*, which concerned a Virginia newspaper advertisement about legal abortions in New York, is far afield from this case. First, when *Bigelow* was decided, Virginia "did not—indeed, could not—prohibit the abortions described by the advertisement." *Welty v. Dunaway*, No. 25-5738, 2026 WL 2874671, at *34 (6th Cir. Sept. 24, 2026) (Sutton, J., dissenting); *see Bigelow*, 421 U.S. at 822 (noting the "constitutional interests" implicated). Abortion enjoys no constitutional protection today.

Second, *Bigelow* concerned an advertisement providing information to a general readership—not targeted messaging to minors that is "inten[ded]" to "aid or assist" them in skirting a lawful parental-consent requirement. Ind. Code § 16-34-2-4.2(c); *see Welty*, 2026 WL 2874671, at *34 (Sutton, J., dissenting). And this case is about more than the dissemination of information; it also concerns referring minors for abortions and booking appointments. Even the district court in this case conceded that those actions are "a step further along the path to the decision to obtain an abortion without parental consent than speech that merely informs." SA16.

Third, "*Bigelow* did not involve minors, nor did the Justices say anything suggesting that the case's principles extend to children." Op. 50 (Scudder, J., concurring). This Court, meanwhile, has rejected a First Amendment challenge to an Indiana law regulating what physicians may tell minors about gender-transition procedures in other States and prohibiting referrals for those procedures. *See K.C.*, 121 F.4th at 628-29. "It is all but impossible to see why Indiana would have less authority when it comes" to minors seeking abortions. Op. 50-51 (Scudder, J. concurring). Rehearing should be granted to resolve the conflict with this Court's and the Supreme Court's decisions recognizing that laws like S.E.A. 404 serve compelling interests.

## III. The Panel's Narrow Tailoring Analysis Is Fundamentally Flawed

The panel erred again in its narrow-tailoring analysis. Where a party asserts a prospective as-applied challenge, it must establish all the applications challenged raise constitutional concerns. *See John Doe No. 1 v. Reed*, 561 U.S. 186, 194, 201 (2010). It cannot invoke a few, "hypothetical situations in which the statute could not be validly applied" to invalidate a "broad" array of other potential applications. *Copeland v. Vance*, 893 F.3d 101, 113 (2d Cir. 2018). But that is what the majority did here. It declared S.E.A. 404's aid-or-assist provision "overinclusive" because it saw no reason to prevent Planned Parenthood from helping some minors, such as minors at risk of "abuse," get abortions without parental consent. Op. 42; *see* Op. 40. But concerns about hypothetical abusive parents provide no basis for holding that S.E.A. 404 is unconstitutional as applied to situations where Planned Parenthood could safely contact a parent but wishes to hide the abortion. That is especially true

given that Indiana law provides a built-in solution for situations in which a parent cannot be located or safely contacted. *See* Ind. Code § 16-34-2-4(f).

The majority also declared S.E.A. 404 "overinclusive" because a minor must "obtain, or 'seek[] to obtain,' consent under Indiana's stringent parental consent requirements" for Planned Parenthood to provide a minor with information or a referral. Op. 40. That is not right: S.E.A. 404's aid-or-assist provision does not require Planned Parenthood to know that a minor has obtained or is seeking to obtain parental consent. What it prohibits is "knowingly or intentionally" aiding or assisting a minor in evading the consent requirements. Ind. Code § 16-34-2-4.2(c). It thus requires no guessing that Planned Parenthood "intentionally" acts "to help minors evade Indiana's parental consent requirements." Op. 43. If Planned Parenthood only wished to help a minor who "tells Planned Parenthood that she will talk to her parents that night about getting their written consent," Op. 42, the law would not apply.

But even if there were something to the majority's concern that S.E.A. 404 might not let Planned Parenthood assist minors whose parents are willing to consent to an abortion or who would seek to obtain abortions in States with equally rigorous parental-consent requirements, that provides no reason for enjoining the statute's application to conduct in its heartland—where Planned Parenthood knows a girl is trying to get an abortion without her parents' knowledge. *See John Doe*, 561 U.S. at 194, 201. Planned Parenthood cannot obtain broad immunity from S.E.A. 404 by cherry-picking examples, *see id.*, or arguing its scope is not always clear, *see Ward v.*

*Rock Against Racism*, 491 U.S. 781, 794 (1989) ("[P]erfect clarity and precise guidance have never been required even of regulations that restrict expressive activity.").

Nor does the requirement that written parental consent be notarized prevent S.E.A. 404's aid-or-assist provision from being narrowly tailored. *Contra* Op. 40, 53 (Scudder, J., concurring). A notary serves as a trained, "impartial witness" for official acts. *What is a Notary Public?*, Nat'l Notary Ass'n, https://www.national-notary.org/knowledge-center/about-notaries/what-is-a-notary-public (last visited Oct. 1, 2026); *see* Ind. Code § 33-42-17-2(a)-(b). Requiring notarization for health-related documents like advance directives, Ind. Code § 16-36-7-41, and consents for abortion, § 16-34-2-4, helps ensure they are not fraudulent. Notarization also is not difficult or expensive. Indiana has hundreds of notaries, many of which will travel, *see Notary Locator*, Am. Ass'n of Notaries, https://www.notarypublicstamps.com/find-a-notary (last visited Oct. 1, 2026), authorizes online notarization, Ind. Code § 33-42-17-3, and caps fees at $10, § 33-42-14-1. Meanwhile, allowing any adult to be a witness would not ensure impartiality.

Regardless, if notarization is the only part of the consent process that seems too stringent, the solution is not to give Planned Parenthood carte blanche to work against Indiana's consent requirements. It is to limit any injunction to situations where written parental consent, though provided, has not been notarized. *See John Doe*, 561 U.S. at 194, 201. "[R]elief should be no greater than necessary to protect the rights of the prevailing litigants." *Doe v. Rokita*, 54 F.4th 518, 519 (7th Cir. 2022).

Alternatively, the majority objected that S.E.A. 404 is "underinclusive" because Indiana has not censored information on abortion from the entire internet. Op. 44. But "the First Amendment imposes no freestanding underinclusiveness limitation." *Williams-Yulee v. Fla. Bar*, 575 U.S. 433, 449 (2015) (citation modified). "[P]olicymakers may focus on their most pressing concerns." *Id.* Indiana reasonably decided that Planned Parenthood's conduct—which consists of providing targeted information and referrals to minors that is "know[n]" or "intend[ed]" to help them obtain abortions without parental consent—poses a greater danger to its consent requirement than a generally accessible webpage. Ind. Code § 16-34-2-4.2(c). That is especially reasonable considering that a "minor might receive speech from a trusted, familiar medical professional" differently than "a more general online source." Op. 52-53 (Scudder, J., concurring).

The majority's assertion that S.E.A. 404 fails strict scrutiny because it "focuses only on abortion," op. 45, is equally flawed. No decision demands that a State fashion one-size-fits-all rules for the entire medical profession. *See Williams-Yulee*, 575 U.S. at 452. Lawmakers can reasonably decide that "terminating a pregnancy is an especially 'grave decision,' and a minor under intense stress 'may be ill-equipped to make it without mature advice and emotional support.'" Op. 53 (Scudder, J., concurring) (quoting *Bellotti,* 443 U.S. at 641). As Indiana's past experience shows, moreover, state lawmakers have special reasons to worry about secret abortions, *see Lockett v. Planned Parenthood of Ind., Inc.*, 42 N.E.3d 119, 124-25 (Ind. Ct. App. 2015)—a worry that is even more acute now that some States allow minors to get abortions without

their parents' knowledge or consent, *see, e.g.*, Youth Health and Safety Act, 2021 Ill. Legis. Serv. P.A. 102-685 (June 1, 2022) (repealing Illinois's parental notification and consent requirements). The majority ignored that as well.[1]

At bottom, the majority identified no reason why Indiana cannot ensure that parents can walk with their children at a major crossroads in life.

**CONCLUSION**

This Court should grant the petition.

Respectfully submitted,

THEODORE E. ROKITA
Attorney General of Indiana

/s/ James A. Barta
JAMES A. BARTA
Solicitor General

JOHN P. LOWREY
Deputy Solicitor General

LAUREN R. LABAUMBARD
Deputy Attorney General

Office of the Indiana Attorney General
IGC South, Fifth Floor
302 W. Washington Street
Indianapolis, IN 46204
Phone: (317) 232-0709
Fax: (317) 232-7979
James.Barta@atg.in.gov

*Counsel for Appellants*

[1] Similar flaws pervade the analysis in *Matsumoto v. Labrador*, 122 F.4th 787 (9th Cir. 2024), and *Welty*, 2026 WL 2874671, which addressed statutes that ban "recruiting" of minors for out-of-state abortions. Each decision minimized the importance of keeping parents involved in discussions about abortion with minor children and focused on the handful of statutory applications that the challengers thought most susceptible to challenge. *See Welty*, 2026 WL 2874671, at *31-36 (Sutton, J., dissenting).

## CERTIFICATE OF COMPLIANCE

1. This document complies with the type-volume limitation of Federal Rule of Appellate Procedure 40(d)(3)(A) because this document contains 3,890 words, excluding the parts exempted by Federal Rule of Appellate Procedure 32(f).

2. This document complies with the typeface requirements of Circuit Rule 32(b) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word in Century Schoolbook 12-point font.

Dated: October 1, 2026

/s/ James A. Barta
JAMES A. BARTA
Solicitor General

## CERTIFICATE OF SERVICE

I hereby certify that on October 1, 2026, I electronically filed the foregoing document with the Clerk of the Court for the United States Court of Appeals for the Seventh Circuit using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

Dated: October 1, 2026

/s/ James A. Barta
JAMES A. BARTA
Solicitor General

Office of the Indiana Attorney General
IGC South, Fifth Floor
302 W. Washington Street
Indianapolis, IN 46204
Phone: (317) 232-0709
Fax: (317) 232-7979
Email: James.Barta@atg.in.gov